**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-CV-00438-CMA-MEH

*CELLECT, LLC,*

      Plaintiff,

v.

*SAMSUNG ELECTRONICS CO. LTD.,* and
*SAMSUNG ELECTRONICS AMERICA, INC.,*

      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS ALL CLAIMS
FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P 12(b)(6)**

---

**I.    INTRODUCTION**

The issues raised by this case-dispositive motion are straightforward.  To infringe a patent claim, an accused product must practice all elements of the claim.  A well-pled complaint for patent infringement must therefore allege that the accused products meet every limitation of each asserted claim.  A complaint that fails to do so must be dismissed.  Cellect's Complaint here fails to properly allege that the accused products include two particular required features of the asserted digital camera patents.  This failure cannot be fixed through amendment.  Accordingly, Defendants respectfully seek dismissal of the Complaint in its entirety, with prejudice.

First, the Asserted Claims of ten of the eleven Asserted Patents[1] require an "image sensor" lying in a "first plane" and a "circuit board" lying in a different plane, which, as the patents explain, facilitates stacking these components and allows the resulting camera to

---

[1] For the Court's convenience, Exhibit A sets forth the asserted claims of the 11 Asserted Patents.  All emphasis is added unless otherwise indicated.

1

be long and narrow (like a tube of lipstick). In contrast, Samsung's accused smartphones and tablets ("the Accused Products") are designed to be thin and wide. As a result, their image sensors and circuit board do not lie in different planes—rather, the image sensors are slotted *into cut-outs in the circuit board*. In alleging otherwise, Cellect relies on images in a teardown report showing these components reoriented into positions different from where they exist in the finished product as sold by Samsung. But images contained elsewhere in this teardown report (ignored by Cellect) depict the actual layout of the components in the products as sold, which confirms they are not in different planes. Second, the asserted claim of the eleventh patent requires three "transceivers" with wireless transmission between two of these transceivers. In contrast, the teardown report demonstrates that the Accused Products as sold include only two transceivers. And because they are connected by wires, they do not wirelessly communicate with each other. Accordingly, no claim for infringement can be advanced, regardless of amendment, and dismissal with prejudice is appropriate.

## II.  BACKGROUND

### A.  The Patents Disclose Cameras With Components In Different Planes

All eleven Asserted Patents relate to camera technology and originate from a common patent application. *See* Compl., ¶¶ 9-10; ECF Nos. 1-1 to 1-11. That common application and, indeed, most of the asserted patents, relate to cameras for use in medical technology and, specifically, endoscopic devices—which are elongated "tubular" devices (i.e., long and narrow, not thin and flat) designed to be inserted inside a human body. *See e.g.,* '839 patent, Abstract; 5:47-51.

The patents state that at the time of the "invention" there was a need "for a reduced area imaging device which can be used in even the smallest type of endoscopic

instruments in order to view areas in the body that are particularly difficult to access, and to further minimize patient trauma by an even smaller diameter invasive instrument." *Id.* at 3:2-7.  The named inventors recognized the need to rearrange circuitry of the imaging device so that the components lie in separate, distinct planes, rather than being side-by-side in an integrated circuit.  To this end, the patents disclose two ways of placing an image sensor (which captures images) in one plane and image processing circuitry (which processes the images) in a second, distinct plane to minimize the cross-sectional area of the endoscope.  In one approach (the "remote" embodiments), the image sensor is "placed at the distal tip of the endoscopic instrument while the remaining processing circuitry may be found in a small remote control box." *Id.* at 4:8-13.  In the other approach (the "stacked" embodiments), "the image sensor and the processing circuitry may all be placed in a stacked arrangement of circuit boards and positioned at the distal tip of the endoscopic instrument." *Id.* at 4:14-18.  By placing the image sensor and the processing circuitry in different planes, the tubular endoscope can have a small diameter.

Examples of the remote and stacked configurations are shown in Figures 1 (left) and 2 (right) of the '839 patent, where image sensor 40 and first circuit board 50 are in different planes, providing for a camera with a small cross section:



These devices "rearrange the circuitry" of conventional single-chip image devices "so there is a minimum profile presented when used within a surgical instrument." *Id.*, 3:8-13.

The Complaint repeatedly touts the "stacked" configuration. *See, e.g.*, Compl. ¶¶ 15, 18 (the '839 and '255 patents are directed to an imaging device "in which a CMOS image sensor and circuitry are placed in a *stacked* fashion at the same location."); ¶¶ 21, 24, 27 ('369, '626 and '036 patent claims are "directed to the stacked electronics CMOS imager invention . . ."). The Complaint also repeatedly alleges that the separation of the image sensor and image processing circuit board into different planes purportedly improved upon "conventional single-chip imaging devices with the image sensor and image processing on the same plane." *See, e.g.*, Compl. ¶¶ 30, 39, 42, 45.

Some of the later-filed patents (the "PDA patents"—the '369, '742, '626 and '036 patents) use the endoscopic-shaped cameras with PDAs. But instead of integrating the image sensor into the circuit board like Samsung's phone, these patents use camera modules that are elongated like a stylus that can be retracted into the PDA. *See* '369 patent, 4:12-20. Figures 2 and 3 of the '369 patent illustrate camera module 10 connected to PDA 22 by a cable 12, both in (Fig. 3) and out (Fig. 2) of the PDA:



Similar to the endoscopic camera, the camera module is tubular and elongated. *Id.*, Fig. 1; 7:12-15. Thus, as in the endoscopic applications, the image sensor and the processing

circuitry in the PDA patents are in separate and distinct planes to minimize the cross-section of the camera. *Id.* 4:8-11; Fig. 1a; 8:55-57.

Importantly, none of the Asserted Patents discloses an embodiment in which the image sensor and image processing circuit board are in the same plane.

### B. The Ten "Two Planes" Asserted Patents Require an Image Sensor in a First Plane and a Circuit Board in a Second Plane

To achieve a reduced-area imaging device for use in an endoscope or similar device, the Asserted Claims of all Asserted Patents but the '621 patent (i.e., the ten "Two Planes" patents) require an image sensor lying in a first plane and a circuit board lying in a different plane (the "two planes" requirement). Asserted claim 1 of the '839 patent, for example, requires "an **imager sensor lying in a first plane**" and "a **first circuit board lying in a second plane** and longitudinally aligned with said image sensor."[2]

### C. The '621 Patent Requires Three Transceivers

The eleventh patent ('621) claims a mobile phone that has three wireless transceivers. Two of these are for communicating between a separable camera module and the rest of the phone. '621 patent, 11:53-65. The wireless communication between the camera module and the phone is a first type of communication claimed by the '621 patent and is critical to this motion. The third transceiver is used to communicate to other people over a wireless network. *Id.* 10:67-11:11. This is a second type of communication claimed by the '621 patent.

The three transceivers of asserted claim 45 are highlighted below:

---

[2] All of the Two Planes patents except for the '742 patent require "an image sensor" in a "first plane" and the circuit board in a "second plane." Claim 58 of the '742 patent requires the imager sensor lie in a "first plane" and the circuit board lie in a "third plane." Regardless, the "third plane" is still distinct from the "first plane" and thus the same analysis applies.

5

> **a transceiver radio element** communicating with said first circuit board for wirelessly transmitting said converted pre-video signal [first transceiver] . . .
>
> **a transceiver radio module** mounted in said telephone for receiving said converted pre-video signal [second transceiver];
>
> **a transceiver/amplifier section** electrically coupled to said transceiver radio module for amplifying and further transmitting the converted pre-video signal [third transceiver] ….

The three transceivers are illustrated in Figure 8, where the "transceiver radio element" (labeled 88) is housed in the camera module, while the "transceiver radio module" (labeled 84) and "transceiver/amplifier section" (labeled 70) are in the phone:



In the '621 patent, images captured by the separable camera module 10' are wirelessly transmitted by transceiver 88 (the first transceiver) to transceiver 84 (the second transceiver) in the PDA.  *See id.*, 11:63-12:3.  This is the first type of communication discussed above.  The '621 patent explains that "the camera module 10' communicates with the communication device 22 by a transceiver radio element 88 . . . and the communication device 22 also includes its own transceiver radio module 84 which allows video signals transmitted by transceiver 88 to be received." *Id.* at 11:61-12:1.

Transceiver/amplifier section 70 (the third transceiver) then takes the images

6

received by the transceiver 84 (the second transceiver) and transmits the images to another user over a wireless network. *See id.*, 11:33-11:42. The '621 patent explains that the video signal received by transceiver radio module 84 is further processed and then "passed onto the transceiver/amplifier section 70 for transmission" to the other party. *Id.,* 10:67-11:3. This is the second type of communication discussed above.

### D. Accused Products

In contrast to the tubular endoscopes and stylus-shaped cameras of the Asserted Patents, the Accused Products are designed to be thin and flat. (Compl., ¶¶ 50-51). As a result, the Accused Products include cameras that do not have an image sensor and a circuit board in different planes—instead, as shown in the teardown reports that Cellect relies upon, the image sensor is *placed into a cut-out slot in the circuit board*.[3]

The Accused Products also do not have three transceivers, as required by the '621 patent. Instead, the products include at most two transceivers. *See* ECF No. 1-12 at 11-13 (identifying "Qualcomm WTR1625L RF transceiver" and "Qualcomm WFR1620 receive-only companion chip" as the only two potential transceivers of the Galaxy S5); ECF No. 1-13 at 8. The Accused Products do not need three transceivers because they have no need for the first type of wireless communication discussed above (i.e., between the camera module and the smartphone/tablet)—they use wires. *See* Compl. ¶ 62; ECF No. 1-12 at 11.

### E. Allegations in the Complaint

Cellect's allegations are based on teardown reports attached to its Complaint, which show the Accused Products in various stages of disassembly. *See, e.g.,* ECF 1-12

---

[3] Cellect's Complaint relies on the Samsung Galaxy S5 as a representative product. *See, e.g.,* Compl. ¶¶ 59 ("Accused products such as the Galaxy S5"), 81, 104.

(showing pictures of each "Step" of disassembly). In some pictures (which Cellect does not rely on), image sensors are shown as they exist in the assembled phones as sold to end-users with the image sensors fitted into slots in the circuit board:



Image 1—Assembled Circuit Board

ECF 1-12 at 10 (annotations added). Because the image sensors are slotted in the circuit board, the image sensors are not in a different plane than the circuit board. Indeed, the image sensors are placed into slots that are, in fact, cut-out of the circuit board so that the image sensors and circuit board are not in different planes. But as the phone was disassembled for Cellect's teardown report, certain components were reoriented into positions different from where they exist in the finished product as sold by Samsung. For example, in the picture below, the image sensors have been *removed* from their slots in the circuit board:

8



Image 2—Disassembled Circuit Board

Compl. ¶ 59.  Significantly, Cellect's Complaint relies on only images like Image 2 (i.e., disassembled with components physically re-oriented) to allege that the image sensors of the front-facing and rear-facing cameras and the circuit board in each of the Accused Products meet the "two planes" limitations.  *See*, *Id.* ¶¶ 59, 64.  Thus, Cellect's allegations do not rely on the placement of the image sensors in Samsung's devices as sold. Tellingly, Cellect's Complaint does not even acknowledge the pictures in its teardown report (like Image 1) that reflect the orientation of the image sensors relative to the circuit board in Samsung's device as actually sold and that show the image sensors slotted into cut-outs in the circuit board.

For the '621 patent, Cellect alleges that the Accused Products include *two* transceivers—a Qualcomm WTR1625L transceiver chip and a WFT1620 receiver RF chip—that "comunicat[e] with the circuit board for wirelessly transmitting said converted pre-video signal." *Id.* ¶ 222.  Cellect does not—because it cannot—allege that the Accused Products include the *three* required transceivers.  Cellect also does not—again, because it cannot—allege that these perform the first type of required communication: wireless communication between the camera module and the smartphone/PDA.  *See id.*

9

### III. LEGAL STANDARD

Dismissal under Rule 12(b)(6) is warranted when a complaint fails to state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must allege facts that, if true, state a claim to relief that is plausible on its face." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) (citation and internal quotation marks omitted). "A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Id.* "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). The Court "may properly consider attached exhibits and documents incorporated into the complaint by reference in evaluating a motion to dismiss, and allegations that contradict the contents of the complaint's exhibits or document incorporated therein by reference are not entitled to a presumption of truth." *Bridges v. Fernandez*, No. 16-CV-03206, 2018 WL 6011695, at *2 (D. Colo. Nov. 16, 2018).

A claim should be dismissed with prejudice when the "[c]omplaint's accusation of infringement lacks plausibility." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1142 (Fed. Cir. 2018) (affirming dismissal with prejudice because the complaint failed to allege that the accused device has all required claim elements); *Atlas IP, LLC v. Exelon Corp.*, 189 F.Supp.3d 768, 799 (N.D. Ill. 2016) (dismissing complaint for failing to show that each element of at least one claim was infringed); *see also Asghari-Kamrani v. U.S. Auto. Ass'n,* No. 2-15-cv-00478, 2016 WL 1253533, at *3-4 (E.D. Va. Mar. 22, 2016).

The Court "may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (denying motion to

10

amend complaint on grounds of futility). In other words, leave to amend need not be given if the amendment "would not survive a motion to dismiss." *OraLabs, Inc. v. Kind Grp. LLC*, No. 13-CV-00170-PAB-KLM, 2014 WL 1395954, at *2 (D. Colo. Apr. 10, 2014).

## IV. ARGUMENT

"To be liable for direct infringement, a product must practice all elements of a patent claim." *TeleSign Corp. v. Twilio, Inc.*, 2016 WL 4703873, at *3 (C.D. Cal. 2016). "[A] plaintiff must include allegations sufficient to permit the court to infer that the accused product infringes each element of at least one claim." *Id.* at *3 (citation and internal quotation marks and brackets omitted). Here, Cellect's Complaint does not—because it cannot—allege that the Accused Products meet every limitation of each asserted claim.

### A. Cellect Fails to Properly Allege That the Accused Products Have an Image Sensor and a Circuit Board Lying in Different Planes

The Accused Products do not meet the "two planes" limitations. Cellect's allegations that they do are directly contradicted by Cellect's teardown report, which it attached to its Complaint and which shows the actual location of the image sensors relative to the circuit board in the Accused Products. *See, e.g.*, *GFF Corp.*, 130 F.3d at 1385 ("Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true."); *Bridges*, 2018 WL 6011695, at *2 ("[A]llegations that contradict the contents of the complaint's exhibits or document incorporated therein by reference are not entitled to a presumption of truth.").

Each of the ten Two Planes patents includes limitations similar to exemplary Claim 1 of the '839 patent:

11

>an **imager sensor lying in a <u>first plane</u>** and including an array of CMOS pixels for receiving images thereon . . .
>
>a **first circuit board lying in a <u>second plane</u>** and longitudinally aligned with said image sensor . . .[4]

In its Complaint, Cellect alleges that, "as shown [in a teardown picture], the Accused Products such as the Galaxy S5, includes a front and rear facing cameras including CMOS image sensors in a separate plane and remote from the processor." Compl. ¶ 59 (citing ECF No. 1-12); *see also* ¶ 64 ("as shown [in the teardown picture], the processor's circuit board lays in a second plane").

But, in making this allegation, Cellect improperly relies on images of the Galaxy S5 in a *disassembled* state with the image sensors *physically removed* from the circuit board (Image 2 above). *See, e.g.,* Compl. ¶ 59 (citing ECF No. 1-12), ¶ 64. Such reliance on a modified structure, as opposed to how the products are "made and sold," is legally improper and cannot be the basis to allege or prove infringement. *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995) (infringement must be based on the product as it is "designed, sold, and intended for use"); *see also Nazomi Commc'ns, Inc. v Nokia Corp.*, 739 F.3d 1339, 1346 (Fed Cir 2014); *Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 507 (D. Del. 2003), *aff'd*, 123 F. App'x 974 (Fed. Cir. 2005) (finding no infringement because the product "as sold" did include the claimed functionality). Cellect cannot allege infringement by altering the configuration of the Accused Products' components to be different from their configuration

---

[4] See Exhibit A for the asserted "Two Planes" claims with relevant claim language emphasized. For these, Cellect relies on the same teardown picture to allege that the image sensors and the processor/circuit board are in different planes. *See* Compl. ¶¶ 81, 87, 104, 109, 126, 148, 153, 170, 175, 193, 198, 242, 246, 266, 272, 290, 295.

12

in the actual finished products as sold by Samsung. *High Tech Med.*, 49 F.3d at 1556 ("[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim.").

By contrast, focusing on Samsung's devices as sold (as is required by Federal Circuit law), the teardown report conclusively shows that the Accused Products do not infringe the Two Planes patents. Image 1 above from the teardown report (ignored by Cellect) shows that the image sensors in the finished assembled product are fit into cut-away slots in the circuit board. *See* ECF No. 1-12 (Compl. Ex. 12) at 10. Thus, the image sensors are integrated into the circuit board and, thus, are not in a different plane than the circuit board as required by the Two Planes patents. In this way, the desired thin and wide form factor for Samsung's accused phones can be achieved.

Because Cellect fails to plausibly allege that the Accused Products include all the elements of the asserted claims of the Two Planes patents, including an image sensor in a first plane and a circuit board in a different plane, Cellect fails to plead a "coherent theory of which claims are allegedly infringed and how the accused products practice [them]." *See Atlas IP*, 189 F.Supp.3d at 775.

### B.    Cellect Fails to Properly Allege Infringement of the '621 patent

Cellect fails to plausibly allege that the Accused Products satisfy all limitations of claim 45 of the '621 Patent. In particular, Cellect fails to allege (because it cannot) (1) that the Accused Products include the three claimed transceivers, and (2) the claimed wireless transmission between the alleged "transceiver radio module" and the alleged "transceiver radio element" (i.e., the first type of communication).

Cellect's allegations regarding these transceiver limitations are limited to just two paragraphs in the Complaint. Compl. ¶¶ 222, 223. Nowhere in these paragraphs does

13

Cellect allege that the three claimed transceivers are in the Accused Products. Instead, Cellect identifies only *two* alleged transceivers: a Qualcomm WTR1625L transceiver chip and a WFT1620 receiver RF chip. Cellect's failure to allege that the Accused Products include three transceivers is not surprising—Samsung tablets and smartphones do not have three transceivers. *See* Sec. II.D., *supra*.

Cellect further fails to allege that the Accused Products include a "transceiver radio module" that "receiv[es] said converted pre-video signal" wirelessly transmitted by the transceiver radio element. Again, this is unsurprising, since the Accused Products do not have a separable camera module with a transceiver radio element that can communicate wirelessly with the rest of the Accused Product. *See* Sec. II.D, *supra*; ECF No. 1-12 at 10. Instead, as Cellect acknowledges, the Accused Products are integrated products that communicate video signals internally through wired connections. *Id; see also* Compl. ¶ 62 (acknowledging that the image sensors in the Galaxy S5 and the circuit board are connected by cables). Thus, the Accused Products do not need—and do not have—a "transceiver radio module" that "receiv[es] said converted pre-video signal" wirelessly transmitted by the transceiver radio element.

For these two independent reasons, Cellect has thus failed to allege facts—and cannot allege facts—sufficient to show that every limitation of claim 45 of '621 patent is found in the Accused Products. *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."). *See Asghari-Kamrani,* 2016 WL 1253533, at *3-4.

14

### C. The Complaint Should be Dismissed with Prejudice

Any attempt at amendment of the complaint would be futile because "the complaint, as amended, would be subject to dismissal." *See Bradley*, 379 F.3d at 901 (denying motion to amend as futile); *OraLabs, Inc.*, 2014 WL 1395954, at *2. As explained above, the teardown reports attached to the Complaint indisputably show that: (1) in the *assembled* Accused Products, the image sensors and circuit board are not in different planes, (2) the Accused Products do not have three wireless transceivers, and (3) the Accused Products do not perform the first type of wireless communication discussed above. Indeed, when Samsung raised with Cellect these defects in the Complaint's infringement allegations, Cellect chose not to try to amend, presumably because it knew that an amendment cannot correct these deficiencies. Therefore, any amendment cannot cure the Complaint's failure to properly allege the "two planes" limitations or the "three transceivers"/"wireless" limitations.

## V. CONCLUSION

Samsung requests that the Court dismiss the Complaint with prejudice.

### CERTIFICATE OF CONFERRAL

Counsel for Samsung certifies that the parties conferred by telephone on May 23, 2019 regarding the issued raised herein. Despite substantive discussions, the Parties were unable to resolve this dispute.

Dated:  May 28, 2019

*/s/ Evan M. Rothstein*
Evan M. Rothstein
ARNOLD & POTTER KAYE SCHOLER
370 Seventeenth Street, Suite 4400
Denver, CO  80202-1370
Telephone: (303) 863-1000
Evan.Rothstein@arnoldporter.com

James R. Batchelder
David S. Chun
ROPES & GRAY LLP
1900 University Ave, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
Richard.Batchelder@ropesgray.com
David.Chun@ropesgray.com

Steve Pepe
Kevin J. Post
Alexander Middleton
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Steven.Pepe@ropesgray.com
Kevin.Post@ropesgray.com
Alexander.Middleton@ropesgray.com


**COUNSEL FOR DEFENDANTS SAMSUNG ELECTRONICS CO. LTD. AND SAMSUNG ELECTRONICS AMEIRCA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May 2019, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS ALL CLAIMS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P 12(b)(6)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Jonathan S. Caplan - jcaplan@kramerlevin.com
Paul J. Andre - pandre@kramerlevin.com
Kenneth Frank Eichner - Ken@EichnerLaw.com

*Attorneys for Plaintiff*

By: */s/ Evan M. Rothstein*
Evan M. Rothstein