# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00438-CMA-MEH

CELLECT, LLC,

      Plaintiff,

v.

SAMSUNG ELECTRONICS CO. LTD., and
SAMSUNG ELECTRONICS AMERICA, INC.,

      Defendants.

## DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW AND *EX PARTE* REEXAMINATION OF THE ASSERTED CLAIMS

## CERTIFICATE OF CONFERRAL

Counsel for Samsung certifies that the parties conferred by telephone on February 24, 2020, and by e-mail on February 25, 2020, regarding the issued raised herein. Despite substantive discussions, Cellect opposes the relief requested herein.

## I. INTRODUCTION

Last week, Samsung filed twenty petitions for *inter partes* review ("IPR") and five requests for *ex parte* reexamination ("EPR") with the United States Patent and Trademark Office ("PTO") that collectively challenge the validity of all 56 claims across 11 patents asserted by Cellect ("Asserted Claims") against Samsung in this lawsuit.[1] These

---

[1] Attached at Ex. A of the Declaration of Alexander Middleton in Support of Motion ("Middleton Decl.") are cover pages and filing notices from Samsung's 25 filings. Because these total about 2,000 pages, Samsung will provide them to the Court if desired.

1

expedited administrative proceedings will substantially streamline and simplify this case, reduce its overall burden, and conserve Court and party resources—the very objectives Congress intended IPRs/EPRs to achieve. Indeed, these proceedings may ultimately render every Asserted Claim unpatentable/unenforceable, thereby mooting this action in its entirety. Accordingly, Samsung respectfully requests that the Court stay this case.

This case is a large patent infringement action in which Cellect has accused nearly 40 different Samsung smartphones and tablets of infringing the 56 Asserted Claims across 11 patents. Thus, this case is ideal for allowing the parties to utilize the IPR/EPR procedures as Congress intended. It is unsurprising then, that the four factors that Courts, including those in this District, analyze in evaluating a stay all weigh heavily in favor of imposing a stay here. A stay, for example, will simplify the case and streamline trial (factor 1) and reduce the burden on the Court and the parties (factor 4). As detailed below, the majority of IPRs and EPRs filed are instituted by the PTO and most result in claim cancellation. And once cancelled, any such claim cannot be asserted against Samsung because an invalid claim cannot be infringed. *See, e.g.*, *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015). Moreover, simplification and streamlining will be achieved even if fewer than all challenged claims are invalidated—Samsung, for example, will be statutorily estopped from asserting in this litigation that Cellect's remaining claims are invalid on any ground that Samsung raised or could have raised in the IPRs. *See* 35 U.S.C. § 325(e)(2).

Additionally, this case is still in its early stages (factor 2) and the majority of the work by the Court and the parties remains to be done. No depositions have been taken

2

(or even noticed), claim construction and expert discovery have not started, fact discovery will not close for many months, and a trial date has not been set.

Finally, a stay will not unduly prejudice Cellect (factor 3). Cellect is a non-practicing entity that delayed filing this lawsuit for five years, and any potential damage base is already capped because all patents are expired.

Considered together, all four factors strongly support a stay. Given that it is a near certainty that the IPRs and EPRs will result in invalidation of some, if not all, Asserted Claims, the early stage of this case, and Cellect's five-year delay in bringing it, engaging in expensive and time-consuming discovery in parallel with the PTO would be wasteful and inefficient.

## II.     BACKGROUND

### A.     IPRs and EPRs Are Designed to Reduce Unnecessary Litigation Costs and Shift Patent Validity Burdens from the Court to the PTO

Congress introduced IPR as an administrative adversarial proceeding to challenge patent validity in order to limit excessive and unnecessary litigation costs. *See* 35 U.S.C. §§ 311-319; *Cocona, Inc. v. VF Outdoor, LLC*, No. 1:16-cv-02703-CMA-MLC, ECF No. 71, at 3 (D. Colo. Mar. 19, 2018) ("*Cocona*," Middleton Decl. Ex. F).[2] The IPR process permits a patent infringement defendant to file, within one year of being served with a complaint, a petition challenging any claim of that patent. *See* 35 U.S.C. § 315(b). The

---

[2] *Inter partes* review (IPRs) replaced *inter partes* reexaminations in 2012 under the Leahy–Smith America Invents Act ("AIA"). *See Cocona*, at 3 (citation omitted). Unlike an *inter partes* reexamination conducted before a single examiner (MPEP § 2655), an IPR is conducted before a panel of three administrative patent judges, and the parties have the right to an oral hearing. 35 U.S.C. § 6; 35 U.S.C. § 316(a) (10).

Patent Trial and Appeal Board ("PTAB"; the PTO body that handles IPRs, but not EPRs) will review this petition (and any patent owner response) and will institute the IPR if there is a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). If instituted, the PTAB then conducts a full review of the challenged claims and issues a final written decision setting forth its detailed analysis and conclusion within one year. *See* 35 U.S.C. §§ 316(a)(c), 316(a)(11), 318(a); 37 C.F.R. § 42.100(c). Any unpatentable claim is canceled. 35 U.S.C. § 318(b). If the petitioner fails to prove that a claim is unpatentable, that petitioner is statutorily estopped from later asserting in district court that "the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).

"Congress instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO" with the intent of "utilizing the PTO's specialized expertise to reduce costly and timely litigation." *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 786 (D. Colo. 2007) (quotation and citations omitted). Like IPRs, EPR requests can be based on invalidating prior art. 35 U.S.C. § 303(a). But, like here, EPRs can also be based on grounds not permitted in IPRs (e.g., obviousness-type double patenting). Within three months of an EPR request being filed, the PTO must determine whether a "substantial new question of patentability" exists. *Id.* If so, the PTO examines the patent in an *ex parte* proceeding. 35 U.S.C. § 304. A "PTO decision to cancel a patent renders the patent unenforceable in pending litigation." *eSoft,* 505 F. Supp. 2d at 786 (citing *Broad. Innovation, L.L.C. v. Charter Commc'ns, Inc.,* No. 03–CV–

4

2223–ABJ–BNB, 2006 WL 1897165, at *2 (D. Colo. July 11, 2006)).

IPRs and EPRs have been highly effective at eliminating invalid claims while any parallel federal litigation is stayed. The PTAB has instituted **67 percent** of requests for post-grant reviews (including IPRs) for electrical patents (like the Asserted Patents) and invalidated claims in **81 percent** of those proceedings. *See* Middleton Decl. Ex. B (Trial Statistics–December 31, 2019, U.S. Patent & Trademark Office), at *7, 11. Similarly, the PTO has instituted **91 percent** of EPRs and canceled or amended claims in **79 percent** of those proceedings. *Id.*, Ex. C (*Ex Parte* Reexamination Filing Data – September 30, 2018, U.S. Patent & Trademark Office), at 2-3.

The IPR/EPR legislative history reflects congressional approval of courts liberally granting stays pending the completion of these proceedings. *See Cocona,* at 4 (citation omitted)*.* The IPR process, for example, is designed to further the AIA's goal of "establish[ing] a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." *Id.,* at 3 (citation omitted). Staying related litigation pending IPRs "effectuates the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patents-in-suit before costly litigation continues." *Software Rights Archive, LLC v. Facebook, Inc.*, Nos. C-12-3970 RMW, C-12-3971 RMW, C-12-3973 RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013).

Similarly, recognizing that EPRs "'provide an inexpensive, expedient means of determining patent validity," courts have held that EPR determinations "'if available and practical, should be deferred to by the courts.'" *eSoft,* 505 F. Supp. 2d at 787 (quoting

5

*Digital Magnetic Sys., Inc. v. Ansley*, 213 U.S.P.Q. 290, 290 (W.D. Okla. 1982). "[S]hifting the patent validity issue to the Patent Office has many advantages, including: (1) all prior art presented to the court will have been first considered by the Patent Office, with its particular expertise; (2) the outcome of the reexamination many [*sic*, may] encourage a settlement; (3) issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination; and (4) costs will likely be reduced both for the parties and the court." *EdiSync Sys., Inc. v. Centra Software LLC,* No. 03–cv–1587–WYD–MEH, 2013 WL 1461484, *1 (D. Colo. April 10, 2013). Recognizing these benefits, courts in this District[3] and elsewhere[4] routinely grant stays pending such proceedings.

## B. Procedural History

Cellect filed its Complaint on February 14, 2019 and served its initial infringement contentions on November 21, 2019, purportedly asserting 59 claims. It filed amended contentions on December 11, and then finally confirmed that it was asserting 56 (not 59)

---

[3] *See, e.g., Cocona*, at 4 (granting stay "because if the IPR petitions result in narrowed claims or invalid patents much of a lawsuit will disappear") (citation omitted); s*ee also Kamstrup A/S v. Axioma Metering UAB*, No. 19-CV-1669-WJM-SKC, 2019 WL 6296699, at *2-3 (D. Colo. Nov. 25, 2019) (granting stay pending IPR); *Fusion Specialties, Inc. v. China Network Leader, Inc.*, No. 12-cv-00009-CMA-KMT, 2012 WL 3289077, at *5 (D. Colo. Aug. 11, 2012) (J. Arguello) (granting stay pending EPR); *Tru-Balance, LLC v. Alcoa, Inc.*, No. 11-cv-01127-CMA-BNB, 2012 WL 619114, at *2 (D. Colo. Feb. 27, 2012), *recommendation aff'd and adopted*, ECF No. 49 (Mar. 16, 2012) (J. Arguello) (granting stay pending *inter partes* reexamination); *EdiSync Sys.,* 2013 WL 1461484, at *1 (granting stay pending EPR); *Karcher North Am., Inc. v. Nilfisk-Advance, Inc.*, No. 13-cv-01284-CMA-MJW, ECF. No. 104 (Apr. 4, 2014) (J. Arguello) (granting stay pending EPR) (Middleton Decl. Ex. H); *Broad. Innovation,* 2006 WL 1897165, at *8 (granting stay pre-EPR institution); *eSoft,* 505 F. Supp. 2d at 789 (granting stay pending institution of *inter partes* reexamination).

[4] *See, e.g.*, Middleton Decl. Ex. I (N.D. Cal. has 76% grant rate for stays pending post-grant review proceedings); Middleton Decl. Ex. J (D. Del. has 62% grant rate for stays).

claims on December 19.  *See* Middleton Decl. Ex. D, at *2 (Dec. 11, 2019 email from M. Colucci) and Ex. E, at *1 (Dec. 19, 2019 email from M. Colucci to A. Middleton).  Once Cellect confirmed which 56 claims it was asserting, Samsung immediately began completing its 20 IPR petitions and 5 EPR requests—collectively challenging the validity of all 56 Asserted Claims.  Samsung's 25 petitions and requests were filed between February 15 and 19, 2020.  *See id.*, ¶ 3 Ex. A.  Samsung's IPRs challenge the validity of all 56 Asserted Claims, while the EPRs challenge the validity of all Asserted Claims of five of the Asserted Patents based on grounds not available in IPR.  *See id.*, ¶¶ 3-4, Ex. A.  In sum, the IPRs and EPRs challenge the validity of every Asserted Claim and the likelihood that this case exists in its current form at the end of this process is near zero.

Faced with that, a stay is appropriate, especially because even though this case has been pending for just over a year, the parties engaged in early motion practice and only recently exchanged infringement and invalidity contentions.  Fact discovery is at its very beginning, no depositions have been taken, and claim construction and expert discovery have not started.  Fact discovery will not close until 60 days after the Court's claim construction order and no trial date has been set.  In other words, the real bulk of work left for the Court and the parties still exists and it makes little sense to do that work in parallel with the PTO when the issues in the case will undoubtedly change significantly.

## III.   ARGUMENT

### A.   Legal Standard

Courts in this district have discretion to stay a case pending PTO proceedings and have adopted "a liberal policy in favor of granting motions to stay" based on such

proceedings. *Fusion Specialties, Inc.,* 2012 WL 3289077, at *1 (J. Arguello). In evaluating whether to stay a case pending IPRs/EPRs, courts consider four factors:

> (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

*eSoft*, 505 F. Supp. 2d at 787 (citing *Broad. Innovation,* 2006 WL 1897165, at *4); *Kamstrup*, 2019 WL 6296699, at *1-2. Courts often consider the first and fourth factors together. See *eSoft*, 505 F. Supp. 2d at 787*; Kamstrup*, 2019 WL 6296699, at *2. The determination of whether a stay is appropriate based on the totality of the circumstances. *See Broad. Innovation*, 2006 WL 1897165, at *4.

### B. A Stay Will Simplify the Issues, Streamline any Trial, and Reduce the Overall Burden of Litigation (Factors 1 and 4)

#### 1. There is a strong likelihood that the PTO proceedings will greatly reduce—if not eliminate entirely—the number of Asserted Claims

Samsung's 20 IPRs and 5 EPRs challenge all 56 Asserted Claims on multiple grounds. Middleton Decl., ¶¶ 3-4. Given the large number of Asserted Claims, the number of petitions/requests filed by Samsung, and PTO statistics, it is a near certainty that the PTAB will institute one or more of the petitions/requests, and ultimately invalidate one or more Asserted Claims. In fact, it is likely that many—if not all—of the Asserted Claims will be invalidated. As discussed above, the PTAB's latest statistics show that, for electrical patents (like the Asserted Patents), the majority of petitions for post-grant reviews (including IPRs) are instituted, and claims are cancelled in most instituted

8

proceedings. *See id.* Ex. B at *7, 11. Similarly, the EPRs are also likely to be instituted, leading to additional invalidation of Asserted Claims. *See id.* Ex. C, at 2-3.[5] "Thus, there is a high statistical likelihood that reexamination of the [Asserted Patents] will leave [Cellect] without a valid infringement claim. . . ." *Fusion Specialties*, 2012 WL 3289077, at *2; *Broad. Innovation*, 2006 WL 1897165, at *8 n.8 ("[T]he PTO grants more than nine of every ten petitions for reexamination," and "there is a [high] likelihood that the PTO will eliminate, amend or otherwise limit the claims at issue, which will significantly alter the nature and amount of work for the attorneys, the court and the jury.").

### 2. This case will be streamlined and the burden of litigation will be reduced through the PTO's cancellation of claims

Courts in this district have recognized that "the specialized expertise the PTO can bring to bear on the question whether prior art undermines the validity of the patent's claims would unquestionably help this court resolve Plaintiff's case expeditiously, efficiently, and—most importantly—correctly." *Cocona,* at 6 (citing *eSoft*, 505 F. Supp. 2d at 787). Given the large number of claims asserted by Cellect, this case will greatly benefit from the PTO's specialized expertise.

There is a high likelihood that at least some claims will be canceled by the PTO, which will necessarily streamline this litigation and simplify the issues by "eliminat[ing] trial of [an] issue . . . ." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). This is because "when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes

---

[5] According to its most recent published statistics, the PTO has cancelled all patent claims in 12% of EPRs. *See* Middleton Decl. Ex. C, at 3.

9

moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 2295 (May 19, 2014); *Cocona,* at 7 ("[T]his should reduce the burden on the court because . . . [I]f [defendant] wins on those issues, the patent claim will drop out of this case."). Because every Asserted Claim has been challenged in Samsung's IPR petitions or EPR requests, if the PTO agrees with Samsung, "[t]his would not just reduce the burden of litigation on the parties and the court—it would entirely eliminate it." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014).

Ultimately, a stay pending the PTO proceedings will avoid time-consuming, expensive, and burdensome discovery that may be unnecessary in view of the outcome of the PTO proceedings, and will reduce the burden both on the Court and the parties.

> **3.    Even if not all claims are ultimately cancelled, the PTO proceedings will simplify issues before the Court, including invalidity, claim construction, and the determination of correct priority dates**

Even if some claims survive the IPRs and EPRs, or if some are not instituted, a stay would still simplify the issues and reduce the burden on the Court and parties.

First, once the PTAB issues an IPR decision, Samsung is estopped under 35 U.S.C. § 315(e)(2) from raising in this case any argument that was raised, or reasonably could have been raised, in the IPR. *See Kamstrup*, 2019 WL 6296699, at *2 (failed invalidity arguments would be "off the table (along with all potentially associated proceedings, such as claim construction)," and defendant's "incentives to litigate versus settle would be greatly affected"); *Vivint, Inc. v. Alarm.com Inc.*, No. 2:15-CV-392 CW, 2016 WL 4750176, at *3 (D. Utah Sept. 12, 2016) (stay pending IPR is justified because,

"even if a few claims are invalidated or cancelled, then the court and the parties will not have to address the validity of infringement as to those claims"). Thus, as a result of the IPR estoppel, staying this litigation pending a final written decision by the PTO will reduce and simplify the issues in the litigation for those claims that survive. *See Cocona,* at 7.

Second, granting a stay would still facilitate a more efficient trial in this case by potentially eliminating claim construction (and other) issues for the invalidated claims and by developing the claim construction record available to the Court for those that remain. *See Gould*, 705 F.2d at 1342. "One purpose of the reexamination procedure is . . . to facilitate trial . . . by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Indeed, the Court may "derive benefit from the PTAB's claim construction for the patents under review. . . . [I]ts analysis would likely prove helpful to this Court, no matter its final determination." *Black Hills Media, LLC v. Pioneer Elecs. (USA) Inc.*, No. 14-cv-00471 SJO (PJWx), 2014 WL 4638170, at *6 (C.D. Cal. May 8, 2014) (internal citation omitted). Thus, "if the PTO upholds the validity of [any] Patent upon reexamination [and IPR], the parties and the Court will benefit from the PTO's expert analysis . . . ." *Fusion Specialties,* 2012 WL 3289077, at *2 (citing *eSoft,* 505 F. Supp. 2d at 787). On the other hand, if this case proceeds in parallel with the IPRs and EPRs, the Court and the parties will proceed through claim construction (for which briefing is set to complete in June) on an incomplete PTO record. *See* ECF. No. 27 at 11; *Convergence Techs. (USA) LLC v. Microloops Corp.*, No. 5:10-cv-02051 EJD, 2012 WL 1232187, at *3 (N.D. Cal. Apr. 12, 2012) ("Even a confirmation by the PTO of all claims is assistive here . . . since staying the case pending reexamination will allow the

11

parties to complete the prosecution history, which will inform the parties' and the Court's constructions of the asserted claims.") (citation and internal quotation marks omitted).[6]

Third, granting a stay will allow the PTO, with its particularized expertise in patent matters, to resolve the parties' critical dispute in the litigation regarding the priority dates of the Asserted Claims. *See* Middleton Decl. Ex. G (Jan. 21, 2020 Samsung Invalidity Contentions), at 10. Because Samsung's IPRs place the priority date squarely at issue for most Asserted Claims, the PTO will need to resolve this dispute—and this Court will benefit from that resolution. *See, e.g.*, *Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918, 924-25 (Fed. Cir. 2019) (affirming the PTO's finding in an IPR that a provisional application did not provide sufficient written description to support a priority claim).

### C. The Litigation is in its Early Stages (Factor 2)

The second factor—whether discovery is complete and a trial date has been set—also heavily weighs in favor of a stay. This case is still in its early stages: the parties have exchanged limited interrogatories and requests for production and exchanged contentions, but no depositions have been taken, claim construction and expert discovery has not started, and no trial date has been set. Fact discovery is not scheduled to close until 60 days after the Court's claim construction order. ECF. No. 27, at 11. This is many months, if not a year, away. Under these circumstances, the second factor weighs in

---

[6] In one recent action in this District, the parties waited until after the PTAB instituted the IPR before jointly requesting a stay. *See* Middleton Decl. Ex. K, *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 1:17-cv-02097-RBJ (ECF Nos. 157, 159, 161), Ex. L (docket report), at 30-31. In granting the stay, the Court advised that "[i]n the future, you might wish to consider seeking stays before putting courts to the work involved in a Markman hearing and order." *Id*. Ex. L, at 31 (ECF No. 162, Text Order, Feb. 26, 2019).

favor of a stay. *See, e.g.*, *Cocona,* at 10-13 (granting stay pending IPR after infringement and invalidity contentions exchanged, but no depositions taken); *Tru–Balance,* 2012 WL 619114, at *1 (finding that the second factor weighs in favor a stay where "[d]iscovery is not completed and no trial date has been set."); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, No. 1:17-CV-01041 WJ/SCY, 2018 WL 4773369, at *2 (D.N.M. Oct. 3, 2018) (finding in favor of a stay where "substantial and costly work remains in this case," including a *Markman* hearing, all deposition, expert discovery, and dispositive motions).

### D. A Stay Will Not Unduly Prejudice Cellect, a Non-Practicing Entity That Delayed Asserting its Expired Patents (Factor 3)

The third factor weighs also heavily in favor of a stay. This factor requires considering whether a stay would unduly prejudice Cellect and give Samsung a tactical advantage. Here, a stay would not prejudice Cellect at all and Samsung would not gain a tactical advantage. Indeed, because the possibility of a delay is present in every case where a stay is sought, "[t]he delay inherent to the reexamination [and IPR] process does not constitute, by itself, undue prejudice." *Corel Software, LLC v. Microsoft Corp.*, No. 2:15-CV-528-JNP-PMW, 2016 WL 4444747, at *2 (D. Utah Aug. 23, 2016) (mere delay itself is not prejudicial) (citation omitted); *see also Evolutionary Intelligence LLC v. Yelp Inc.*, No. C–13–03587 DMR, 2013 WL 6672451, at *8 (N.D. Cal. Dec. 18, 2013) (finding that any delay due to the passage of time "are consequences that apply to any case where reexamination is sought and cannot alone demonstrate undue prejudice").

#### 1. Cellect's five year delay in bringing this lawsuit belies any assertion of prejudice

Cellect cannot credibly claim prejudice after waiting five years to bring this suit.

13

Cellect alleges it gave Samsung notice of the patents in February 2014, but it chose to wait until February 2019 to bring suit.  *See* Complaint, ¶¶ 46-47, 50-51 (alleging "in-person notice" to Samsung on or about February 2014).[7]  Cellect's "apparent delay in bringing this lawsuit casts doubt on [any] claim that it will suffer irreparable harm if a stay issues." *Fusion Specialties*, 2012 WL 3289077, at *4 (finding no prejudice in part because plaintiff knew of defendant's allegedly infringing activity for over a year before commencing the lawsuit); *Zillow, Inc. v. Trulia, Inc.*, No. C12-1549JLR, 2013 WL 5530573, at *7 (W.D. Wash. Oct. 7, 2013) (finding plaintiff's allegation of undue prejudice to be undermined in part by its delay in filing the lawsuit for more than a year after defendant launched the allegedly infringing service)*.*  Indeed, Cellect's "lack of urgency" in filing this suit undermines any assertion that "the litigation [should] move forward with all dispatch now."  *See Corel*, 2016 WL 4444747, at *2 (citation omitted).

### 2. Cellect cannot assert it would be prejudiced by a stay because it is a non-practicing entity asserting expired patents

As a non-practicing entity, Cellect does not make or sell products and it does not compete with Samsung in the marketplace.  *See* Compl., ¶¶ 1, 9-12.  Thus, Cellect can be compensated adequately for any infringement with monetary damages alone and it will not suffer "irreparable harm," such as lost sales or a loss of market share, due to a stay.  *See* Complaint, Prayer for Relief (no request for injunctive relief); *Broad. Innovation*, 2006 WL 1897165, at *11 (finding factor "weighs in favor [of] staying the case because monetary relief—the only relief Plaintiffs seek—is fully capable of restoring Plaintiffs to

---

[7] Samsung disputes that Cellect provided notice to Samsung in February 2014.

the *status quo ante*"); *Black Hills Media*, 2014 WL 4638170, at *7 ("Plaintiff is a patent licensing company and does not compete directly with Defendants, so monetary damages will sufficiently compensate Plaintiff for any delay caused by a stay."). Moreover, all Asserted Patents are expired, so the potential damages base related to that purely monetary relief is already capped.

### 3. Samsung did not delay in seeking IPR/EPR Relief

Samsung started working on its 25 IPR petitions and EPR requests months ago and filed them only nine weeks after receiving Cellect's December 19, 2019 final list of Asserted Claims. *See* Middleton Decl. Ex. E, at *1 (Dec. 19, 2019 email from M. Colucci to A. Middleton). Once Samsung received this list (which increased the number of Asserted Claims from 11 in the Complaint to 56 in its contentions), Samsung worked diligently to focus its efforts on challenging all 56 of those claims. All 25 IPRs/EPRs were filed two months later—between February 15 and 19, 2020. Middleton Decl. ¶¶ 3-4. Ex. A. There was no delay here that would support a claim of undue prejudice. *See, e.g.*, *Cocona,* at 14-16 (no undue prejudice where a single IPR petition was filed seven months after service of invalidity contentions); *Software Rights Archive*, at *6 (granting stay where the "[d]efendants served preliminary invalidity contentions on April 29, 2013, and then spent three additional months to prepare and file the IPR petitions," which the Court found was "a reasonable amount of time given the complexity of the claims, prosecution history and prior art at issue.").

### IV. CONCLUSION

Samsung respectfully requests that this Court grant Samsung's Motion to Stay.

15

| | |
|---|---|
| February 25, 2020 | Counsel for Samsung |
| | */s/ Evan M. Rothstein*<br>Evan M. Rothstein<br>ARNOLD & POTTER KAYE SCHOLER<br>370 Seventeenth Street, Suite 4400<br>Denver, CO  80202-1370<br>Telephone:  (303) 863-2308<br>Facsimile:  (312).583-2360<br>Evan.Rothstein@arnoldporter.com |
| | James R. Batchelder<br>David S. Chun<br>ROPES & GRAY LLP<br>1900 University Ave, 6th Floor<br>East Palo Alto, CA 94303-2284<br>Telephone: (650) 617-4000<br>Facsimile: (650) 617-4090<br>James.Batchelder@ropesgray.com<br>David.Chun@ropesgray.com |
| | Steve Pepe<br>Kevin J. Post<br>Alexander Middleton<br>ROPES & GRAY LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090<br>Steven.Pepe@ropesgray.com<br>Kevin.Post@ropesgray.com<br>Alexander.Middleton@ropesgray.com |
| | Scott. S. Taylor<br>ROPES & GRAY LLP<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02199-3600<br>Telephone: (617) 951-7000<br>Facsimile: (617) 951-7050<br>Scott.Taylor@ropesgray.com |

**COUNSEL FOR DEFENDANTS SAMSUNG ELECTRONICS CO. LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.**

# CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2020, electronically filed the foregoing **DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEWS AND *EX PARTE* REEXAMINATIONS OF ASSERTED CLAIMS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Jonathan S. Caplan – jcaplan@kramerlevin.com
Marcus A. Colucci – mcolucci@kramerlevin.com
Paul J. Andre – pandre@kramerlevin.com
Kenneth F. Eichner– Ken@EichnerLaw.com
Lynn C. Hartfield – lynn@eichnerlaw.com

*Attorneys for Plaintiff*

By: */s/ Evan M. Rothstein*
Evan M. Rothstein