**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00438-CMA-MEH

CELLECT, LLC, a Colorado Limited Liability Company,

        Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, and
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,

        Defendants.

_____

**PLAINTIFF CELLECT, LLC'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY AND REQUEST FOR HEARING**

**I.    INTRODUCTION**

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") have asked this Court to stay proceedings pending review by the United States Patent Office ("PTO") of 25 requests for *inter partes* review ("IPR") and *ex parte* reexamination ("EPR") (collectively "IPR") of Plaintiff Cellect's patents. Despite Samsung's claims that administrative proceedings by the PTO will be expedited and will streamline and simplify this case, a stay will only cause substantial delay and prejudice Cellect.

Prior to even commencing IPR proceedings, the PTO must first make a preliminary determination as to whether to go forward at all, a process that takes six months. Given that the PTO has already considered and rejected very similar arguments that are recycled in Samsung's IPRs, there is a high likelihood that the PTO will reject Samsung's request for IPRs at the initial stage, resulting in a needless six-month delay of the proceedings in this case. Further, there is little chance that there will

be any material changes to the posture of this case. Thus, Samsung's request for a stay is premature and its thinly-veiled litigation tactic attempting to delay these proceedings should be denied.

Finally, contrary to Samsung's assertion, this case is not in its early stages, and a stay would be highly prejudicial to Cellect. Samsung has been on notice of Cellect's patents since February 2014, and since this action was instituted – over a year ago – there has been substantial exchange of discovery, the filing and denial of a motion to dismiss, exchange of core infringement and validity positions, and substantial progress towards claim construction exchange and related briefing. In June of 2019, this Court issued a carefully-considered case scheduling order, to which the parties have thus far adhered, which contemplates that the pretrial conference will take place this August and that trial would commence in late 2020 or early 2021. Granting a stay at this stage would needlessly delay proceedings, impact the Court's calendar and impair Cellect's ability to continue its technology and patent licensing operations.

## II. STATEMENT OF FACTS

### A. Background of Cellect, LLC

Cellect is a wholly-owned subsidiary of Micro-Imaging Solutions LLC ("MIS") (collectively "Cellect"), based in Denver, Colorado. Cellect has a long history of innovation in the Denver region. Dr. Edwin Adair, a local physician and an inventor of the Asserted Patents, made numerous developments in medical devices, including catheters, videoscopes and endoscopes, and beginning in 1973, began obtaining patents that ultimately led to his work with reduced area imaging devices using CMOS image sensors, the subject of the Asserted Patents. Cellect then developed a patent portfolio covering its endoscope and reduced area imaging device technology, which it

2

has successfully licensed to numerous major medical device and imaging companies, including Fujikura Ltd. and several leading multi-billion dollar medical device manufacturers. Jeff Adair, another inventor of the Asserted Patents and local resident, works as an engineer at Cellect, focused on engineering issues related to developing Cellect's licensed technology, working with Cellect's customers and developing Cellect's patent portfolio. Cellect continues to provide engineering assistance to its customers and continues to pursue licenses for its patents.

### B. Cellect Met with Samsung in 2014 To Discuss Cellect's Patent Portfolio

In February 2014, Cellect notified Samsung of its patent portfolio, including the Asserted Patents that were issued at that time and pending applications that ultimately became Asserted Patents. The communications with Samsung in 2014 included a face-to-face meeting between a senior Samsung executive and Cellect's outside counsel, and provision of detailed claim charts to Samsung. Dkt. No. 1 at ¶¶ 46-48.

Between 2014 and 2017, Cellect continued to pursue and obtain additional patents, including the '565 Patent (Dkt. No. 1-10), the '052 Patent (Dkt. No. 1-9) and the '896 Patent (Dkt. No. 1-11) all of which are Asserted Patents in this case. Cellect also conducted a litigation with HTC involving some of the Asserted Patents during this time, but as a small company, did not have the financial resources to enforce its patents in multiple lawsuits at the same time. *See, e.g.*, *Cellect, LLC v. HTC, Am., Inc.et al.*, 1:13-cv-02604 (D. Col. 2013).

### C. Summary of Case Schedule and Activity to Date

On February 14, 2019, Cellect filed its Complaint, alleging that Samsung infringed eleven of its patents by the manufacture and sale of certain Samsung tablets

3

and smartphones. Dkt. No. 1 at 11-12. On May 28, 2019, Samsung filed a motion to dismiss (Dkt. No. 16), which the Court denied on October 2, 2019 (Dkt. No. 37). Following a hearing on June 10, 2019, the Court entered a Scheduling Order. Dkt. No. 27. Pursuant to that Order, Cellect served its preliminary infringement contentions on November 21, 2019, including 113 claim charts and accompany document production. On January 21, 2020, Samsung served its Invalidity Contentions, along with 29 invalidity charts. On March 13, 2020, Cellect served its Response to Samsung's Invalidity Contentions. Pursuant to the Court's ruling at the Scheduling Conference, Cellect is permitted to substitute any of the asserted claims at any time, so long as there is a rational basis for the substitution. *See* Ex. D. (Hr'g. Tr.) at 20.[1]

To date, Cellect has served requests for production and interrogatories. Caplan Decl. ¶¶ 2-3. Samsung has responded to both. *Id.* at ¶¶ 10-11. Samsung served two sets of interrogatories and requests for production. *Id.* at ¶¶ 4-6. Cellect responded to both. *Id.* at ¶¶ 7-9. Between August 26, 2019 and January 17, 2020, Cellect made six document productions, including conception and reduction to practice documents, non-disclosure and licensing agreements, documents relating to licensing discussions with Apple Inc. and Motorola Inc., documents related to *Cellect v. HTC*, and Cellect's communications and meetings with Samsung. Between October 1, 2019 and February 28, 2020, Samsung made eight document productions, including user manuals, 3D CAD/CAM models, image sensor specifications, camera module specifications, processor specifications. *Id.* at ¶ 12.

---

[1] All citations to "Ex. _" refer to exhibits attached to the Declaration of Jonathan S. Caplan, submitted herewith.

The parties are now working on claim construction issues, and that will be fully briefed within three months – by June 23, 2020. Dkt. No. 27 at 11. Fact discovery is closing shortly thereafter - in June 2020 or 60 days after the Court's Claim Order. *Id.* at 11. Expert discovery is expected to close in October 2020. *Id.* at 12-13. The final pre-trial conference is scheduled for August 17, 2020 (*Id.*), and trial is expected to commence in late 2020 or early 2021. Dkt. No. 15.

### D. Samsung's IPR Filings

Notwithstanding that the case has been underway for over a year, Samsung waited until almost exactly one year after service of the Complaint -- the last day to do so -- to file its IPR petitions. Proceedings on these petitions will not even go forward until the Patent Trial and Appeal Board (PTAB), which administers IPRs within the PTO, reviews Cellect's Patent Owner Preliminary Response challenging the merits of each IPR petition. By statute, this process will take a full six months. 35 U.S.C. § 314(b). Based on the date Samsung's petitions were filed, Cellect's Patent Owner Preliminary Responses for the first set of the IPRs will be due on May 21, 2020.[2] The PTAB will then decide whether to institute any IPR within three months. *Id.* As a result, decisions from the PTAB on whether or not to *even institute* Samsung's IPRs will not issue until sometime in September 2020.

Should the PTAB decide that Samsung's petitions have enough merit to go forward – and given that they advance only recycled arguments that the PTO has already considered and rejected, there is no reason to believe they will -- a final written decision from the PTAB would be unlikely to issue for an entire year, in approximately

---

[2] The Patent Owner Preliminary Responses for a second set are due on June 5, 2020. A date for the remaining Preliminary Responses has not been set yet.

September 2021, with extensions available to the PTAB through February 2022. *See* 37 C.F.R. §§ 42.100(c), 42.200(c) and 42.300(c). After a final written decision is provided by the PTAB, the parties have the right to appeal that decision to the Federal Circuit, a process that can take more than an additional year to conclude, thus extending the matter possibly into 2022. 35 U.S.C. § 141(c); *see, e.g., Davol, Inc. v. Atrium Medical Corp.*, C.A. No. 12-cv-958-GMS, 2013 WL 3013343 at *6 (D. Del. June 17, 2013) (an appeal beyond initial 18-month period can drag the process out for multiple years) (Ex. E).

## III.   ARGUMENT

### A.   Legal Standard

The Court has discretion to deny or grant a stay motion based on four factors: (1) simplifying issues and streamlining trial; (2) status of discovery and date for trial; (3) unduly prejudicing the non-moving party; and (4) reducing litigation burden. *See Hunter Douglas, Inc. v. Nien Made Enter Co.,* No. 13-cv-01412, 2014 WL 8807333 at *1 (D. Colo. Jan. 14, 2014) (Ex. F).

Courts in this and other districts have denied stay requests where, as here, the proffered basis for a stay is both speculative and premature, as well as where the case is in an advanced stage. *See, e.g., Hunter Douglas*, 2014 WL 8807333 at *1 (denying motion for stay where request was premature, prejudicial, and gave tactical advantage); *Drink Tanks Corp. v. GrowlerWerks, Inc.,* No. 3:16-cv-410-SI, 2016 WL 3844209 at *5 (D. Or. July 15, 2016) (denying stay as premature if PTAB has not instituted the IPR) (Ex. G); *CANVS Corp. v. United States,* 118 Fed. Cl. 587, 589 (2014) (denying as premature defendant's motion to stay for IPR because PTO has yet to institute IPR); *TruePosition, Inc. v. Polaris Wireless, Inc.,* C. A. No. 12-646-RGA/MPT, 2013 U.S. Dist.

LEXIS 150764 at *12 (D. Del. Oct. 21, 2013) ("As a result and absent a decision from the PTO, along with the potential timing of a final decision by the PTO, these factors weigh against the grant of a stay in this litigation") (Ex. H).

Here, the PTAB and PTO reexamination unit have not even made a determination whether any IPR petition will go forward, and the earliest feedback is expected in six months. Moreover, the parties are well into the discovery process, a case schedule is in place, the parties have exchanged core liability and defense positions, and both sides have produced extensive documentation. Denial of Samsung's stay motion is warranted in such a circumstance.

### B. Samsung's Twenty Five IPRs are Red Herrings That Do Not Warrant A Stay

Although Samsung urges that based on the sheer volume of petitions it filed, the PTO is likely to grant it some relief, volume alone cannot compensate for the lack of substantive merit in each of Samsung's IPR petitions. Every single one of the petitions is based on subject matter that the PTO has already considered, and rejected, over the course of a twenty-year period of review, during which it thoroughly examined, and ultimately allowed, the Asserted Patents. The recycled nature of Samsung's IPRs is evident from a brief overview of: (1) core technology features in the Asserted Patents, (2) subject matter of the references the PTO already considered in evaluating and allowing the Asserted Patents, and (3) the use of old subject matter that Samsung relies upon in its 20 IPRs, as described below.

#### 1. Core Subject Matter Related to the Cellect Patents

The Asserted Patents cover various inventive embodiments of a reduced area imaging device invented by Dr. Ed Adair, his son Jeff Adair and the other co-inventors.

7

At the heart of these inventions was the use of a new (at the time) type of imaging device referred to as complementary metal oxide semiconductor (CMOS) imagers. As explained in the detailed descriptions of the Asserted Patents, CMOS imagers "offer improved functionality and simplified system interfacing" compared to then-existing imager technologies, particularly charged coupled device (CCD) imagers. Dkt. No. 1-9 at p. 23, Col. 1, lines 61-65. CMOS imagers with active pixels combined all the necessary components of a camera (e.g., pixels, timing/control, and processing) onto a single chip.

In contrast, conventional CCD imagers could not combine all the necessary components onto a single chip. *Id* at Col. 2, lines 6-19. Cellect invented a new technology by separating specific components of the CMOS imager so they could be rearranged to reduce the relevant area of the imager. This was the technology – conventional CCD devices and CMOS imagers – that the Cellect inventors improved upon, disclosed to the PTO in their patent applications, and were successful in defending, leading to issuance of the Asserted Patents.

### 2. Samsung Relies on Subject Matter Already Considered by the PTO

The subject matter that is core to the Asserted Patents was reviewed by the PTO over a 20-year period of vigorous scrutiny, resulting in Cellect obtaining the Asserted Patents; in its IPRs, Samsung relies on the exact same subject matter. The PTAB has discretionary authority to deny institution of IPRs where the prior art is similar to prior art already considered during prosecution, and it is highly likely that they will exercise that discretion here. For example, pursuant to 35 U.S.C. § 325(d), the PTAB can deny institution of IPR petitions where the petitions present substantially the same prior art

and arguments that were previously presented to the PTO during prosecution. *See Ivantis, Inc. v. Glaukos Corp.*, IPR2019-00483, Paper 8 at 24 (P.T.A.B. July 8, 2019) (denying institution where prior art was "cumulative to, the prior art that the examiner has already considered during prosecution") (Ex. I); *Cultec, Inc. v. StormTech LLC*, IPR2017-00777, Paper 7 at 13 (P.T.A.B. Aug. 22, 2017) (informative) (denying institution under 35 U.S.C. § 325(d) where PTO previously evaluated two asserted references during examination and additional relied-upon references were cumulative of prior art considered during examination). (Ex. J)

It is telling that in its Motion for Stay, Samsung fails to address the technical merits of the prior art cited in its IPRs, and asks the Court to simply assume that its IPRs will be instituted, based on nothing more than that the IPRs have been filed. Attached as Appendix A are exemplary figures from prior art *already considered during prosecution* of the Asserted Patents, and which are nearly identical to references cited by Samsung in its IPRs. The side-by-side comparison of the references illustrates the similarities. To further assist the Court, Cellect has highlighted the prior art already considered by the PTO for comparison with portions of Samsung's IPR filings (highlighted by Samsung in its IPRs).

The highlighted portions showcase various claim elements such as fixed lenses, CMOS and CCD image sensors, and related circuitry. In addition to these figures, the associated detailed descriptions for each reference provide further compelling evidence of the similarity of disclosures that the PTO already considered, and that Samsung repeatedly recycles in its IPR petitions. Indeed, some of the prior art identified by Samsung in its IPRs (e.g., Harris and the BusinessWeek Article shown in Exhibit A) *are*

9

***the same exact references*** already considered by the PTO in allowing the Asserted Patents. Consequently, it is highly likely that Samsung's IPR petitions will be knocked out during the first round, resulting in a needless six-month delay of proceedings in this Court.

### C. Samsung's Stay Motion Is Premature

#### 1. Nothing Has Been Decided by the PTAB or PTO Yet

Samsung's contention that six months from now, with "near certainty" the PTAB will institute IPR petitions that will invalidate almost all of the claims is wholly speculative and, as explained above, is very likely incorrect. Br. at 3. As a result, at a minimum Samsung's motion is premature, and courts regularly deny a stay when IPR petitions have been only recently filed and not acted upon. *See, e.g., Hunter Douglas*, 2014 WL 8807333 at *1 (denying stay where IPR is not yet instituted); *Drink Tanks Corp.* 2016 WL 3844209 at *2 (denying stay as premature if PTAB has not instituted the IPR); *CANVS Corp.,* 118 Fed. Cl. at 589 (same); *TruePosition, Inc.,* 2013 U.S. Dist. LEXIS 150764 at *19-20 (same). The Court should deny Samsung's motion to stay as premature on this ground alone.

#### 2. PTO Statistics Do Not Support Staying Litigation

Samsung also relies heavily on statistics from the PTAB to support its Motion. Br. at 5, 8-9. However, those statistics, to the extent they even apply to the Asserted Patents, actually demonstrate that Samsung's IPR petitions will not meaningfully impact this case. As Samsung itself acknowledges, the PTAB's IPR institution rate is in decline, and this is expected to continue, especially in the wake of the Supreme Court's 2018 decision in *SAS Institute Inc. v. Iancu*, 138 S.Ct. 1348 (2018) in which it held the PTAB must examine all claims or no claims. Previously, the PTAB would institute an IPR but

10

only examine some claims, effectively picking off only the most vulnerable claims. *SAS Institute*, 138 S. Ct. at 1354. Because the PTAB can no longer pick and choose claims, it has increasingly exercised discretion to not institute IPRs at all, resulting in no examined claims being examined. *Id.*

Even using Samsung's statistics, which date back to 2013, when institution rates were significantly higher than they are today (87% in 2013, as compared to 60% for FY2018 and 56% for FY2020), fewer than 28% of petitions filed result in a final written decision, and in 37% of those cases, some or all of the claims survived review. *See* Ex. B. As a result, most, if not all, of Cellect's claims are likely to survive IPR challenge, and there will be no simplification of issues at all resulting from the stay Samsung seeks. The lack of certainty that an IPR will always be instituted, which Samsung improvidently takes as a given in its brief, is a factor that should be considered. *See Advanced Microscopy Inc.v. Carl Zeiss Microscopy, LLC,* Civil Action No. 15–516–LPS–CJB, 2016 WL 558615 at *2 (D. Del. Feb. 11, 2016) ("The more that the statistical likelihood of the PTAB instituting review on any petition seems less like 'near certainty' and more like 'fair probability,' the less reasonable it seems to stop a district court proceeding after it has started") (Ex. K). *See also*, *Hunter Douglas*, 2014 WL 8807333, at *1; *Drink Tanks Corp.* 2016 WL 3844209 at *2.

Furthermore, even if certain IPR petitions are instituted, it is still purely speculative whether such instituted claims would be found unpatentable. *Peloton Interactive, Inc. v. Flywheel Sports, Inc.,* Case No. 2:18-cv-00390-RWS-RSP, 2019 U.S. Dist. LEXIS 137774, *5 (E.D. Tex. August 14, 2019) ( "institution decisions are not as useful as they were in the past for providing an indication of whether all claims would be

11

found unpatentable") (Ex. L). Consequently, a stay based on the mere filing of the IPR petitions is unwarranted.

### D. This Case Is At An Advanced Stage

The advanced stage of the proceedings here weighs heavily against a stay. This case has been pending for over a year. During that time, the Court has rejected Samsung's motion to dismiss, has set a case schedule, the parties have exchanged contentions and discovery responses, claim construction is underway and the pretrial conference is set for August 17, 2020. Further, a trial date is likely to be set for the end of 2020 or early 2021 at the pretrial conference, thus resulting in a quick resolution of this dispute in this Court.

In contrast, the PTAB has yet to decide if it will initiate any IPRs. Even initial decisions regarding whether the petitions will go forward are not expected until well after the date of the scheduled pretrial conference. Moreover, any IPR proceedings, if instituted, will not be completed until sometime in September 2021 – well after a jury trial would be completed under the schedule currently in place. These factors weigh heavily against the grant of a stay at this stage of the litigation. *See Hunter Douglas, Inc.,* 2014 WL 8807333 at *1-2 (case not in early stage when discovery is ongoing, claim construction issues and much of discovery will be completed before institution decision of any IPRs)*; see also TruePosition, Inc.,* 2013 U.S. Dist. LEXIS 150764 at 12 ("As a result and absent a decision from the PTO, along with the potential timing of a final decision by the PTO, these factors weigh against the grant of a stay in this litigation.").

### E. Granting a Stay would Be Highly Prejudicial to Cellect

A stay would be highly prejudicial to Cellect, a long-standing Colorado business that has been working in the medical device field since the 1970s. Cellect has spent significant time and resources developing products and obtaining a patent portfolio covering its innovative developments. Samsung, on the other hand, has been on notice of Cellect's patents for more than six years, rejected Cellect's offer of a license, and now wants to further delay answering for its willful infringement.

In addition to contacting Samsung as early as 2014 to discuss a deal relating to Cellect's patents, which Samsung rejected, Cellect was active on other fronts as well. For example, Cellect continued working on its medical device licensing and engineering support business, and continued to develop its patent portfolio. *See* Dkt. No. 1 at ¶¶ 37-45. Thus, Samsung's argument that Cellect has been sitting idly by for years and doing nothing with its patent rights is simply false. Br. at 14-15.

While Cellect has numerous patent license agreements in place covering some of the Asserted Patents, Cellect's ability to negotiate a patent license with other infringers cannot move forward until this litigation is resolved. Cellect is a small company with limited resources and as a result, a stay would have real consequences and would seriously impact Cellect's licensing business by further delaying such negotiations. *See Hunter Douglas,* 2014 WL 8807333 at *2 (delay of up to two years for IPRs to be finally decided "would create a clear tactical advantage for Defendants" and "unduly prejudice Plaintiff"). Cellect does not have the resources to enforce its rights against other infringers until it brings this action to resolution. As a result, every day this case is delayed, Cellect's ability to recover damages from other infringers is reduced under 35 U.S.C. § 286 (limiting time for recovering damages prior to filing lawsuit).

13

### F. Resolution of the IPR Issues Would Not Substantially Impact This Case

In addition to rehashing old prior art arguments in its IPR petitions, Samsung's invalidity contentions challenged the Asserted Patents on 35 U.S.C. §101 and 35 U.S.C. §112, grounds that can only be resolved in district court. Ex. C; *See* 35 U.S.C. § 311(b) (restricting the scope of IPR petitions to anticipation and obviousness grounds). As a result, the resolution of the IPRs will not substantially simplify proceedings in this case, a factor that courts have found weighs against the granting of a stay. *See TruePosition,* 2013 U.S. Dist. LEXIS 150764 at *12-13 (when §112 arguments are presented, a stay is disfavored); *Credit Card Fraud Control Corp. v. Maxmind, Inc.,* 3:14-cv-03262-M, 2015 WL 1879747 at *3 (N.D. Tex. April 24, 2015) ("prospects of simplification are speculative" and "hypothetical" because not all invalidity defenses raised in litigation will be reviewed by PTAB even if IPR trials instituted) Ex. M.

Similarly, Samsung's contention that a stay should be granted simply because it seeks to challenge the October 6, 1997 invention date listed on the face of the Asserted Patents lacks credibility and is a question of law that can be resolved in district court without the need for an 18-month delay. In essence, Samsung is asking the Court to stay proceedings for as long as 18 months to challenge validity, and then extensively litigate validity again, pursuant to 35 U.S.C. § 101 or 112 issues. For this additional, reason, the Court should deny the requested stay.

In addition, as Samsung is well aware, Cellect can substitute its asserted claims with other claims in the Asserted Patents for any rational basis. Ex. D (Hr'g Tr.) at 20. Such substituted claims would not be the subject of the IPRs. Thus, Samsung's

14

argument that every claim asserted in this case will be invalidated by the PTO, resulting in probable dismissal of the action, is demonstrably false. Br. at 3.

### G. In the Alternative, the Court Should Defer Resolution of This Motion Until the PTAB Decides if it Will Institute Review

For the reasons set forth above, the Court should deny Samsung's Motion. Even if, however, the Court determines that the filing of the IPR petitions *might* warrant a stay, the Court should defer resolution of Samsung's Motion until the PTAB decides if it will institute review on Samsung's IPR petitions. "The Federal Circuit has made clear … that it is 'not error for the district court to wait until the PTAB makes its decision to institute review before ruling on a motion to stay." *Cobalt Boats LLC v. Sea Ray Boats, Inc.,* Civil Action No. 2:15cv21, 2015 WL 2454296 at *2 (E.D. Va. May 21, 2015) (Ex. N), (quoting *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315 (Fed. Cir. 2014)).

Here, such an approach makes far more sense than granting a stay. By September 2020, the PTAB will decide if it will institute review on any of Samsung's IPR petitions. At that time, the Court can better assess if there is any likelihood that these IPRs will impact the scope of this case.

## IV. CONCLUSION

For the reasons discussed above, the Court should deny Samsung's Motion to Stay because it is a premature and prejudicial request that is based on IPRs which fail to raise any new issues that have not already been considered by the PTO.

Cellect requests a Hearing and can appear by telephone, consistent with the parties' previous hearings and temporary restrictions, but will attend in-person if permitted.

Dated: March 17, 2020

Counsel for Cellect

*/s/ Kenneth F. Eichner*
Kenneth F. Eichner
THE EICHNER LAW FIRM
3773 Cherry Creek Drive North
West Tower, Suite 900
Denver, Colorado 80209
T: (303) 837-9800
ken@eichnerlaw.com

*/s/ Lynn C. Hartfield*
Lynn C. Hartfield, LLC
387 Corona Street, Suite 617
Denver, Colorado 80218
Telephone: (720) 588-0571
Email: lynn@lhartfieldlaw.com
SPECIAL COUNSEL TO
The Eichner Law Firm
3773 Cherry Creek Drive North
West Tower, Suite 900
Denver, Colorado 80209
T: (720) 588-0571
lynn@eichnerlaw.com

*/s/ Paul J. Andre*
Paul J. Andre
KRAMER LEVIN NAFTALIS & FRANKEL, LLP
990 Marsh Road
Menlo Park, CA 94025
T: (650) 752-1700
pandre@kramerlevin.com

*/s/ Jonathan S. Caplan*
Jonathan S. Caplan
*/s/ Marcus A. Colucci*
Marcus A. Colucci
KRAMER LEVIN NAFTALIS & FRANKEL, LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100
jcaplan@kramerlevin.com
mcolucci@kramerlevin.com

*Attorneys for Plaintiff*
CELLECT, LLC

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2020, a true and correct copy of the foregoing document was filed with the Clerk of the Court using CM/ECF system.

By: */s/ Jonathan S. Caplan*
   Jonathan S. Caplan

Attorneys for Plaintiff
Cellect, LLC
