IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00438-CMA-MEH

CELLECT, LLC,

      Plaintiff,

v.

SAMSUNG ELECTRONICS CO. LTD., and
SAMSUNG ELECTRONICS AMERICA, INC.,

      Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PENDING *INTER PARTES* REVIEW AND *EX PARTE* REEXAMINATION OF THE ASSERTED CLAIMS**

## I.    INTRODUCTION

Cellect's opposition fails to rebut Samsung's showing that under the four "stay" factors a stay will conserve resources, reduce costs, and streamline and simplify this litigation. Indeed, rather than address Samsung's arguments under the facts and posture of this case as they are, Cellect creates a false narrative to attempt to justify forcing the Court and the parties to needlessly rush headlong into expensive, wasteful litigation.

Cellect first states that it will take six months for the PTO to act on Samsung's IPRs/EPRs. But the PTO instituted one of the EPRs *a week before* Cellect filed its opposition. Since then, the PTO has instituted two others. As of today, 20 of the 56 asserted claims are under PTO review, and more PTO institutions are expected shortly.

Next, Cellect confusingly asserts that this case is at "an advanced stage" with trial in late 2020 or early 2021. The actual case schedule and posture do not support this. In

1

fact, claim construction has not started and fact discovery will not close until 60 days after the Court's claim construction order. Expert discovery closes 120 days after fact discovery closes, with dispositive motion briefing to follow. In short, the vast majority of the work in this case remains to be completed, and trial will not take place until late 2021, at the earliest.

Equally perplexing, Cellect predicts that Samsung's IPRs and EPRs will fail because they "recycle" references and arguments already considered by the PTO. This assertion is belied by the PTO's recent grant of three of Samsung's EPRs, which were based, in part, on two references the PTO considered during original prosecution (confirming that "recycled" art can form the basis for a new rejection) and raise an invalidity theory (obviousness-type double patenting) never previously argued to the PTO. Moreover, the PTO never considered 20 of the 22 references cited in Samsung's IPRs/EPRs. Thus, particularly in view of the three granted EPRs, Samsung expects that most, if not all, of the remaining EPRs and IPRs will be instituted and most, if not all, of the asserted claims will be found invalid.

This case is in its early stages, and a stay pending Samsung's EPRs and IPRs will not prejudice non-practicing entity Cellect but will result in a simpler, more streamlined trial (if one is even necessary). Stripping away Cellect's wishful fact pattern, and instead applying the facts as they actually are, a stay is warranted and prudent.

## II. THE INSTITUTION OF THREE OF ITS EPRS DEMONSTRATES THAT SAMSUNG HAS NOT MERELY RECYCLED REFERENCES AND ARGUMENTS AND THAT THIS MOTION IS NOT PREMATURE

Before attempting to analyze the four "stay" factors, Cellect argues that a stay is

inappropriate because Samsung's IPRs and EPRs lack substantive merit and Samsung's motion is premature.  Opp'n at 7-10.

Cellect first contends that the IPRs and EPRs merely "recycle" references and arguments already considered by the PTO.  *Id.* at 7.  But even before Cellect filed its opposition, the PTO had instituted one of the EPRs—a fact Cellect failed to mention.  Declaration of Alexander Middleton in Support of Reply ("Middleton Decl.")  Ex. M (granting '626 EPR).  The PTO has now instituted two more.  *Id.* at Exs. N and O (granting '742 and '369 EPRs).  The three instituted EPRs cover 20 of the 56 asserted claims.  Considering that the PTO acted on these EPRs within weeks—well before the PTO's three-month deadline—Samsung anticipates the other two EPRs will be instituted soon.

Moreover, these EPRs raise an invalidity theory (obviousness-type double patenting) that was not previously argued to the PTO.  Notably, different PTO Examiners were assigned to each of the three instituted EPRs, and each independently arrived at the same conclusion:  each raises a "substantial new question of patentability."  Middleton Decl. at Ex. M at 8, Ex. N at 8, and Ex. O at 7-15.  And these EPRs were instituted even though they included two references the PTO had *already considered*.

Knowing that the remaining 20 references in Samsung's IPRs/EPRs have never been considered by the PTO, Cellect argues instead that these references disclose *subject matter* already considered by the PTO.  To make this point, Cellect selectively compares certain of Samsung's IPR/EPR references to references already considered by the PTO.  *See* Dkt. No. 60-2 (Opp'n, Ex. A).  But Cellect's comparison merely shows that Samsung's references are directed to the same general types of devices as those

3

considered during original prosecution (*e.g.*, devices with sensors, lenses, and circuitry). This is not surprising. All the references relate to cameras—just like the Asserted Patents—and even a cursory review of Cellect's comparison shows that Samsung's references disclose specific systems, components, and configurations that are substantively different than the references previously considered by the PTO.[1]

Next, in arguing that Samsung's motion is premature, Cellect remarkably contends that "nothing has been decided by the PTAB or PTO yet." Opp'n at 10. Yet, as noted above, the PTO instituted three EPRs, including one before Cellect filed its opposition. With two more now recently instituted, if anything, the speed with which the PTO acted suggests that the final two should be instituted soon—and confirms that this Motion is timely. The PTAB's upcoming IPR rulings also will create efficiencies for the Court. By September, the PTAB will provide its initial views on the patentability of the claims, as well as a preliminary determination on claim construction (under the same *Phillips* standard used in District Court). These critical determinations would need to be litigated separately and in parallel here were this case not stayed now.

Cellect's citations to cases where stays were denied as premature because IPRs had not yet been instituted are of no moment. These decisions are not instructive because here three EPRs have already been instituted and the remaining EPR requests will all be acted on within two months (and likely sooner). Moreover, in each case Celelct relies upon, a stay was ultimately granted because the PTAB instituted the IPRs. *See,*

---

[1] For example, the CCD imagers of Takumura and Suzuki have a structure very different than the references the PTO already considered. *See* Dkt. No. 60-2 (Opp'n Ex. A) at 5.

4

*e.g.*, *Hunter Douglas, Inc. v. Int'l Window Treatments, Inc.*, No. 13-cv-01412, ECF No. 157, at *2 (D. Colo. July 21, 2014) (reversing the Magistrate Judge's ruling and imposing a stay "until there is a determination by the Patent Office on the most recent [IPR] petition.") (Ex. P); *CANVS Corp. v. United States*, No. 1:10-cv-00540, 2014 WL 12673710, at *2 (Ct. Cl. Dec. 19, 2014).[2]

Here, a stay is not premature—20 out of 56 claims are already under PTO review and, with 22 IPRs and EPRs still to be considered by the PTO, it is a near certainty that many, if not all, of the remaining Asserted Claims will soon be under review at the PTO.

### III. RESOLUTION OF SAMSUNG'S IPRS AND EPRS WILL STREAMLINE THIS CASE AND REDUCE LITIGATION BURDEN (FACTORS 1 AND 4)

Cellect implies that Factors 1 and 4 support a stay if only if *all* asserted claims are cancelled by the PTO. Cellect ignores that streamlining and simplification will be achieved even if fewer than all claims are invalidated, including that:

- Samsung will be statutorily estopped in this case from raising any invalidity argument that was or could have been raised during the IPRs (Mot. at 10);
- The Court will benefit from the PTO's specialized expertise in deciding invalidity issues even if not all claims are invalidated (*id.* at 9);
- The PTO proceedings may potentially eliminate claim construction issues for invalidated claims and will fully develop the claim construction record for the Court's benefit for any claims that do survive (*id.* at 11); and
- If this case proceeds in parallel with the IPRs, the Court will be conducting claim construction based on an incomplete record (*id.*).

---

[2] Cellect's argument that IPR institution rates are decreasing following the Supreme Court's decision in *SAS Institute Inc. v. Iancu* relies on a superficial view of post-*SAS* statistics. Opp'n at 11. A significant number of post-*SAS* IPRs settle both pre- and post-institution (16% and 29% in FY2019, respectively). Cellect asks the Court to assume that all of its 56 claims will fall within the 28% of cases that result in a final written decision and survive appeal. This is not statistically reasonable. Whether looking at 2013 or 2019 statistics, the majority of IPRs and EPRs are instituted and result in claim cancellation.

Cellect's two arguments for why Samsung's IPRs/EPRs would not streamline or simplify this case are both misguided. Cellect first argues that this case will not be simplified because the PTO cannot address Samsung's defenses under §§ 101/112. *See* Opp'n at 14. This ignores the obvious—if the PTO invalidates claims under §§ 102/103, then the Court will not need to address Samsung's §§ 101/112 defenses for such claims.

Cellect next argues that the IPRs will not resolve priority date issues for the asserted patents for 18 months. Opp'n at 14. But Cellect ignores that the PTO will address the priority issues early on in the instituted EPRs, and will assess the priority issues (and provide initial views on claim construction and invalidity) in the IPRs when it issues its institution decisions (by September 2020).[3] These critical determinations (priority, patentability, and claim construction) would need to be litigated separately and in parallel if this case were not stayed now. Staying this case will allow the Court and parties to benefit from the PTO's determinations.

## IV.   THIS CASE IS NOT AT AN ADVANCED STAGE (FACTOR 2)

The case schedule Cellect presents in arguing that Factor 2 (status of discovery and trial date) does not support a stay ignores the actual state of this case. For example, as the timeline in Exhibit T shows, Cellect's statements that claim construction is underway (Opp'n at 12), expert discovery will close in October 2020 (*id. at 5*), and trial is

---

[3] *See, e.g.*, *General Electric Co. v. Univ. of Va.*, IPR No. 2016-00359, Paper 13 at 7-12 (PTAB June 24, 2016) (analyzing priority date in Institution Decision) (Ex. Q); MPEP § 2246 (stating that in an EPR the examiner should indicate his or her initial position on all issues identified in the EPR (which would include priority)) (Ex. R); Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,627 (Aug. 14, 2012) (Ex. S).

likely to be set for the end of 2020 or early 2021 (*id.* at 12) are simply wrong. Even assuming an aggressive case pace, claim construction proceedings will not conclude until fall 2020, expert discovery will not close until next year, and trial likely will not occur until *after* the IPRs are finally decided in September 2021. See Middleton Decl. Ex. T. In a case like this—where the vast majority of the work remains to be completed and the parties have engaged in only limited discovery, depositions have not been taken, claim construction and expert discovery have not started, and trial is more than 18 months away—Factor 2 weighs heavily in favor of a stay, as a stay will conserve resources, reduce costs, and streamline and simplify this litigation.[4]

**V.   GRANTING A STAY WILL NOT PREJUDICE CELLECT (FACTOR 3)**

Cellect's claim that Factor 3 (prejudice) weighs against a stay similarly fails. First, Cellect does not dispute that it waited over five years to sue Samsung.[5] Cellect tries to excuse this substantial delay by arguing that it was litigating against HTC during this time and could not proceed in two cases at once. Opp'n at 3. But the HTC case was dismissed at Cellect's request in *June 2014*—five years before Cellect filed this suit.

Cellect also argues that it was not "sitting idly" between 2014 and 2019 because it was actively licensing its patents. *Id.* at 13. But this only highlights the unreasonableness of Cellect's five-year delay—if Cellect was actively licensing its patents between 2014 and

---

[4] Cellect's cited cases are inapposite. Unlike in *Drink Tanks Corp. v. GrowlerWerks, Inc.,* No. 3:16-cv-410-SI, 2016 WL 3844209 (D. Or. July 15, 2016), Cellect and Samsung do not compete and the PTO already instituted an EPR. And unlike in *TruePosition, Inc. v. Polaris Wireless, Inc.,* C.A. No. 12-cv-646-RGA/MPT, 2013 WL 5701529 (D. Del. Oct. 21, 2013), claim construction is far from over.

[5] Samsung disputes that notice was provided in 2014. But even if it was, Cellect's unexplained five-year delay in bringing suit dooms its prejudice argument.

2019, why did it not try to license Samsung during that same period? Cellect also claims that a stay would be prejudicial because it cannot negotiate other licenses while this case is ongoing. *Id.*; *see also id.* at 3. Yet this alleged impact of a stay on potential licensing is always present, and cannot trump the Congressional intent in establishing IPRs/EPRs and benefits that courts have recognized result from a stay.[6]

## VI. CELLECT'S THREATENED CLAIM SUBSTITUTION WOULD IMPROPERLY CIRCUMVENT THE BENEFITS OF THE IPRS/EPRS AND IS CONTRARY TO THE SCHEDULING ORDER IN THIS CASE

Cellect also threatens to undermine Congressional intent in creating IPRs/EPRs, by positing that Samsung's IPRs and EPRs will not streamline or simplify this litigation because Cellect can simply substitute new claims into the case for any claim that the PTO invalidates. Opp'n 14. Cellect ignores that courts have previously rejected such attempts to circumvent the efficiencies of IPRs/EPRs. As one court has found, asserting new claims after adverse IPR findings is "contrary to Congress's purpose in creating IPR 'as part of a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs'" and "might drastically prolong litigation." *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 3:14CV51, 2019 WL 1993552, at *4 n.5 (W.D. Va. May 6, 2019); *see also* " *Adaptix, Inc. v. Dell Inc.*, No. 5:14-CV-01259-PSG, 2015 WL 13747892, at *4 (N.D. Cal. Feb. 24, 2015) ("[A] plaintiff should not be able to sit on its heels until a defendant's opportunity to file an IPR petition has run

---

[6] Cellect also does not dispute that it is a non-practicing entity that does not sell products or compete with Samsung in the marketplace, and as such it will not suffer irreparable harm from a stay through lost sales or loss of market share. Nor does Cellect dispute that its patents are now expired, which caps any potential damage base.

out and only then seek to amend its infringement contentions.").

Indeed, Cellect's position is at odds with this Court's guidance here. Last summer, the parties and the Court discussed the number claims Cellect could assert and a process for narrowing claims for trial. This issue was briefed and the Court held a hearing in July 2019. Recognizing the need to limit claims, and after carefully balancing competing interests, the Court allowed Cellect to assert 64 claims initially, with a reduction to 16 after discovery. Dkt. Nos. 31, 35. The Court also ruled that Cellect could substitute claims only if there was a rational basis to do so. Dkt. No. 36 (7/30/19 Hr'g Tr.) at 21:25-22:14.

In mid-October, the parties agreed to a three-week extension for Cellect's infringement contentions so that Cellect could review the technical documents that Samsung voluntarily produced early. Dkt. No 40, ¶4. These documents were produced early to provide Cellect with the information it needed to select its 64 asserted claims. Cellect, however, asserted only 56 claims in its initial infringement contentions. Given Samsung's early production of technical information, it is difficult to see what "rational basis" Cellect could have to substitute claims later in this case, especially given that Cellect chose to assert only 56 claims (instead of 64). In other words, if Cellect had more claims it wanted to assert, it had the opportunity to do so, and chose not to.

Moreover, substituting claims (now or in the future) would unduly complicate this case, creating more work for the Court and the parties and delaying its resolution. At a minimum, it would require that infringement and invalidity contentions be re-done to address any substitute claims, and potentially require additional fact discovery, supplemental claim construction proceedings (including an additional hearing), and

9

additional expert discovery..

Regardless, any substituted claims would not be insulated from PTO scrutiny. Because there is no time bar for EPRs, Samsung could file EPRs on any new claims. Samsung could also rely on *Ohio Willow Wood Co. v. Alps South, LLC*, to argue that Cellect will be collaterally estopped from asserting claims that are not materially different from claims invalidated by Samsung IPRs. *See* 735 F.3d 1333, 1342-43 (Fed. Cir. 2013).

Cellect should not be permitted to use the threat of substituting claims to avoid a stay. In addition to running afoul of the Court's claim narrowing process, Cellect's claim substitution would circumvent Congress's purpose in creating IPRs and EPRs—simplifying litigation, reducing excessive litigation costs, and leveraging the PTO's specialized expertise by shifting patent validity determinations to it. Mot. at 3-6.

**VII.   CONCLUSION**

Applying the governing "four factor" test to the actual facts of this case instead of Cellect's wishful fact pattern shows why a stay should issue. A stay will simplify and streamline the case (factor 1) and reduce the burden on the Court and the parties (factor 4) because Samsung's IPRs/EPRs will result in the invalidity of asserted claims. Indeed, 20 of the 56 claims are already under PTO review. This case is still in its early stages (factor 2) and trial is unlikely to take place until late 2021. No depositions have been taken, claim construction and expert discovery have not started, and fact discovery will not close for months. And a stay will not unduly prejudice Cellect (factor 3). Cellect delayed filing this lawsuit for five years, and any potential damage base is already capped because all patents are expired.

| | |
|---|---|
| March 31, 2020 | Counsel for Samsung |
| | |
| | */s/ Evan M. Rothstein* |
| | Evan M. Rothstein |
| | ARNOLD & POTTER KAYE SCHOLER |
| | 370 Seventeenth Street, Suite 4400 |
| | Denver, CO 80202-1370 |
| | Telephone: (303) 863-2308 |
| | Facsimile: (312).583-2360 |
| | Evan.Rothstein@arnoldporter.com |
| | |
| | James R. Batchelder |
| | David S. Chun |
| | ROPES & GRAY LLP |
| | 1900 University Ave, 6th Floor |
| | East Palo Alto, CA 94303-2284 |
| | Telephone: (650) 617-4000 |
| | Facsimile: (650) 617-4090 |
| | James.Batchelder@ropesgray.com |
| | David.Chun@ropesgray.com |
| | |
| | Steve Pepe |
| | Kevin J. Post |
| | Alexander Middleton |
| | ROPES & GRAY LLP |
| | 1211 Avenue of the Americas |
| | New York, NY 10036-8704 |
| | Telephone: (212) 596-9000 |
| | Facsimile: (212) 596-9090 |
| | Steven.Pepe@ropesgray.com |
| | Kevin.Post@ropesgray.com |
| | Alexander.Middleton@ropesgray.com |
| | |
| | Scott. S. Taylor |
| | ROPES & GRAY LLP |
| | Prudential Tower |
| | 800 Boylston Street |
| | Boston, MA 02199-3600 |
| | Telephone: (617) 951-7000 |
| | Facsimile: (617) 951-7050 |
| | Scott.Taylor@ropesgray.com |

**COUNSEL FOR DEFENDANTS
SAMSUNG ELECTRONICS CO. LTD.
AND SAMSUNG ELECTRONICS
AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2020, electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PENDING *INTER PARTES* REVIEWS AND *EX PARTE* REEXAMINATIONS OF ASSERTED CLAIMS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Jonathan S. Caplan – jcaplan@kramerlevin.com
Marcus A. Colucci – mcolucci@kramerlevin.com
Paul J. Andre – pandre@kramerlevin.com
Kenneth F. Eichner – Ken@EichnerLaw.com
Lynn C. Hartfield – lynn@eichnerlaw.com

*Attorneys for Plaintiff*

By: */s/ Evan M. Rothstein*
Evan R. Rothstein