IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-00438-CMA-MEH

CELLECT LLC, *a Colorado Limited Liability Company*,

    Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., *a Korean Corporation*, and
SAMSUNG ELECTRONICS AMERICA, INC., *a New York Corporation*,

    Defendants.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR STAY PENDING *INTER PARTES*
REVIEW AND *EX PARTE* REEXAMINATION OF ASSERTED CLAIMS**

---

This matter is before the Court on Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.'s (collectively, "Samsung") Motion to Stay Pending *Inter Partes* Review and *Ex Parte* Reexamination of Asserted Claims. (Doc. # 56.) The Motion is fully briefed.[1] (Doc. ## 60, 61, 67.) For the following reasons, the Court grants the motion.

### I.     BACKGROUND

Cellect is a technology development company that owns 21 patents covering, *inter alia*, complementary metal-oxide semiconductor ("CMOS") image sensor

---

[1] The Court notes that Plaintiff Cellect LLC ("Cellect") requested a hearing on the instant Motion. (Doc. # 60 at 15.) However, the Court has determined that a hearing would not materially assist in the disposition of the Motion.

technology. (Doc. # 1 ¶ 9.) CMOS technology is used in products with compact cameras, such as smartphones. (Doc. # 1 ¶ 11.) This case involves 11 patents (the "Asserted Patents"),[2] including 56 claims (the "Asserted Claims"), which cover CMOS technology. The Asserted Patents are all assigned to Cellect (Doc. # 1 ¶¶ 13–45) and all have expired. (Doc. # 56 at 15.)

Cellect provided Samsung with notice of its patents in early 2014, and then provided Samsung with in-person notice of its alleged infringements of the Asserted Claims in February, 2014. (Doc. # 1 ¶ 46.) Five years later, on February 14, 2019, Cellect filed its complaint ("the Complaint") (Doc. # 1) alleging that Samsung infringed the Asserted Claims. On May 28, 2019, Samsung filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Court denied that motion. (Doc. # 38.)

On October 16, 2019, Samsung denied all of Cellect's allegations in its Answer (Doc. # 39) and asserted the affirmative defense that the Asserted Claims were invalid pursuant to 35 U.S.C. §§ 102, 103, or 112. (Doc. # 39 ¶ 309.) After Samsung made repeated attempts to obtain a finalized list of Asserted Claims, (Doc. # 56-6 at 1), Cellect finally produced the list on December 19, 2019. (Doc. # 56 at 15.)

In mid-February 2020, just before the end of a year-long statutory filing period, Samsung entered 5 *ex parte* reexamination ("EPR") requests and 20 petitions for *inter partes* review ("IPR") with the United States Patent and Trademark Office ("PTO") challenging the validity of the Asserted Claims. (Doc. # 56 at 1.) On February 25, 2020,

---

[2] The 11 Asserted Patents are numbered: 6,043,839; 6,275,255; 6,982,740; 9,186,052; 9,198,565; 9,667,896; 6,982,742; 6,424,369; 6,452,626; 6,862,036; and 7,002,621.

Samsung filed the instant Motion to Stay. (Doc. # 56.) The PTO has granted all of Samsung's EPR requests, which cover 29 of the 56 Asserted Claims. (Doc. # 63 at 1.)

On March 2, and on June 18, 2020, Magistrate Judge Hegarty amended the original Scheduling Order[3] based on joint motions. (Doc. # 59; Doc. # 73.) Given the amendments, several case deadlines are delayed. *See* (Doc. # 27). To date, Cellect and Samsung have exchanged lists of claim terms to be construed and have filed the Joint Disputed Claim Terms Chart. Samsung has also filed its Opening Claim Construction Brief. All claim construction briefs are due July 17, 2020. Assuming the proposed month for a *Markman* hearing, Samsung's filing deadline for Final Invalidity Contentions would be in early-October, 2020. Given the schedule for Opening and Reply Expert Reports, discovery is unlikely to end until well into 2021. (Doc. # 27 at 10–13.) No trial date has been set.

## II. LEGAL STANDARD

Congress has clearly expressed its intent regarding the purpose of allowing issued patents to be evaluated for validity within the PTO: EPR, and by analogy IPR, "will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation." H.R. Rep. No. 96-1307, pt. 1, at 2 (1980), *as reprinted in* 1980 U.S.C.C.A.N 6460, 6463.

### A. THE COURT'S POWER TO STAY PENDING IPR OR EPR

Courts have the inherent power to stay proceedings to manage their dockets. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is

---

[3] Entered June 10, 2019. (Doc. # 27.)

incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). With respect to determining whether to stay a case based on IPRs and EPRs pending at the PTO, courts consider:

> (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

*eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo. 2007) (applying the four factors to a determination of whether to stay proceedings pending EPR) (hereinafter "*eSoft* factors"); *Kamstrup A/S v. Axioma Metering UAB*, No. 19-cv-1669-WJM-SKC, 2019 WL 6296699, at *2 (D. Colo. Nov. 25, 2019) ("The Court finds that these factors continue to be helpful when considering whether to enter a stay pending IPR proceedings."). No one factor is determinative, and the totality of the circumstances are considered. *Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165, at *4 (D. Colo. July 11, 2006).

B.   *INTER PARTES* REVIEW

IPR is an adversarial process created by the Leahy-Smith America Invents Act ("AIA"). 35 U.S.C. § 100 *et seq* (2011). One of Congress's goals in enacting the AIA was to reduce the burden of litigation on courts.[4] More specifically, its purpose in

---

[4] *See* H.R. Rep. No. 112-98, pt. 1, at 40 (2011) ("The legislation is designed to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."); *see also* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (Sen. Schumer commenting that "[l]itigation over invalid patents places a substantial burden on U.S. courts and the U.S. economy.").

replacing the pre-AIA *inter partes* reexamination procedure with IPR in the AIA was to "giv[e] the Patent Office significant power to revisit and revise earlier patent grants." *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2139–40 (2016) (citing H.R. Rep. No. 112-98, pt. 1, at 45, 48 (2011)); *see* 157 Cong. Rec. 9778 (2011) (Rep. Goodlatte noting that IPR "screen[s] out bad patents while bolstering valid ones").

IPR is considered to be at least a partial and, in some situations, a complete alternative to litigation of patent validity issues. *See SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341, 1354 (Fed. Cir. 2016) (Newman, J., dissenting) ("The AIA proceeding is structured as a complete alternative to litigation of these issues."). The pre-AIA *inter partes* reexamination process did not allow for discovery, expert evidence, oral argument, the application of rules of evidence and procedure, and cross-examination. IPR, on the other hand, does allow for such procedures, which further corroborates that Congress intended IPRs to be a substitute for litigation. *See* 35 U.S.C. § 316(a); 42 C.F.R. §§ 42.51–.53, .57–.65, .70–.71.

IPR is conducted by administrative patent judges within the Patent Trial and Appeal Board ("PTAB") of the PTO, 35 U.S.C. § 6(4)(b), and those judges are "of competent legal knowledge and scientific ability." *Id.* § 6(a). As such, these experts within the PTO are more likely come to correct decisions regarding the validity of patent claims faster than would be achieved via litigation in district court. *See SAS Inst., Inc.*, 825 F.3d at 1354 (Newman, J., dissenting) ("Congress designed the AIA to achieve expeditious and economical final resolution."); *see also* 157 Cong. Rec. S1352 (daily ed. Mar. 8, 2011) (Sen. Udall commenting that "a panel of experts is more likely to

reach the correct decision on a technical question compared to a jury composed of laypeople.").

IPR allows any third-party to challenge the validity of issued patents at the PTAB.[5] *Id.* § 311 (a)–(b). An IPR petition must be filed within one year of the initiation of litigation alleging infringement of the claims sought to be challenged for validity. *Id.* § 315(b). Once a petition for IPR is filed, the patent owner can respond within 3 months, justifying why review of the contested claims should not be instituted. 37 C.F.R. § 42.107(b); 35 U.S.C. § 313. The PTAB typically decides whether to institute IPR by the later of three months of the filing date of the patent owner's response or the due date for such a filing. *See Kamstrup A/S*, WL 6296699, at *1; *see also* 77 Fed. Reg. 48,757 (Aug. 14, 2012). The PTAB institutes IPR if "there is a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable." 37 C.F.R. § 42.108(c).

Once IPR is instituted, the PTO evaluates the contested claims for patentability in light of prior art in the form of patents or printed publications. 35 U.S.C. § 311(b). The petitioner bears the burden of proving, by a preponderance of the evidence, that claims are unpatentable. *Id.* § 316(e). The patent owner may amend the patent one time by motion to cancel claims or to offer a reasonable number of substitute claims to be considered by the PTAB. *Id.* § 316(d)(1)(A-B). Additional motions to amend may be allowed to advance settlement negotiations. *Id.* § 316(d)(2).

---

[5] IPR allows challenges only on the grounds of novelty or obviousness. 35 U.S.C. §§ 102–03. EPR, as discussed below, allows challenge also on the grounds of the patent's specification. *Id.* § 112.

The PTAB then renders a final written decision on the patentability of the contested claims within one year from the date an IPR is instituted, although an extension of 6 months for good cause is allowed. 37 C.F.R. § 42.100(c). In the final decision, the PTAB may cancel claims because they are unpatentable. *See* 35 U.S.C. §§ 102–03. Parties may also settle any issue; however, this does not preclude the PTAB from continuing to issue a final decision regarding patentability. 37 C.F.R. § 42.74. Any party not satisfied with the final decision of the PTAB may request a rehearing, *Id.* § 42.71(d)(2), or appeal the decision to the Federal Circuit. 35 U.S.C. § 141(c). Following a written decision by the PTAB, both the petitioner and any other real party-in-interest are estopped from asserting in a civil action that a claim is invalid on any ground that the petitioner raised or reasonably could have raised during IPR. *Id.* § 315(e).

C.  ***EX PARTE* REEXAMINATION**

EPR allows the PTO to correct mistakes it made during the initial patent examination and granting process.[6] The procedure was created to "provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts . . . ." *Snyder Seed Corp. v. Scrypton Sys., Inc.*, No. 98-CV-87S(H), 1999 WL 605701, at *2 (W.D.N.Y. June 11, 1999).

---

[6] *See, e.g.*, 3 Pub. Papers 2803 (Dec. 12, 1980) (President Carter commenting that the reexamination provisions are "the most significant improvement in our patent laws in more than a century.").

Any person[7] may, at any time during the enforceability of a patent, request EPR of a patent on the basis of prior art consisting of patents or printed publications. 35 U.S.C. § 302; 37 C.F.R. 1.510(a). The PTO will determine whether a substantial new question of patentability regarding any claim has been raised within three months of receiving an EPR request. 35 U.S.C. § 303(a); 37 C.F.R. § 1.515(b)(1). If such a question is raised, the PTO will order reexamination of the patent. 35 U.S.C. § 304. After an order for EPR, the patent owner has the right to respond to the question(s) raised and may amend or add new claims to narrow the patent. *Id.* EPR then proceeds as does initial examination of a patent pursuant to 35 U.S.C. §§ 131–33. *Id.*

EPR is distinguishable from IPR in two significant ways. First, EPR is not adversarial. After the first response from the patentee, the reexamination is effectively a closed proceeding and no additional evidence or amendments are allowed. *See id.* §§ 303–07. Second, a claim that survives EPR does not create estoppel against assertion of invalidity in a civil action based on grounds that were, or could have been, raised. *See id.* §§ 302–07. Only the patent owner has the right to appeal an unfavorable final written decision of an EPR.[8]

---

[7] Petitioners in EPR can be patent owners as well as third parties.

[8] 35 U.S.C. § 306 creates the patentee's right to appeal an unfavorable reexamination decision to the PTAB pursuant to 35 U.S.C. § 134(b) and then, following an unfavorable PTAB decision, to the Federal Circuit pursuant to 35 U.S.C. § 141. 35 U.S.C. § 306 does not grant a patentee the right of appeal following a favorable patentability decision. *Greenwood v. Seiko Instruments & Elecs., Ltd.*, No. CIV.A. 85-2812, 1988 WL 146050, at *2 (D.D.C. Jan. 13, 1988). Third-party appeals of final EPR decisions are not allowed. MPEP § 2273 (9th ed. Rev. 8, Jan 2018).

### III. DISCUSSION

When deciding whether to grant a stay when IPRs and/or EPRs are pending at the PTO, the Court analyzes the *eSoft* factors, *supra* Section II.A, in light of the specific procedural posture of the case. The analysis is mindful of Congress's intent to allow for reevaluation of issued patents within the PTO.

### A.   SIMPLIFYING AND STREAMLINING TRIAL

When weighing this factor, courts consider (1) the role of the PTO's expertise in determining claim validity and the assistance such determination will assist the Court in its own analysis and (2) whether "claims, arguments and defenses can be narrowed or entirely disposed of . . . ." *Broad. Innovation, L.L.C.*, 2006 WL 1897165, at *5 (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue . . . .")).

Based on Samsung's EPR and IPR filings with the PTO, Cellect's Asserted Claims face one or more of the following fates: they (1) survive intact because they are not examined or reviewed because Samsung's requests for EPR and IPR are denied; (2) survive intact on their merits following reexamination or review; (3) are cancelled; or (4) are narrowed by amendment.

The PTO has granted all 5 of Samsung's EPR requests. In due course, the PTO will review for validity at least 29 of Cellect's 56 Asserted Claims. Thus, it is inevitable that, in some way, any trial will be simplified by a stay of proceedings.  Even assuming that Cellect's argument is correct—that that the odds are in its favor that the Asserted Claims will survive EPR (and the possibly instituted IPRs), 29 of the 56 Asserted Claims

will be reexamined at the PTO. The Court will, therefore, gain valuable expert insight as to the issues underlying claim validity.[9] *Gould*, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to . . . facilitate trial of that issue by providing the district court with the expert view of the PTO . . . ."); *Softview Comput. Prods. Corp. v. Haworth, Inc.*, No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) ("All prior art presented to the Court will have been first considered by the PTO, with its particular expertise."). As a result of these proceedings, at trial the Court will have the benefit of the PTO's expert analysis.

If, on the other hand, some of the Asserted Claims are cancelled or the examination results in a narrowing of the claim scope, then the scope of the litigation is similarly narrowed. *Gould*, 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) . . . ."); .

*Softview Comput. Prods. Corp.*, 2000 WL 1134471, at *3 ("If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified.").

Regardless of any statistical jousting the parties might engage in, at least one of three outcomes is guaranteed at this point: (1) 29 of Cellect's 56 Asserted Claims will be reexamined and the Court will benefit from the expertise of the PTO at any trial; (2) some of the Asserted Claims are cancelled, necessarily narrowing the scope of any trial; or (3) some of the Asserted Claims are narrowed by amendment and any trial is

---

[9] EPR is conducted by an expert patent examiner, MPEP § 2236 (9th ed. Rev. 8, Jan 2018), and IPR is conducted by a panel of three administrative law judges who are "persons of competent legal knowledge and scientific ability". *Id* § 1202(a)–(c).

streamlined. Therefore, staying proceedings at this point will result in a simpler and more streamlined trial, and this weighs in favor of granting Samsung's Motion to Stay.

## B. STATUS OF DISCOVERY AND DATE FOR TRIAL

When weighing this factor, courts look not only to whether discovery has been completed and a trial date has been set, but also to other aspects of litigation proceedings such as summary judgment arguments and the status of the final pretrial order.[10] *Broad. Innovation, L.L.C.*, 2006 WL 1897165, at *8 (citing *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (noting that future motions for summary judgment could be rendered moot by decisions from the PTO)); *Softview Comput. Prods. Corp.*, 2000 WL 1134471, at *3 (noting "the Pretrial Order has not yet been prepared."). In this case, the Court is not persuaded that discovery has proceeded so far as to weigh significantly against staying proceedings.

To date the parties have served requests for production and interrogatories, with each fulfilling such requests. The parties have also filed a Joint Disputed Claim Terms Chart, and Samsung has filed its opening Claim Construction Brief. Little else of substance has happened, however. Also, proceedings have been delayed by several motions—including, ironically, two joint motions—to amend the Scheduling Order. Given those delays and the normal course of litigation, fact discovery in this case is unlikely to

---

[10] The Court recognizes the fact that there is significant variation in when, during litigation proceedings, a stay pending IPR or EPR might be granted. *Compare, e.g.*, *Gould*, 705 F.2d at 1342 (granting a motion to stay 5 years into litigation and 20 days before trial), *with e.g.*, *Tru-Balance, LLC v. Alcoa, Inc.*, No. 11-cv-01127-CMA-BNB, 2012 WL 619114, at *1 (D. Colo. Feb. 27, 2012) (granting a stay when discovery was not complete and no trial date had been set).

be completed until the end of 2020, with expert discovery unlikely to conclude until early 2021. Moreover, no trial date has been set.

In short, this case is in a relatively early stage of the proceedings and this weighs in favor of granting Samsung's Motion to Stay.

### C.     UNDULY PREJUDICING THE NONMOVING PARTY

In weighing this factor, courts evaluate (1) whether a delay caused by a stay of proceedings unduly prejudices the remedy to which the nonmoving party is entitled, and (2) whether the movant unfairly gains a tactical advantage from any stay granted. *Broad. Innovation, L.L.C.*, 2006 WL 1897165, at *10. The Court is not persuaded that Cellect will be unduly prejudiced by granting Samsung's Motion to Stay or that a stay would create a strategic advantage for Samsung.

Courts frequently find that mere delay caused by IPR is not prejudicial. *See, e.g.*, *Photoflex Prods., Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."); *Micrografx, LLC v. Samsung Telecomm. Am., LLC*, No. 3:13-CV-3599-N, 2014 WL 8239371, at *1 (N.D. Tex. July 9, 2014) ("A delay caused by the *inter partes* review process, without more, does not justify denial of a stay."). In this case, the Asserted Patents have all expired. Cellect's requested remedy of damages is, therefore, capped at amounts determined by any pre-expiration infringements of any claims that survive IPR, EPR, or review in court. The relief requested is, therefore, not unduly prejudiced by any delay due to a stay of proceedings.

Furthermore, and as discussed above, IPR provides a more efficient and timely resolution to disputes of patent validity than can be achieved by litigation. It is entirely unclear whether validity proceedings in district court would proceed any more expeditiously than they would at the PTO. Although there certainly exists the possibility of delay due to extension of the IPR process by the PTAB, the exercise of the right to appeal for rehearing at the PTAB, and exercise of the right of appeal to the Federal Circuit, those delays are merely speculative.

Cellect contends that a stay is prejudicial because it wishes to pursue claims for infringement against other alleged infringers, but that it can proceed in only one case at a time due to its limited resources. 35 U.S.C. § 286 bars recovery for infringement having occurred "more than six years prior to the filing of a complaint." While a delay of proceedings that limits recovery in a subsequent action by Cellect may represent undue prejudice, nothing suggests that parallel proceedings at the PTO and in this Court would be any more expeditious than would proceedings in this Court alone. If anything, and as discussed above, the Court is likely to be more efficient in its proceedings because of the PTO's expert findings.

When two parties are in competition in the marketplace, there is a risk that a patent-holder whose patent is being infringed will be prejudiced in ways that are not easily calculated to render monetary damages. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1033–34 (C.D. Cal. 2013) (citing *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 350–51 (D. Mass. 2011) ("A common complaint among litigating patent-holders is that a stay prevents them from

vindicating their patent rights for an extended period of time . . . . This prejudice is heightened when parties to litigation are direct competitors . . . .")). In this case, however, Cellect and Samsung do not directly compete in the same market. Rather, Cellect creates, develops, and licenses technology, while Samsung designs, manufactures, and sells products.

To determine whether Samsung obtains a tactical advantage from a stay of proceedings, the Court considers the timing of Samsung's IPR petition filings at the PTO. Samsung's IPRs were filed, nearly to the day, at the end of the 1-year statutory period for filing IPR requests once litigation has been commenced. Some courts have found that such timing of filing is reasonable, while other courts consider it an attempt to obtain an unfair tactical advantage. *Compare, e.g.*, *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 359 (D. Mass. 2015) (finding that filing IPR petitions within a week of the statutory deadline was not unreasonable, stating, "[i]t was reasonable for EMC to wait for ACQIS to choose which claims it intended to assert in the litigation before pursuing IPRs"), *with e.g.*, *Pragmatus Mobile, LLC v. Amazon.com, Inc.*, No. CV 14-436-LPS, 2015 WL 3799433, at *1 (D. Del. June 17, 2015) ("The timing of Moving Defendants' filing suggests they may be seeking a tactical advantage, given they were aware of the prior art asserted in their IPR petition many months before filing the petition just three days before the statutory deadline.").

In this case, Cellect initiated the litigation on February 14, 2019. It did not, however, send a finalized list of Asserted Claims to Samsung until Dec 19, 2019. Samsung, therefore, had only about three months to file its 22 IPRs at the PTO. Any

14

delay in making a filing of such magnitude, even if it creates a tactical advantage, cannot reasonably or fairly be attributed to Samsung. Therefore, based on the totality of the circumstances, any delay experienced by Cellect does not weigh against granting Samsung's Motion to Stay.

**D.     REDUCING THE BURDEN OF LITIGATION**

In determining whether a stay of proceedings pending IPR and/or would reduce the burden of litigation, courts consider (1) the impact of prior art evaluation by the PTO during IPR and EPR; (2) any reduction in costs to the judiciary and to the parties; and (3) the likelihood that claims will be narrowed or cancelled. *Softview Comput. Prods. Corp.*, 2000 WL 1134471, at *2 (citations omitted). "Courts recognize that shifting the patent validity issue to the PTO has many advantages, including . . . all prior art presented to the court will have been first considered by the PTO . . . ." *eSoft, Inc.*, 505 F. Supp. 2d at 786.

In this case, the PTO will minimally review 29 of the 56 Asserted Claims for validity based on its grant of Samsung's 5 EPR requests. As discussed above, any review of the prior art or any narrowing or cancelling of claims by the PTO, simplifies proceedings at trial. *See supra* section III.A. Such simplification reduces the burden of litigation on the Court and on the parties. If Samsung's IPRs are instituted, further review and possible narrowing or canceling of the Asserted Claims by the PTO would further simplifies the issues before the Court. Therefore, the burdens of litigation –

particularly the parties' anticipated substantial costs for factual and expert discovery, and the Court's time – are accordingly reduced.

Moreover, if the Asserted Claims survive any instituted IPR, Samsung will be estopped from asserting in litigation that a claim is invalid on any ground that it raised or reasonably could have raised during IPR. 35 U.S.C. § 315(e). This also reduces the burden of litigation on the Court and on the parties by narrowing the scope of the matters before the Court.

Staying proceedings will likely reduce the burden of litigation on the Court and the parties, which weighs in favor of granting Samsung's Motion to Stay.

In summary, based on the four factors articulated by the *eSoft* court, and considering both the totality of the circumstances and Congress's intent in enacting the EPR statute, and its reform of *inter partes* reexamination into its current AIA form of IPR, the scales tip heavily in favor of granting Samsung's Motion to Stay.

## IV.     CONCLUSION

Based on the foregoing, it is ORDERED by the Court that:

(1) Defendant's Motion to Stay Pending *Inter Partes* Review and *Ex Parte* Reexamination of Asserted Claims (Doc. # 56) is GRANTED;

(2) This case is STAYED from the date of this Order until further notice; and

(3) The parties shall advise the Court, within seven days, of the PTO's written decisions to institute Samsung's pending petitions for IPR, and of any final decisions arising out of any instituted IPRs and the granted EPRs. Additionally, the parties shall

submit quarterly status updates informing the Court of any relevant developments beginning **September 28, 2020**.

DATED: June 23, 2020							BY THE COURT:

							_____
							CHRISTINE M. ARGUELLO
							United States District Judge