IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00438-DDD-CYC

CELLECT, LLC, a Colorado Limited Liability Company,

    Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, and
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Cyrus Y. Chung, United States Magistrate Judge.**

Plaintiff Cellect, LLC, a technology development company, alleges that Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. infringed eleven patents. ECF No. 1 ¶¶ 1, 9–45, 52–307. It seeks to amend the subset of initial infringement contentions it initially selected to pursue. ECF No. 111. For the reasons that follow, the Court recommends that the plaintiff's motion be denied.

## BACKGROUND

When this case was assigned to them, Judges Arguello and Hegarty thoroughly summarized the issues in dispute and the history of this case. *Cellect, LLC v. Samsung Elecs. Co.*, No. 19-cv-00438-CMA-MEH, 2020 WL 3425166 (D. Colo. June 23, 2020) ("Stay Order"); *Cellect, LLC v. Samsung Elecs. Co.*, No. 19-cv-00438-CMA-MEH, 2019 WL 10960257 (D. Colo. Sept. 17, 2019), *recommendation adopted*, 2019 WL 10960253 (D. Colo. Oct. 2, 2019).

The Court therefore assumes the parties' familiarity with the history of this case and provides only such detail as is necessary for this motion.

The plaintiff initiated this case on February 14, 2019. ECF No. 1. Five months later, the parties filed a Joint Submission Concerning the Reduction of Asserted Claims and Prior Art References, ECF No. 31, in which each side proposed limits on the number of patent claims and prior art references that could be litigated at various phases of the case. The plaintiff proposed a 60% reduction of the 457 total claims for the initial infringement contentions, or 182 claims. *Id*. at 2; ECF No. 36 at 9:17–20, 11:7–16, 13:17–14:4. The defendants proposed that the plaintiff's initial infringement contentions be limited to 64 claims with up to 10 claims allowed per patent. ECF No. 31 at 3.

On July 30, 2019, Judge Hegarty held a Discovery Conference, during which the parties discussed their proposals. ECF No. 36 at 9:21–10:1, 12:8–26:11. Judge Hegarty ultimately adopted the defendants' proposed numerical limitations but also explained that he would allow the plaintiff to substitute some claims. He directed the plaintiff to make its "best guess" at its "strongest claims" to select its initial set of 64 but recognized that "discovery or further thought" could prompt the plaintiff to conclude that there were "a couple of different claims" it wanted to litigate. ECF No. 36 at 14:20–15:7. He anticipated that the potential number of substitutions, if any, would be low, noting that "changing out four or five" would not be unduly disruptive if the plaintiff made a sufficient showing for the requested substitution. *Id*. at 20:3–12.

The parties argued about the showing required to substitute a claim, and Judge Hegarty stated that he would require a showing of good cause for substitution. *Id*. at 20:13–18. However, he noted that earlier in the case he would apply a "relaxed" good cause standard, which he

2

analogized to a "rational basis" and, as the case moved forward, would require a more robust showing of good cause. *Id*. at 20:3–18, 21:25–22:14, 25:14–26:19.

On October 16, 2019, the defendants denied all of the plaintiff's allegations and asserted the affirmative defense that the claims were invalid pursuant to 35 U.S.C. §§ 102, 103, or 112. ECF No. 39 ¶¶ 53–308, 309. After the defendants repeatedly attempted to obtain a finalized list of initial infringement contentions, ECF No. 56-6 at 2, the plaintiff produced the list on December 19, 2019. ECF No. 56 at 15. The plaintiff identified only 56 initial infringement contentions (the "Asserted Claims"), short of the 64 it was allotted. ECF No. 56-6 at 2.

Two months later, the defendants entered five ex parte reexamination ("EPR") requests and 20 petitions for inter partes review ("IPR") with the United States Patent and Trademark Office challenging the validity of the Asserted Claims. ECF No. 56 at 1; ECF No 56-1 ¶¶ 3–4. This case was stayed pending consideration of the EPRs and IPRs. Stay Order, 2020 WL 3425166 at *7. The defendants subsequently filed three additional EPR requests. ECF No. 98 at 2. Litigation of the EPRs and IPRs took some five years but was complete by May 2025. ECF No. 98 at 11; *e.g., In re: Cellect, LLC*, 81 F.4th 1216 (Fed. Cir. 2023) (affirming Patent Trial and Appeal Board Orders), *cert. denied*, 145 S. Ct. 153 (2024). As a result, the stay was lifted. ECF No. 100.

At a Status Conference held thereafter, the parties disputed whether the plaintiff could now substitute claims for those previously selected. ECF No. 109 at 1. They agreed that the issue should be briefed. ECF No. 110 at 7:16–11:6. That is the motion pending before the Court today.

## **ANALYSIS**

The parties dispute the applicable standard for evaluating the motion. Good cause is the correct barometer.

This District's local patent rules do not dictate the standard required at this stage but do articulate a good-cause standard for amendment of infringement and invalidity contentions between the preliminary and final contentions. *See* D.C.COLO.LPtR 16(a)(3), 16(b)(3). "[N]umerous judges in this District" have imported that standard into contexts where a party seeks "to amend preliminary contentions" themselves, *Fox Factory, Inc. v. SRAM, LLC*, No. 23-cv-00313-GPG-KAS, 2024 WL 5055566, at *3–4 (D. Colo. Sept. 24, 2024), *recommendation adopted*, 2025 WL 2307896 (D. Colo. Aug. 11, 2025), including both preliminary infringement contentions and preliminary invalidity contentions. *Cocona, Inc. v. VF Outdoor, LLC*, No. 16-cv-02703-CMA-MLC, 2022 WL 462074, at *2–4 (D. Colo. Feb. 15, 2022) (applying good cause standard and allowing amendment of initial infringement contentions); *XY, LLC v. Trans Ova Genetics, LC*, No. 17-cv-00944-WJM-NYW, 2018 WL 11000694, at *9 (D. Colo. May 14, 2018) (finding that "changes between the Preliminary and Final Invalidity Contentions should be supported by good cause"). It therefore applies here.

The plaintiff protests. It argues that it is not seeking to amend the Asserted Claims, but would serve "*new initial* infringement contentions." ECF No. 114 at 2. As a result, it says, a rational-basis standard, not one of good cause, should apply. But this argument is contrary to the parties' discussions with the Court on June 24, 2025 when both they and the Court all understood this motion to be one seeking to amend the initial infringement contentions. ECF No. 110 at 7:20–22, 8:15–22, 9:9–15, 10:15–21.

The plaintiff also points to Judge Hegarty's comments at the July 30, 2019 hearing mentioning a "rational basis" and urges application of that standard. But in context, his "rational basis" remarks were simply analogies to explain his sliding scale of good cause: earlier

amendments, he indicated, would require less robust showings of good cause. *See id.* at 21:22–22:14. They did not purport to abandon good cause as the standard applicable here.[1]

The Court therefore must consider "(1) whether the moving party was diligent in amending its [Asserted Claims]; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted." *Cocona, Inc.*, 2022 WL 462074, at *3 (quoting *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 WL 5171332, at *3 (D. Colo. Nov. 8, 2017)). "[I]f the moving party fails to show diligence in seeking to amend its contentions, the Court need not even consider prejudice to the opposing party." *Fox Factory*, 2024 WL 5055566, at *4. The plaintiff, as the moving party, "has the burden of demonstrating good cause." *Crocs, Inc.*, 2017 WL 5171332, at *3.

By leaving its intentions vague, the plaintiff fails to meet that burden. Its motion does not identify how many claims it seeks to substitute, let alone which ones.

That lack of specificity leaves the Court at a loss about how to evaluate diligence or prejudice. For example, if the plaintiff sought only to substitute two claims, the Court might consider why the plaintiff did not include those two claims initially when the plaintiff used only 56 of the 64 initial infringement contentions it was allowed. If the plaintiff specified certain claims for substitution, it might point to some new evidence specific to those claims that was revealed during the years of litigation between the parties in other venues while this case was stayed. *See, e.g., Fox Factory*, 2024 WL 5055566, at *5 (finding that party "acted diligently in

---

[1] Even if the Court applied some lesser standard of good cause that was closer to rational basis, the plaintiff's failure to articulate which claims it seeks to substitute would result in the Court recommending that the motion be denied. Even then, the plaintiff would have to provide the Court with "some reasonably conceivable state of facts" that supports substitution. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). And, as discussed below, without knowing what the plaintiff seeks to substitute, there is no such "state of facts."

promptly seeking leave to amend after it learned about newly released, potentially infringing products"). But the lack of clarity on the claims the plaintiff seeks to substitute precludes any such analysis. *See XY, LLC v. Trans Ova Genetics, LC*, No. 17-cv-00944-WJM-NYW, 2021 WL 5564664, at *6 (D. Colo. Nov. 29, 2021) (teaching that when party seeking to amend prior art-based invalidity contentions "elected not to include a copy of" the item it sought to substitute that "preclude[d] th[e] court from finding good cause"), *recommendation adopted*, 2022 WL 1597862 (D. Colo. May 20, 2022). That, in turn, constrains the ability to find diligence sufficient to comprise good cause. *Fox Factory*, 2024 WL 5055566, at *6 (recommending denial of amendment of preliminary invalidity contentions when the movant "makes no diligence argument whatsoever as to" two prior art devices).

Nor would guessing at the plaintiff's probable course of conduct be a viable path of analysis. Given the rulings by the Federal Circuit and the Patent Trial and Appeal Board, it may be that the plaintiff now wants to substitute 56 or even 64 claims. Or its submission could be a much narrower, targeted effort designed to put forward claims distinguishable from the reasoning in those decisions. But the Court cannot "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991); *see Well Master Corp. v. Flowco Prod. Sols., LLC*, No. 21-cv-02145-CMA-KLM, 2024 WL 1281450, at *7 n.14 (D. Colo. Mar. 26, 2024) (declining to comb the record when party seeking to supplement invalidity contentions "merely incorporate[d] by reference every argument contained within three entire petitions for Inter Partes review" in support of its position); *see also RLI Ins. Co. v. Barnes*, No. 23-cv-02224-NYW-STV, 2024 WL 4728024, at *3 (D. Colo. Nov. 8, 2024) (noting that "[i]t was not this Court's duty to construct or expand Plaintiff's arguments" and denying motion for reconsideration). The plaintiff's lack of

6

commitment to a specific amendment, then, leaves the Court without a way to justify such an open-ended proposition.

After the defendants raised this issue, the plaintiff dismissed it, tersely noting that the Court "did not require or request Cellect to identify which of the asserted claims it wanted to substitute." ECF No. 114 at 3. That is true as far as it goes, but it does not take the plaintiff very far. The Court need not give step-by-step directions for how to satisfy a standard to hold a party to that standard. A district court directing the filing of summary-judgment motions does not, for example, tell the parties how to marshal their evidence; nor does the plaintiff offer any reason that any more detailed instruction is required in the patent context.

Nevertheless, the plaintiff says, its lack of specificity is harmless. On its view, good cause applies to all of its claims because the defendants knew about them all ever since they answered its complaint. ECF No. 114 at 7.

That proves too much. By that logic, the plaintiff could continue cycling in claim after claim until exhausting its patents' supply, defeating the entire purpose of a claim-narrowing case management plan.

Moreover, it belies the plaintiff's assertion that its diligence stems from its simple following of Judge Hegarty's claim-substitution plan. *See* ECF No. 111 at 10. Judge Hegarty contemplated the substitution of perhaps "four or five" claims throughout the litigation, ECF No. 36 at 20:3–12, more akin to soccer substitutions than the hockey line change the plaintiff may be contemplating here. Of course, the plaintiff may have a smaller scope in mind — but that is the point. Without specificity, there is no way to evaluate the plaintiff's assertion of good cause and compliance with Judge Hegarty's intended plan. And because it is the plaintiff's burden to

demonstrate good cause, *Crocs, Inc*., 2017 WL 5171332, at *3, that deficit dooms the plaintiff's efforts.

## CONCLUSION

For the foregoing reasons, the Court RECOMMENDS[2] that Cellect, LLC's Motion to Substitute Its Selected Subset of Asserted Claims in Accordance with the Court's Case Management Plan, ECF No. 111, be **DENIED**.

Dated this 13th day of February, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

---

[2] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.