# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00438-DDD-CYC

CELLECT, LLC, a Colorado Limited Liability Company,

        Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, and
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,

        Defendants.

---

**CELLECT, LLC'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

---

        Plaintiff Cellect, LLC ("Cellect") files this Amended Complaint for Patent Infringement and Demand for Jury Trial against defendants Samsung Electronics Co., LTD., ("SEC") and Samsung Electronics America, Inc.("SEA") (collectively, "Defendants" or "Samsung") and alleges as follows:

**THE PARTIES**

        1.      Cellect is a Colorado limited liability company with its principal place of business at 3134 Wyandot St., Denver, Colorado 80211-3825.  Along with its parent company, Micro-Imaging Solutions LLC ("MIS"), also based in Denver, Colorado, Cellect has invented and developed novel aspects of imaging technology known as Complementary Metal-Oxide Semiconductor ("CMOS").  This patented CMOS camera technology has important applications in modern smartphones and tablets.

2.      SEC is a multinational corporation incorporated under the laws of the Republic of
Korea and having its headquarters located at 129 Samsung-ro, Yeongtong-gu, Suwon-si,
Gyeonggi-do, Korea.  On information and belief, SEC has approximately 263 subsidiaries,
including Defendant SEA, which collectively with SEC operate four business divisions: Device
Experience ("DX"), which designs, manufactures, and sells products such as smartphones,
digital televisions, computer monitors, refrigerators, and washing machines, a merger of its prior
Consumer Electronics (CE) and Mobile Communications (IM) divisions; Device Solutions
("DS"), which designs, manufactures, and sells products and services within its Semiconductor
Business including memory products, LSI products such as system-on-chip ("SoC")
semiconductor devices and image sensors, and foundry services, as well as products within its
Display Business such as LCD and OLED panels ("SDC" division); and Harman, which designs,
manufactures, and sells connected car systems, audio and visual products, enterprise automation
solutions, and connected services ("Harman" division).

3.      SEA is a New York corporation having its principal place of business at 85
Challenger Road, Ridgefield Park, New Jersey, 07660.  On information and belief, SEA is a
wholly-owned subsidiary of SEC that markets and sells products and services within the United
States that are designed, manufactured, and/or provided by SEC and/or one or more of SEC's
approximately 263 subsidiaries and that fall within at least one of SEC's CE, IM, and DS
business divisions, including Samsung smartphones and tablets.  On information and belief, SEA
maintains an office at 12101 Airport Way, Broomfield, CO 80021 that is involved in making,
using, and/or selling Samsung smartphones and tablets.

4.     On information and belief, SEC and SEA work collectively with one another, and with SEC's other subsidiaries, in the design, manufacture, importation, distribution, marketing, and selling of Samsung smartphones and tablets.

## JURISDICTION AND VENUE

5.     This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

6.     This Court can exercise personal jurisdiction over Samsung because Samsung maintains substantial operations located in this District, and therefore Samsung's affiliations with this District are so substantial as to render it essentially at home in this District.  Additionally, this Court can exercise personal jurisdiction over Samsung in this action because Samsung has committed acts of infringement and/or inducement of infringement in this District, because Plaintiffs' claims arise out of and relate to Samsung's acts of infringement and/or inducement of infringement in this District, and because the exercise of jurisdiction by this Court over Samsung in this action would be reasonable. Accordingly, Samsung has minimum contacts with this District such that the maintenance of this action within this District would not offend traditional notions of fair play and substantial justice.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b) because Samsung resides in this District and because Samsung's acts of infringement and/or inducement of infringement take place in this District.

## CELLECT'S INNOVATIONS

8.     Cellect and its parent company, Micro-Imaging Solutions, pioneered and developed complementary metal-oxide semiconductor ("CMOS") imaging sensor technology.

For its pioneering development, the United States Patent & Trademark Office has awarded Cellect more than 21 U.S. Patents.

9.      MIS was founded in 1994 by Dr. Edwin Adair, a medical doctor and prolific inventor.  Dr. Adair founded MIS and focused on designing and enabling high-resolution, disposable endoscopes.  Subsequently, Dr. Adair and his two sons, John Adair and Jeff Adair, further developed this technology and came up with revolutionary ideas for physically separating CMOS sensors and processors to enable CMOS sensor technology to be used in micro-sized compact configurations.  MIS obtained patents covering this technology, now owned by Cellect.

10.     Cellect further developed CMOS technology for use in camera phones to enable these devices to be thinner, more compact, and more efficient.  Cellect obtained additional patents which cover technology that is now essential in the design of smartphones and tablets. John and Jeff Adair continue to operate MIS and Cellect in Denver, Colorado where the company was founded.

11.     MIS has successfully licensed its patented technology to manufacturers in the medical device industry.  Several of these licensees contacted MIS on their own initiative to request rights to this patented technology.

## CELLECT'S ASSERTED PATENTS

12.     On March 28, 2000, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,043,839 ("the '839 Patent"), titled "Reduced Area Imaging Devices."  On September 18, 2025, the USPTO issued an *Ex Parte* Reexamination Certificate. A true and correct copy of the '839 Patent is attached to this Amended Complaint as **Exhibit 1** and is incorporated by reference herein.

13. All rights, title, and interest in the '839 Patent have been assigned to Cellect, who is the sole owner of the '839 Patent.

14. The '839 Patent is generally directed towards a reduced area imaging device in which a CMOS image sensor and circuitry are placed in a stacked fashion at the same location. This patent relates to the use of stacked CMOS technology without the use of an enabling technology. The '839 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

15. On July 23, 2002, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,424,369 ("the '369 Patent"), titled "Hand-Held Computers Incorporating Reduced Area Imaging Devices." On August 12, 2025, the USPTO issued an *Ex Parte* Reexamination Certificate. A true and correct copy of the '369 Patent is attached to this Amended Complaint as **Exhibit 2** and is incorporated by reference herein.

16. All rights, title, and interest in the '369 Patent have been assigned to Cellect, who is the sole owner of the '369 Patent.

17. The '369 Patent is generally directed towards stacked CMOS technology in a personal data assistant ("PDA"). Specifically, the '369 Patent claims are directed to a CMOS imager and claims directed to the stacked electronics CMOS imager invention in a PDA environment. The '369 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

18.     On January 3, 2006, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,982,740 ("the '740 Patent"), titled "Reduced Area Imaging Devices Utilizing Selected Charge Integration Periods."  On March 28, 2024, the USPTO issued an *Ex Parte* Reexamination Certificate.  A true and correct copy of the '740 Patent is attached to this Amended Complaint as **Exhibit 3** and is incorporated by reference herein.

19.     All rights, title, and interest in the '740 Patent have been assigned to Cellect, who is the sole owner of the '740 Patent.

20.     The '740 Patent is generally directed towards a reduced area image device which utilizes selected charge integration periods.  The '740 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

21.     On May 30, 2017, the USPTO issued to Cellect LLC and John Gregory Adair U.S. Patent No. 9,667,896 ("the '896 Patent"), titled "Reduced Area Imaging Device Incorporated Within Endoscopic Devices."  On December 5, 2023, the USPTO issued an *Inter Partes* Reexamination Certificate.  A true and correct copy of the '896 Patent is attached to this Amended Complaint as **Exhibit 4** and is incorporated by reference herein.

22.     All rights, title, and interest in the '896 Patent have been assigned to Cellect, who is the sole owner of the '896 Patent.

23.     The '896 Patent is generally directed towards a reduced area imaging device in various configurations, and connections (either wired or wireless) between the imaging device elements and a video display.  The '896 Patent discloses and specifically claims inventive

concepts that represent significant improvements over conventional single-chip imaging devices
with the image sensor and image processing on the same plane.

## PATENT ELIGIBILITY

24.    All of the Asserted Patents are patent eligible, valid, and enforceable.  The claims
identified above in the Asserted Patents are concrete, technological improvements to
image-sensor architecture and CMOS-based imaging systems.  The claims are directed to
specific, non-abstract structures and methods that represent significant improvements over
conventional CMOS technology.  *See*, e.g., Ex. 1 ('839 Patent) at 3:9-13, 3:40-44 ("The 'camera
on a chip' technology can be furthered improved with respect to reducing its profile area and
incorporating such a reduced area imaging device into very small investigative instruments
which can be used in the medical, dental, or other industrial fields").

25.    The '839 Patent claims inventive concepts that represent significant
improvements over conventional single-chip imaging devices with the image sensor and image
processing on the same plane.  Unlike conventional CMOS camera on a chip technology, the
'839 claims a novel device with CMOS image sensor with separate processing circuit board for
converting a pre-video image to post video image.  Separating the imaging and processing
circuity provides technical improvements by enabling a customized form factor and can reduce a
desired profile area.  Ex. 1 ('839 Patent) at 7:43-48 ("If the profile area is not critical in terms of
limiting the largest sized imaging element within the imaging device, then the additional circuit
boards 50 and 60 which are normally placed in line with image sensor 40 can be aligned in an
offset manner or may be larger than the profile area of image sensor 40."); 8:24-34
("incorporation of the imaging device in a housing which would normally hold a traditional

camera still provides an advantageous arrangement…. the processing circuitry of the imaging device can be positioned in a remote control box").  Separating the board also provides for further manipulation of the design to add additional structural support allowing the image sensor to be bonded to portions of the device in a different location.  *See* Ex. 1 ('839 Patent) at 3:51-53 ("Additionally, image sensor 40 may be bonded to lens system 42 in order to provide further structural support to the imaging device 11 when mounted within the distal end 16.").  Another benefit is a reduction in the need for multiple image processors where more than one image sensor is used in a system.  Further, the claimed invention provided reduced power consumption and radio interference compared to conventional CCD image sensors.  *See, e.g.,* Ex. 1 ('839 Patent) at 1:59-60 ("Furthermore, this particular CMOS imager requires 100 times less power than a CCD-type imager.").

26.     The '369 Patent claims a handheld computer, referred to as a PDA, that transmits data and video through a communications network using a video system using a novel camera module.  *See, e.g.,* Ex. 2 ('369 Patent) at 3:35-45 ("a need still exists for a reduced area imaging device which can be used in even the smallest type of industrial application.  Recently, devices known as palm top computers, PDA(s), or hand-held computers have become very popular items."); 5:24-37 ("the invention disclosed herein can be considered an improvement to a PDA wherein the improvement comprises a video system….").  The novel camera module separates the pixel arrays from timing and control circuitry and processing circuitry onto multiple planes and includes additional circuit boards for enhancing a pre-video image signal.  This provide the ability to customize the form factor while reducing the desired profile are.  *See*, e.g., *id.* at 12:55-13:17 ("different options available in terms of arrangement of the components of the imaging

device….").  Further, the use of additional companion circuit board to enhance the pre-video image improved the quality of the processed image (e.g., enhanced brightness and contrast).

27.    The '740 Patent claims separating the image sensor and pre to post image processor to provide the ability to customize the form factor of CMOS image devices and/or CID image devices by separating components (e.g., timing and control circuitry, and processor) to reduce the image profile area.  *See, e.g.,* Ex. 3 ('740 Patent) at 3:19-36, 4:65-5:27 (describing exemplary embodiments allowing for customization of the architecture), 12:39-61 (describing exemplary benefits of separating and combining various circuitry).  Additionally, the '740 Patent describes a time-select switch to vary an integration period to select an image with a desired brightness.  Ex. 3 at 5:28-34, 5:54-6:43, 18:49-19:36 (describing how the selection of the actual integration period can be used to overcome low light condition and compares the difference between CCD); 19:37-57 (describing use of addition and separate circuitry 318 to enable manual selection of the integration period).  The '740 Patent specifically allows the location of a *remote* time-select switch that can be used to vary integration periods and produce an image having a desired brightness.  *See, e.g.,* Ex. 3 ('740 Patent) at Figure 10.  The '740 Patent takes a unique and novel approach by separating the various components onto separate planes and circuit boards, and that includes separating the (remote) time-select switch.  The '740 Patent includes the additional novel feature of incorporating supplemental boards that can further enhance the pre-video signal, further improving the pre-video and video image compared to conventional systems.

28.    The '896 Patent claims a CMOS pixel-array imaging device in which the largest dimension of the image sensor is between 2 and 12 mm and the CMOS image sensor is

9

structurally separated from the pre- to post-video image-processing circuitry.  The separate

circuit boards are offset and positioned on substantially parallel planes ("said second circuit

board being offset from said first circuit board, said second plane of said second circuit board

being substantially parallel to said first plane of said first circuit board"), enabling customized

physical form factors and reduced profile area.  *See, e.g.,* Ex. 4 ('896 Patent) at 12:16-39

(describing exemplary benefits to form factor by separating or combining various circuitry).  The

'896 Patent also teaches reduced power consumption and reduced radio-frequency interference

compared to conventional CCD image sensors.

29.    The Asserted Patents share a common inventive theme: physically separating the

image sensor from timing, control, and image-processing circuitry onto distinct circuit boards

and planes, and using supplemental circuitry to enhance pre-video image signals.  *See, e.g.,* Ex. 2

('369 Patent) at 4:41-46 ("the timing and control circuits can be placed either on the same planar

structure as the pixel array, in which case the image sensor can also be defined as an integrated

circuit, or the timing and control circuitry can be placed remote from the pixel array"); 4:64-67

("In a second arrangement, the image sensor and the processing circuitry may all be placed in a

stacked arrangement of miniature circuit boards or planar circuit structures and positioned at the

distal tip of the camera module"); 9:19-23 ("If it is not important to limit the size of the profile

area, then any circuitry placed behind image sensor **40** can be aligned in an offset manner, or

may simply be larger than the profile area of image sensor **40**.").  This multi-plane architecture

departs from conventional single-chip CMOS and CCD imaging systems, which integrate all

components on a single plane with limited form-factor flexibility or suffer from higher power

consumption, greater interference, and reduced image quality.  *See, e.g.,* Ex. 2 ('369 Patent) at

3:35-38 ("Although the "camera on a chip" concept is one which has great merit for application in many industrial areas, a need still exists for a reduced area imaging device which can be used in even the smallest type of industrial application."); 1:64-66 ("CMOS imager requires 100 times less power than a CCD-type imager.")

30.    The patents describe and claim specific hardware configurations—offset circuit boards, parallel planes, remote time-select switches, supplemental pre-video enhancement boards, and multi-plane pixel array structures—that improve the operation of the imaging device itself.  Ex. 2 ('369 Patent) at 11:65-67 ("placing the timing and control circuits on the same planar structure with the pixel array results in the pre-video signal having less noise.").  These are not abstract concepts; they are physical, structural innovations that enable new device architectures and improved imaging performance.

<u>**CELLECT'S NOTICE OF INFRINGEMENT TO DEFENDANTS**</u>

31.    Cellect provided Samsung with notice of its patents, including the Asserted Patents long ago.  Despite this knowledge, Samsung has continued its infringing activity.  More specifically, on or about February 26, 2014, Cellect gave Samsung in-person notice of its infringement of Cellect's patents during a meeting in San Francisco with Junwon Lee, Director of SEC's Licensing Team.  During its February 26 meeting, Cellect described to Samsung how the Accused Products infringed Cellect's patents.  Specifically, Cellect gave a presentation to Samsung which explicitly disclosed its patent portfolio and explained how the Samsung Galaxy smartphones, among other products, infringed the inventions set forth in Cellect's Asserted Patents.  Samsung was also provided with an exemplary infringement claim chart during this meeting relating to their Galaxy smartphones.

32.    During its February 26, 2014 meeting, Cellect offered Samsung a license under the entire Cellect patent portfolio, including the Asserted Patents.

33.    Despite Cellect's best efforts to inform Samsung that its products infringe Cellect's patents and to engage Samsung in good-faith licensing discussions, Defendants refused to take a license to Cellect's patents.

34.    On February 14, 2019, Cellect filed a Complaint for Infringement of the '839, '369, '740 and '896 patents (among others).

## DEFENDANTS' INFRINGING PRODUCTS AND TECHNOLOGIES

35.    Defendants make, use, sell, offer for sale, and/or import into the United States and this District products and services that utilize complementary metal-oxide semiconductor ("CMOS") multi-chip and/or stacked image sensor reduced area imaging devices and related technology, including, but not limited to, Samsung tablets and smartphones, among others (collectively, the "Accused Products").

### Samsung Tablets

36.    Since at least February 26, 2014, when Cellect gave Samsung direct notice of the Asserted Patents, Samsung has made, sold, offered for sale, and/or imported into the United States and this District tablet products which incorporate Cellect's inventions set forth in the Asserted Patents, including but not limited to the Samsung Galaxy Tab 4, Samsung Galaxy TabPro, Samsung Galaxy Tab S, Samsung Galaxy Tab A, Samsung Galaxy Tab S2, Samsung Galaxy TabPro S, Samsung Galaxy TabPro S2, Samsung Galaxy Tab A2, and Samsung Galaxy Tab A3, Samsung Galaxy Tab S3, and Samsung Galaxy Tab S4.  *See* Ex. 11 (https://en.wikipedia.org/wiki/List_of_Samsung_tablets).

37.    The Galaxy Tab and "S" series are Samsung's flagship models, while its

"Active," and "E" and "A" series models are its mid-level and entry-level models.  *See id.*  Like

the Galaxy A smartphone series, the Tab A tablets incorporate rear and front CMOS image

sensors and associated image processing circuitry that perform the same relevant functions as

those described above with respect to the Galaxy S9 and other flagship smartphones.

38.    All of the Galaxy tablets include multiple image sensors, including front and rear

cameras, including a multi-component camera models that includes a CMOS pixel array,

separate timing and control circuitry, companion boards for enhancing pre-video signals, and

separate image processor for converting pre-video signal to post video images.  This

architecture—sensor on one substrate, processing and control circuitry on separate

boards/planes—matches the multi-plane, multi-board imaging architecture described in the

Asserted Patents as explained above.  *See*, e.g., Ex. 12

(https://en.wikipedia.org/wiki/Samsung_Galaxy_Tab_4_10.1); Ex. 13a, Ex. 13b

(https://en.wikipedia.org/wiki/Samsung_Galaxy_Tab_S_series); Ex. 14

(https://en.wikipedia.org/wiki/Samsung_Galaxy_Tab#Samsung_Galaxy_Tab_S2_.E2.80.93_201

5); Ex. 15 (https://www.samsung.com/us/mobile/tablets/).

**Samsung Smartphones**

39.    Since at least February 26, 2014, when Cellect gave Samsung direct notice of the

Asserted Patents, Samsung has made, sold, offered for sale, and/or imported into the United

States and this District wireless phone products which incorporate Cellect's inventions set forth

in the Asserted Patents, including but not limited to the Samsung Galaxy S5, Samsung Galaxy

S6, Samsung Galaxy S7, Samsung Galaxy S8, Samsung Galaxy S9, Samsung Galaxy Note 3,

Samsung Galaxy Note 3 Neo, Samsung Galaxy Note 4, Samsung Galaxy Note 5, Samsung Galaxy Note 7, Samsung Galaxy Note 8, Samsung Galaxy J, and Samsung Galaxy A.

40.     The Samsung Galaxy smartphones are Samsung's flagship models.  The exemplary Galaxy S9, like the Galaxy Note 3, Note 3 Neo, Note 4, Note 5, Note 7, S5, S6, S7, and S8 (including plus and edge models), uses multiple image sensors, including a multi-component camera models that includes a CMOS pixel array, separate timing and control circuitry, companion boards for enhancing pre-video signals, and separate image processor for converting pre-video signal to post video images.  This architecture—sensor on one substrate, processing and control circuitry on separate boards/planes—matches the multi-plane, multi-board imaging architecture described in the Asserted Patents as explained above.

41.     The Samsung Galaxy A series is a line of mid-range smartphones manufactured by Samsung Electronics.  The A Series 2014-15 lineup (1st generation) includes Samsung Galaxy model numbers Alpha, A3, A5, A7, and A8.  The A Series 2016 lineup (2nd generation) includes Samsung Galaxy model numbers A3, A5, A7, A9, A9 Pro, and A8.  The A Series 2017 lineup (3rd generation) includes Samsung Galaxy model numbers A3, A5, and A7.  The A Series 2018 lineup (4th generation) includes Samsung Galaxy model numbers A8, A8+, A6, A6+, A8 Star, A7, A9, A6s, and A8s.

**All the Accused Products Share Features Relevant to Infringement**

42.     On information and belief, "[t]he Galaxy A (2016) series are similar to the Galaxy S6, and the Galaxy Note 5 flagships, which were released in April 2015, and August 2015, respectively."  Ex. 16 (https://en.wikipedia.org/wiki/Samsung_Galaxy_A_series).

43.     On information and belief, "[t]he Galaxy A (2017) series are very similar to the Galaxy S7 and the S7 Edge, released in March 2016."  Ex. 16 (https://en.wikipedia.org/wiki/Samsung_Galaxy_A_series).

44.     On information and belief, the Samsung Galaxy J series was first introduced in 2015.  Models of Galaxy J1 were released in 2015 and 2016 respectively.  Models of Galaxy J2 were released in 2015, 2016, 2017 and 2018 respectively.  Models of Galaxy J3 were released in 2016, 2017, and 2018 respectively.  Models of Galaxy J4 were released in 2018.  Models of Galaxy J5 were released in 2015, 2016, 2017 respectively.  Models of Galaxy J6 were released in 2018.  Models of Galaxy J7 were released in 2015, 2016, 2017, and 2018 respectively.  Since 2019, the Samsung Galaxy J series merged with Samsung Galaxy A series.

45.     All of the Accused Products infringe the Asserted Patents for similar reasons and have the same relevant characteristics, including the functional operation and layout of the reduced area image devices contained in each Accused Product.  Differences in screen resolution, sensor size, pixel size, memory, processor speed etc. are not relevant to Samsung's infringement of the Asserted Patents.

46.     The image sensor in the Accused Products performs the function of capturing analog information about the incident photons (light packets) on the photodetectors corresponding to each pixel, this information is amplified and converted into a signal relating to the brightness of the incident photons.  The image sensor produces a pre-video signal that passes through an digital processing signal chain and ISP which enhances the pre-video signal (e.g., digital gain and compensation for various analog circuit variations).

47.    The pre-video signal is converted to a post-video signal for all Accused Products by an image processor that is on a separate board and/or plane.  Although Accused Devices may use different processors, these processors have the same relevant characteristics.

## COUNT I
### (Direct Infringement of the '839 Patent pursuant to 35 U.S.C. § 271(a))

48.    Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

49.    Defendants infringe Claims 3 and 9 of the '839 Patent in violation of 35 U.S.C. § 271(a).

50.    Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

51.    Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

52.    Defendants' infringement include the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize complementary metal-oxide semiconductor ("CMOS") multi-chip and/or stacked image sensor reduced area imaging devices allowing for a slim/reduced profile, including Samsung tablets and smartphones (collectively, the "'839 Accused Products").

53.    The '839 Accused Products practice the patented invention of the '839 Patent and infringed the '839 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals.  Using the patented technology, the form factors of the

16

Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

54.    To the extent the '839 Accused Products include components or software owned or manufactured by third parties, the '839 Accused Products still infringed the '839 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold.  Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

55.    For example, as shown below, the Accused Products such as the Galaxy S9, includes a front and rear facing cameras including CMOS image sensors in a separate plane and remote from the processor.



| Galaxy S9 | rear CMOS image sensor | front CMOS image sensor |

Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5; Ex. 6 (https://www.techinsights.com/blog/samsung-galaxy-s9-teardown) at 6.

56.     The Galaxy S9 includes additional/second circuit boards for enhancing the pre-video image, including image stabilization, gyroscopic sensor boards and image sensor processor (ISP), which performs the function of enhancing the pre-video image, including denoise, digital binning, zig-zag reduction, phase AF processing, dynamic/PDAF BPC, PD-AF X-talk removal, WDR, digital gain, and dyamic range compression.  This is on-chip or a companion chip in a separate plance that does not extend substantially beyond the pixel array.

57.     Each of the CMOS image sensors (front and rear) lay in a first plane and include

an array of CMOS pixels.  Shown below is an example of the rear facing CMOS image sensor

and array of pixels with timing and control circuitry for the S9+:



Ex. 6 (https://www.techinsights.com/blog/samsung-galaxy-s9-teardown).

58.     Shown below is an expanded view of the front facing CMOS image sensor and

array of pixels with timing and control circuitry.



Ex. 6 (https://www.techinsights.com/blog/samsung-galaxy-s9-teardown).

59.     The image sensors in the Galaxy S9/S9+ are connected to the processor's circuit

board using a flex cable.  *See* Ex. 5

(https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5.  On

information and belief, the Galaxy S9 flex cable uses a MIPI interface and complies with CSI

standards. *See* Ex. 7 (https://www.electronicdesign.com/technologies/communications/article/

21799475/understanding-mipi-alliance-interface-specifications); Ex. 8

(https://www.mipi.org/specifications/csi-2).

      60.    The flex cable has first and second ends and is used to send pre-video signals

from the sensor to the processor. On information and belief, the flex cable is transmitting said

pre-video signal (e.g., RAW 10 bit RGB) and communicates with the image sensor. *Id.*



Flex cable with first and second ends

Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5; Ex. 6

(https://www.techinsights.com/blog/samsung-galaxy-s9-teardown) at 6.

      61.    As shown above, the processor's circuit board lays in a second plane, is

longitudinally aligned with the image sensors which are connected using the flex cable.

      62.    The Galaxy S9 processor (e.g., Snapdragon 845) converts the pre-video signal so

it can be viewed on a display.

63.     The Galaxy S9 includes a power supply (e.g., battery or USB) that is coupled to the image sensor to power the pixels and time and control circuitry and is also coupled to the processor on the circuit board.



Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322).

64.     On information and belief, all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals.

65.     Defendants' infringement of the '839 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

66.     Defendants have been long-aware of Cellect's patents, including the '839 Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed above,

Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents. Even after being shown that their products infringe Cellect's patents, including the '839 Patent, on information and belief Defendants made no effort to avoid infringement. Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this Amended Complaint. All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

67.     Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights. As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '839 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

<u>**COUNT II**</u>
**(Indirect Infringement of the '839 Patent pursuant to 35 U.S.C. § 271(b))**

68.     Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

69.     As set forth above, Samsung has had knowledge of Cellect's patent portfolio and of its infringement of the '839 Patent since at least 2014 and no later than the date of the February 14, 2019 Complaint.

70.     In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly infringes Claims 3 and 9 of the '839 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under the doctrine of equivalents. Samsung induces infringement of the '839 Patent by instructing, directing and/or

requiring others, including its customers, purchasers, users, and developers, to meet claim

elements, literally and/or under the doctrine of equivalents, of Claims 3 and 9 of the '839 Patent.

71.    Samsung knew or was willfully blind to the fact that it is inducing others,

including customers, purchasers, shoppers, users, and developers to infringe claim 3 and 9 the

'839 Patent.

72.    Samsung knowingly and actively aided and abetted the direct infringement of the

'839 Patent by instructing and encouraging its suppliers, developers, manufacturers, customers,

purchasers, shoppers, users, developers, and/or vendors to use the Accused Products and thereby

perform the steps of the disclosed method.  Such instructions and encouragement include, but is

not limited to, advising third parties to use the Accused Products through which third parties may

infringe the '839 Patent, and by advertising and promoting the Accused Products, and

distributing guidelines and instructions to third parties on how to use the Accused Products in an

infringing manner.

73.    For example, Samsung provides instructions, user manuals and training guides

on how to use a touchscreen display as a time select switch for controlling the integration

periods to produce an image of a desired brightness.  Instructions direct users to adjust ISO

settings, exposure, metering modes, and white balance settings selecting options on the

touchscreen display:

**Configure shooting mode**

Allow the camera to determine the ideal mode for your pictures or choose from
several shooting modes.

○ From 📷 **Camera**, swipe the screen right and left to change shooting modes.

- **Photo**: Allow the camera to determine the ideal settings for pictures.
- **Video**: Allow the camera to determine the ideal settings for videos.
- **Live focus**: Take artistic pictures by adjusting the depth of field.

69

- **More**: Choose other available shooting modes. Tap ✏️ **Edit** to drag modes into
  or out of the Modes tray at the bottom of the Camera screen.
  – **Pro**: Manually adjust the ISO sensitivity, exposure value, white balance, and
    color tone while taking pictures.
  – **Panorama**: Create a linear image by taking pictures in either a horizontal
    or vertical direction.

*See* Ex. 9 (Galaxy S9 Manual) at 69-70.

## COUNT III
### (Direct Infringement of the '369 Patent pursuant to 35 U.S.C. § 271(a))

74.      Cellect repeats, realleges, and incorporates by reference, as if fully set forth

herein, the allegations of the preceding paragraphs, as set forth above.

75.      Defendants infringe Claims 4 and 5 of the '369 Patent in violation of 35 U.S.C.

§ 271(a).

76.      Defendants' infringement is based upon literal infringement or, in the alternative,

infringement under the doctrine of equivalents.

77.      Defendants' acts of making, using, importing, selling, and offering for sale

infringing products and services were without permission, consent, authorization, or license of

Cellect.

78.     Defendants' infringement include the manufacture, use, sale, importation and offer for sale of Defendant's products that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and smartphones (collectively, the "'369 Accused Products").

79.     The '369 Accused Products practice the patented invention of the '369 Patent and infringed the '369 Patent because they make, sell, offer for sale, and/or use the Accused Products which include personal digital assistant PDA devices that receive and transmit video images and include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals.

80.     To the extent the '369 Accused Products include components or software owned or manufactured by third parties, the Accused Products still infringed the '369 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold.  Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

81.     For example, the Accused Products such as the Galaxy S9, includes a front and rear facing cameras including CMOS image sensors in a separate plane and remote from the processor.  *See supra* ¶¶ 55, 57-58.

82.     Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels for producing a pre-video signal.  *See supra* ¶¶ 57-58.

83.     The image sensors in the Galaxy S9 are connected to the processor's circuit board lying in a second plane using a flex cable.  *See* Ex. 5

(https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5.  On

information and belief, the Galaxy S9 flex cable uses a MIPI interface and complies with CSI

standards.  *See* Ex. 7 (https://www.electronicdesign.com/technologies/communications/article/

21799475/understanding-mipi-alliance-interface-specifications); Ex. 8

(https://www.mipi.org/specifications/csi-2); *see also supra* ¶ 60.

84.    The flex cable has first and second ends and is used to send pre-video signals

from the sensor to the processor.  On information and belief, the flex cable is transmitting said

pre-video signal and communicates with the image sensor.  *Id.*

85.    As shown above, the processor's circuit board lays in a second plane and is

longitudinally aligned with said image sensor, is coupled with the image sensors which are

connected using the flex cable.

86.    The Galaxy S9 processor (e.g., Snapdragon 845) converts the pre-video signal to

a post-video using the circuitry shown so they can be viewed on a display attached to the

smartphone.

87.    The video screen is connected to the first circuit board (and attached to the PDA)

to display video images processed on the first circuit board as shown below.



Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322, *see* embedded video at https://youtu.be/A0zAwJlypOk at 0:26).

88.    On information and belief, all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals.

89.    Defendants' infringement of the '369 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

90.    Defendants have been long-aware of Cellect's patents, including the '369 Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed above, Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being shown that their products infringe Cellect's patents, including the '369 Patent, on information and belief Defendants made no effort to avoid infringement.  Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this Amended Complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

91.    Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights.  As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '369 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

**<u>COUNT IV</u>**
**(Indirect Infringement of the '369 Patent pursuant to 35 U.S.C. § 271(b))**

92.     Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

93.     As set forth above, Samsung has had knowledge of Cellect's patent portfolio and of its infringement of the '369 Patent since at least 2014 and no later than the date of the February 14, 2019 Complaint.

94.     In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly infringes Claims 4 and 5 of the '369 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under the doctrine of equivalents.  Samsung induces infringement of the '369 Patent by instructing, directing and/or requiring others, including its customers, purchasers, users, and developers, to meet claim elements, literally and/or under the doctrine of equivalents, of Claims 4 and 5 of the '369 Patent.

95.     Samsung knew or was willfully blind to the fact that it is inducing others, including customers, purchasers, shoppers, users, and developers to infringe claim 43 and 5 the '369 Patent.

96.     Samsung knowingly and actively aided and abetted the direct infringement of the '369 Patent by instructing and encouraging its suppliers, developers, manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to use the Accused Products.  Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products through which third parties may infringe the '369 Patent, and by advertising and promoting the Accused Products, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

**COUNT V**
**(Direct Infringement of the '740 Patent pursuant to 35 U.S.C. § 271(a))**

97.    Cellect repeats, realleges, and incorporates by reference, as if fully set forth

herein, the allegations of the preceding paragraphs, as set forth above.

98.    Defendants infringe Claims 3 and 15 of the '740 Patent in violation of 35 U.S.C.

§ 271(a).

99.    Defendants' infringement is based upon literal infringement or, in the alternative,

infringement under the doctrine of equivalents.

100.    Defendants' acts of making, using, importing, selling, and offering for sale

infringing products and services were without the permission, consent, authorization, or license

of Cellect.

101.    Defendants' infringement include the manufacture, use, sale, importation and

offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked

image sensor reduced area imaging devices, including Samsung tablets and smartphones

(collectively, the "'740 Accused Products").

102.    The '740 Accused Products practice the patented invention of the '740 Patent and

infringed the '740 Patent because they make, sell, offer for sale, and/or use the Accused Products

which include CMOS image sensors lying in a separate plane from the processor which converts

pre-video signals to post-video signals.  The pre-video signal is capable of being carried for

transmission by a single wire conductor.  Using the patented technology, the form factors of the

Accused Products can be customized to reduce the surface area and provide more efficient use of

multiple CMOS image sensors.

103.    To the extent the '740 Accused Products include components or software owned or manufactured by third parties, the Accused Products still infringed the '740 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold.  Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

104.    For example, the Accused Products such as the Galaxy S9, includes a front and rear facing cameras including CMOS image sensors in a separate plane and remote from the processor.  *See supra* ¶¶ 55, 57-58.

105.    Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels for producing a pre-video signal.  *See supra* ¶¶ 57-58:

106.    The image sensors in the Galaxy S9 are connected to the processor's circuit board lying in a second plane using a flex cable.  *See* Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5.  On information and belief, the Galaxy S9 flex cable uses a MIPI interface and complies with CSI standards.  *See* Ex. 7 (https://www.electronicdesign.com/technologies/communications/article/21799475/understanding-mipi-alliance-interface-specifications); Ex. 8 (https://www.mipi.org/specifications/csi-2); *see also supra* ¶ 60.

107.    The flex cable has first and second ends and is used to send pre-video signals from the sensor to the processor.  On information and belief, the flex cable is transmitting said pre-video signal and communicates with the image sensor.  *Id.*

108.    As shown above, the processor's circuit board lays in a second plane, is longitudinally aligned with the image sensors which are connected using the flex cable.

109.    The Galaxy S9 processor (e.g., Snapdragon 845) converts the pre-video signal so they can be viewed on a standard video device.

110.    The Galaxy S9 includes a power supply (e.g., battery or USB) that is coupled to the image sensor to power the pixels and time and control circuitry and is also coupled to the processor on the circuit board.  *See supra* ¶ 63.

111.    The Galaxy S9 also includes a touchscreen display electronically connected to the first circuit board and remote from the first circuit board for controlling digital image processors that enable selective varying and control of integrations periods to produce an image of a desired brightness.  For example, ISO settings, exposure, metering modes, and HDR settings may be selected by pressing on the touchscreen display.  *See* Ex. 9 at 69-70 (https://downloadcenter.samsung.com/content/UM/202002/20200222054327892/USC_SM-G960U_SM-G965U_EN_UM_Q_10.0_013120_FINAL_AC.pdf).

112.    The touchscreen is not coplanar with the first circuit board.

113.    On information and belief, all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals as shown in exemplary tear downs.

114.    Defendants' infringement of the '740 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

115.    Defendants have been long-aware of Cellect's patents, including the '740 Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed above,

Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being shown that their products infringe Cellect's patents, including the '740 Patent, on information and belief Defendants made no effort to avoid infringement.  Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this Amended Complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

116.    Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights.  As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '740 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

**COUNT VI**
**(Indirect Infringement of the '740 Patent pursuant to 35 U.S.C. § 271(b))**

117.    Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

118.    As set forth above, Samsung has had knowledge of Cellect's patent portfolio and of its infringement of the '740 Patent since at least 2014 and no later than the date of the February 14, 2019 Complaint.

119.    In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly infringes Claims 3 and 15 of the '740 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under the doctrine of equivalents.  Samsung induces infringement of Claims 3 and 15 of the '740 Patent by instructing,

directing and/or requiring others, including its customers, purchasers, users, and developers, to meet claim elements, literally and/or under the doctrine of equivalents, Claims 3 and 15 of the '740 Patent.  Samsung contributorily infringes the Asserted Patents by making and supplying the Accused Products that are components in an infringing system with components from manufacturers, customers, purchasers, users, and developers that together meet all of the claim elements in the Asserted Patents, literally and/or under the doctrine of equivalents.

120.    Samsung knew or was willfully blind to the fact that it is inducing others, including customers, purchasers, shoppers, users, and developers to infringe claim 3 and 15 the '740 Patent.

121.    Samsung knowingly and actively aided and abetted the direct infringement of the '740 Patent by instructing and encouraging its suppliers, developers, manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to make and/or use the Accused Products and thereby perform the steps of the disclosed method.  Such instructions and encouragement include, but is not limited to, advising third parties to make and/or use the Accused Products through which third parties may infringe the '740 Patent, and by advertising and promoting the Accused Products, and distributing guidelines and instructions to third parties on how to make and/or use the Accused Products in an infringing manner.

## <u>COUNT VII</u>
### (Direct Infringement of the '896 Patent pursuant to 35 U.S.C. § 271(a))

122.    Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

123.    Defendants infringe Claim 3 of the '896 Patent in violation of 35 U.S.C. § 271(a).

124.    Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

125.    Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

126.    Defendants' infringement include the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and smartphones (collectively, the "'896 Accused Products").

127.    The '896 Accused Products practice the patented invention of the '896 Patent and infringed the '896 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals.  The pre-video signal is capable of being carried for transmission by a single wire conductor.  Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

128.    To the extent the '896 Accused Products include components or software owned or manufactured by third parties, the Accused Products still infringed the '896 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold.  Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

129.    The Accused Products such as the Galaxy S9, includes a front and rear facing cameras including CMOS image sensors mounted in a housing on circuit boards that each have a length and width that define a first plane.  *See supra* ¶¶ 55, 57-58.

130.    Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels for producing a pre-video signal.  *See supra* ¶¶ 57-58.

131.    The most popular CMOS designs are built around active pixel sensor (APS) technology in which an amplifier is incorporated into each pixel.  Ex. 10 ([https://evidentscientific.com/en/microscope-resource/knowledge-hub/digital-imaging/cmosimagesensors#:~:text=The%20photodiode%2C%20often%20referred%20to,of%20over%202000%20square%20pixels](https://evidentscientific.com/en/microscope-resource/knowledge-hub/digital-imaging/cmosimagesensors#:~:text=The%20photodiode%2C%20often%20referred%20to,of%20over%202000%20square%20pixels)).

132.    The image sensors in the Galaxy S9 are connected to the processor's circuit board (i.e. a second circuit board) using a flex cable.  *See* Ex. 5 ([https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322](https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322)) at 5.  The flex cable has first and second ends and is used to send pre-video signals from the sensor to the processor.  *See* Ex. 7 ([https://www.electronicdesign.com/technologies/communications/article/21799475/understanding-mipi-alliance-interface-specifications](https://www.electronicdesign.com/technologies/communications/article/21799475/understanding-mipi-alliance-interface-specifications)); Ex. 8 ([https://www.mipi.org/specifications/csi-2](https://www.mipi.org/specifications/csi-2)); *see also supra* ¶ 60.

133.    As shown above, the processor is on a second circuit board that lays in a second plane that is offset and substantially parallel to the first plane of the first circuit board.

134.    The Galaxy S9 processor (e.g., Snapdragon 845) converts the pre-video signal so they can be viewed on a display.

135.    The image sensor and lenses are mounted in a housing.



Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322).

136.    The touch screen is connected to the second circuit board and displays video images that have already been processed on the second circuit board by the processor (e.g., Snapdragon 845).  *See supra* ¶ 87.

137.    The Galaxy S9 includes a power supply (e.g., battery or USB) that is coupled to the image sensor on the first circuit board to power array of CMOS pixels and said timing and control circuitry and is also coupled to the processor on the second circuit board.  *See supra* ¶ 63.

138.    The image sensor, as shown above (¶¶ 57-58), is generally square shaped and the largest dimension of the second circuit board is greater than a largest dimension of said image sensor along said first plane.

139.    On information and belief, all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals.

140.    Defendants' infringement of the '896 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

141.    Defendants have been long-aware of Cellect's patents, including the '896 Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed above,

Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents. Even after being shown that their products infringe Cellect's patents, including the '896 Patent, on information and belief Defendants made no effort to avoid infringement. Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this Amended Complaint. All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

142.    Despite their knowledge of Cellect's patent portfolio, including pending applications which issued as the '896 Patent, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights. As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '896 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

### COUNT VIII
### (Indirect Infringement of the '896 Patent pursuant to 35 U.S.C. § 271(b))

143.    Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

144.    As set forth above, Samsung has had knowledge of Cellect's patent portfolio since at least 2014 and no later than the date of the February 14, 2019 Complaint.

145.    In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly infringes Claim 3 of the '896 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under the doctrine of equivalents. Samsung induces infringement of the '896 Patent by instructing, directing and/or

requiring others, including its customers, purchasers, users, and developers, to meet claim

elements, literally and/or under the doctrine of equivalents, of Claim 3 of the '896 Patent.

146.    Samsung knew or was willfully blind to the fact that it is inducing others,

including customers, purchasers, shoppers, users, and developers to infringe claim 3 the '896

Patent.

147.    Samsung knowingly and actively aided and abetted the direct infringement of

the '896 Patent by instructing and encouraging its suppliers, developers, manufacturers,

customers, purchasers, shoppers, users, developers, and/or vendors to use the Accused Products

and thereby perform the steps of the disclosed method.  Such instructions and encouragement

include, but is not limited to, advising third parties to use the Accused Products through which

third parties may infringe the '896 Patent, and by advertising and promoting the Accused

Products, and distributing guidelines and instructions to third parties on how to use the Accused

Products in an infringing manner.

## PRAYER FOR RELIEF

WHEREFORE, Cellect prays for judgment and relief as follows:

A.    An entry of judgment holding that Defendants infringed the '839, '369, '740,

and '896; induced infringement of the '839, '369, '740, and '896 Patents;

B.    An award to Cellect of such past damages, not less than a reasonable royalty, as

it shall prove at trial against Defendants that is adequate to fully compensate Cellect for

Defendants' infringement of the '839, '369, '740, and '896 Patents;

C.    A finding that this case is "exceptional" and an award to Cellect of its costs and

reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

D.      An accounting of all infringing sales and revenues, together with post judgment

interest and prejudgment interest from the first date of infringement of the '839, '369, '740, and

'896 Patents; and

E.      Such further and other relief as the Court may deem proper and just.

<u>**DEMAND FOR JURY TRIAL**</u>

Cellect demands a jury trial on all issues so triable.

                                    Respectfully submitted,

Dated: March 9, 2026               */s/ Paul J. Andre*
                                    Paul J. Andre
                                    Lisa Kobialka
                                    Jennifer Gilbert
                                    HERBERT SMITH FREEHILLS
                                    KRAMER (US) LLP
                                    333 Twin Dolphin Drive, Suite 700
                                    Redwood Shores, CA 94065
                                    Telephone: (650) 752-1700
                                    Facsimile: (650) 752-1800
                                    Paul.Andre@hsfkramer.com
                                    Lisa.Kobialka@hsfkramer.com
                                    Jennifer.Gilbert@hsfkramer.com

                                    Jonathan S. Caplan
                                    Marcus A. Colucci
                                    Brittany Penn
                                    HERBERT SMITH FREEHILLS
                                    KRAMER (US) LLP
                                    1177 Avenue of the Americas
                                    New York, NY 10036
                                    Telephone: (212) 715-9100
                                    Facsimile: (212) 715-8000
                                    Jonathan.Caplan@hsfkramer.com
                                    Marcus.Colucci@hsfkramer.com
                                    Brittany.Penn@hsfkramer.com

                                    Kenneth F. Eichner
                                    THE EICHNER LAW FIRM
                                    3773 Cherry Creek Drive North

West Tower, Suite 900
Denver, Colorado 80209
Telephone: (303) 837-9800
ken@eichnerlaw.com

Lynn C. Hartfield
Law Off. Of Lynn C. Hartfield, LLC
387 Corona Street, Suite 617
Denver, Colorado 80218
Telephone: (720) 588-0571
lynn@lhartfieldlaw.com
SPECIAL COUNSEL TO
THE EICHNER LAW FIRM
3773 Cherry Creek Drive North, Suite 900
Denver, Colorado 80209
Telephone: (303) 837-9800
lynn@eichnerlaw.com

Attorneys for Plaintiff
Cellect, LLC