# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00438-DDD-CYC

CELLECT, LLC, a Colorado Limited Liability Company,

       Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, and
SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation,

       Defendants.

---

**CELLECT, LLC'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff Cellect, LLC ("Cellect") files this Amended Complaint for Patent Infringement and Demand for Jury Trial against defendants Samsung Electronics Co., LTD., ("SEC") and Samsung Electronics America, Inc.("SEA") (collectively, "Defendants" or "Samsung") and alleges as follows:

**THE PARTIES**

1.    Cellect is a Colorado limited liability company with its principal place of business at 3134 Wyandot St., Denver, Colorado 80211-3825.  Along with its parent company, Micro-Imaging Solutions LLC ("MIS"), also based in Denver, Colorado, Cellect has invented and developed novel aspects of imaging technology known as Complementary Metal-Oxide Semiconductor ("CMOS").  This patented CMOS camera technology has important applications in modern smartphones and tablets.

2.    SEC is a multinational corporation incorporated under the laws of the Republic of

Korea and having its headquarters located at 129 Samsung-ro, Yeongtong-gu, Suwon-si,

Gyeonggi-do, Korea.  On information and belief, SEC has approximately 263 subsidiaries,

including Defendant SEA, which collectively with SEC operate four business divisions:

~~Consumer Electronics~~Device Experience ("~~CE~~DX"), which designs, manufactures, and sells

products such as smartphones, digital televisions ~~and,~~ computer monitors~~; Information~~

~~Technology &~~, refrigerators, and washing machines, a merger of its prior Consumer Electronics

(CE) and Mobile Communications ("~~IM~~"), ~~which designs, manufactures, and sells products such~~

~~as mobile phones, communication systems, and computers~~ divisions; Device Solutions ("DS"),

which designs, manufactures, and sells products and services within its Semiconductor Business

including memory products, LSI products such as system-on-chip ("SoC") semiconductor

devices and image sensors, and foundry services, as well as products within its Display Business

such as LCD and OLED panels ("SDC" division); and Harman, which designs, manufactures,

and sells connected car systems, audio and visual products, enterprise automation solutions, and

connected services ("Harman" division).

3.    SEA is a New York corporation having its principal place of business at 85

Challenger Road, Ridgefield Park, New Jersey, 07660.  On information and belief, SEA is a

wholly-owned subsidiary of SEC that markets and sells products and services within the United

States that are designed, manufactured, and/or provided by SEC and/or one or more of SEC's

approximately 263 subsidiaries and that fall within at least one of SEC's CE, IM, and DS

business divisions, including Samsung smartphones and tablets.  On information and belief, SEA

maintains an office at 12101 Airport Way, Broomfield, CO 80021 that is involved in making,

using, and/or selling Samsung smartphones and tablets.

4.    On information and belief, SEC and SEA work collectively with one another, and with SEC's other subsidiaries, in the design, manufacture, importation, distribution, marketing, and selling of Samsung smartphones and tablets.

## JURISDICTION AND VENUE

5.    This action arises under the Patent Act, 35 U.S.C. § 101 *et seq.*  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

6.    7. This Court can exercise personal jurisdiction over Samsung because Samsung maintains substantial operations located in this District, and therefore Samsung's affiliations with this District are so substantial as to render it essentially at home in this District.  Additionally, this Court can exercise personal jurisdiction over Samsung in this action because Samsung has committed acts of infringement and/or inducement of infringement in this District, because Plaintiffs' claims arise out of and relate to Samsung's acts of infringement and/or inducement of infringement in this District, and because the exercise of jurisdiction by this Court over Samsung in this action would be reasonable. Accordingly, Samsung has minimum contacts with this District such that the maintenance of this action within this District would not offend traditional notions of fair play and substantial justice.

7.    8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b) because Samsung resides in this District and because Samsung's acts of infringement and/or inducement of infringement take place in this District.

## CELLECT'S INNOVATIONS

8.     9. Cellect and its parent company, Micro-Imaging Solutions, pioneered and

developed complementary metal-oxide semiconductor ("CMOS") imaging sensor technology.

For its pioneering development, the United States Patent & Trademark Office has awarded Cellect more than 21 U.S. Patents.

9.      10. MIS was founded in 1994 by Dr. Edwin Adair, a medical doctor and prolific inventor.  Dr. Adair founded MIS and focused on designing and enabling high-resolution, disposable endoscopes.  Subsequently, Dr. Adair and his two sons, John Adair and Jeff Adair, further developed this technology and came up with revolutionary ideas for physically separating CMOS sensors and processors to enable CMOS sensor technology to be used in micro-sized compact configurations.  MIS obtained patents covering this technology, now owned by Cellect.

10.      11. Cellect further developed CMOS technology for use in camera phones to enable these devices to be thinner, more compact, and more efficient.  Cellect obtained additional patents which cover technology that is now essential in the design of smartphones and tablets. John and Jeff Adair continue to operate MIS and Cellect in Denver, Colorado where the company was founded.

11.      12. MIS has successfully licensed its patented technology to manufacturers in the medical device industry.  Several of these licensees contacted MIS on their own initiative to request rights to this patented technology.

**CELLECT'S ASSERTED PATENTS**

12.      13. On March 28, 2000, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,043,839 ("the '839 Patent"), titled "Reduced Area Image

Imaging Devices."  On September 18, 2025, the USPTO issued an *Ex Parte* Reexamination Certificate. A true and correct copy of the '839 Patent is attached to this

Amended Complaint as **Exhibit 1** and is incorporated by reference herein.

13.     ~~14.~~ All rights, title, and interest in the '839 Patent have been assigned to Cellect, who is the sole owner of the '839 Patent.

14.     ~~15.~~ The '839 Patent is generally directed towards a reduced area imaging device in which a CMOS image sensor and circuitry are placed in a stacked fashion at the same location. This patent relates to the use of stacked CMOS technology without the use of an enabling technology.  The '839 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

~~16. On August 14, 2001, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,275,255 ("the '255 Patent"), titled "Reduced Area Image Devices." A true and correct copy of the '255 Patent is attached to this Complaint as **Exhibit 2** and is incorporated by reference herein.~~

~~17. All rights, title, and interest in the '255 Patent have been assigned to Cellect, who is the sole owner of the '255 Patent.~~

~~18. The '255 Patent is generally directed towards a reduced area imaging device in which the CMOS image sensor and circuitry are placed in a stacked fashion at the same location. This patent relates to the use of stacked CMOS technology without the use of an enabling technology. The '255 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.~~

15.     ~~19.~~ On July 23, 2002, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,424,369 ("the '369 Patent"), titled "Hand-Held Computers Incorporating Reduced Area Imaging Devices." On August 12, 2025, the USPTO

issued an *Ex Parte* Reexamination Certificate.  A true and correct copy of the '369 Patent is

attached to this Amended Complaint as **Exhibit 3 2** and is incorporated by reference herein.

16.     20. All rights, title, and interest in the '369 Patent have been assigned to Cellect,

who is the sole owner of the '369 Patent.

17.     21. The '369 Patent is generally directed towards stacked CMOS technology in a

personal data assistant ("PDA").  Specifically, the '369 Patent claims are directed to a CMOS

imager and claims directed to the stacked electronics CMOS imager invention in a PDA

environment.  The '369 Patent discloses and specifically claims inventive concepts that

represent significant improvements over conventional single-chip imaging devices with the

image sensor and image processing on the same plane.

22. On September 17, 2002, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair,

and Randall S. Adair U.S. Patent No. 6,452,626 ("the '626 Patent"), titled "Communication

Devices Incorporating Reduced Area Imaging Devices."  A true and correct copy of the '626

Patent is attached to this Complaint as **Exhibit 4** and is incorporated by reference herein.

23. All rights, title, and interest in the '626 Patent have been assigned to Cellect, who is

the sole owner of the '626 Patent.

24. The '626 Patent is generally directed towards stacked CMOS technology in mobile

phones.  Specifically, the '626 Patent claims are directed to a CMOS imager and claims

directed to the stacked electronics CMOS imager invention in connection with a mobile phone.

The '626 Patent discloses and specifically claims inventive concepts that represent significant

~~improvements over conventional single-chip imaging devices with the image sensor and image~~

~~processing on the same plane.~~

~~25. On March 1. 2005, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,862,036 ("the '036 Patent"), titled "Communication Devices Incorporating Reduced Area Imaging Devices." A true and correct copy of the '036 Patent is attached to this Complaint as **Exhibit 5** and is incorporated by reference herein.~~

~~26. All rights, title, and interest in the '036 Patent have been assigned to Cellect, who is the sole owner of the '036 Patent.~~

~~27. The '036 Patent is generally directed towards stacked CMOS technology in mobile phones. Specifically, the '036 Patent claims are directed to a CMOS imager and claims directed to the stacked electronics CMOS imager invention in connection with a mobile phone. The '036 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.~~

<u>18.</u>    ~~28.~~ On January 3, 2006, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,982,740 ("the <u>'</u>740 Patent"), titled "Reduced Area Imaging Devices Utilizing Selected Charge Integration Periods." <u>On March 28, 2024, the USPTO issued an *Ex Parte* Reexamination Certificate.</u> A true and correct copy of the <u>'</u>740 Patent is attached to this <u>Amended</u> Complaint as **Exhibit ~~6~~<u>3</u>** and is incorporated by reference herein.

<u>19.</u>    ~~29.~~ All rights, title, and interest in the <u>'</u>740 Patent have been assigned to Cellect, who is the sole owner of the <u>'</u>740 Patent.

<u>20.</u>    ~~30.~~ The <u>'</u>740 Patent is generally directed towards a reduced area image device

which utilizes selected charge integration periods.  The '740 Patent discloses and specifically claims

inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

21.    On May 30, 2017, the USPTO issued to Cellect LLC and John Gregory Adair 31. On January 3, 2006, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 6,982,7429,667,896 ("the '742'896 Patent"), titled "Hand-Held Computers Incorporating Reduced Area Imaging Device Incorporated Within Endoscopic Devices."  On December 5, 2023, the USPTO issued an *Inter Partes* Reexamination Certificate. A true and correct copy of the '742'896 Patent is attached to this Amended Complaint as **Exhibit 74** and is incorporated by reference herein.

22.    32. All rights, title, and interest in the '742'896 Patent have been assigned to Cellect, who is the sole owner of the '742'896 Patent.

23.    33. The '742'896 Patent is generally directed towards an image sensor and circuitry means lying in separate planes within a PDA device used for wireless transmission ofa reduced area imaging device in various configurations, and connections (either wired or wireless) between the imaging device elements and a video imagesdisplay.  The '742'896 Patent discloses and specifically claims inventive

concepts that represent significant improvements over conventional single-chip imaging devices

with the image sensor and image processing on the same plane.

34. On February 21, 2006, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 7,002,621 ("the '621 Patent"), titled "Communication Devices Incorporating Reduced Area Imaging Devices." A true and correct copy of the '621 Patent is attached to this Complaint as **Exhibit 8** and is incorporated by reference herein.

**PATENT ELIGIBILITY**

35. All rights, title, and interest in the '621 have been assigned to Cellect, who is the sole owner of the '621 Patent.

24.     All of the Asserted Patents are patent eligible, valid, and enforceable. The claims

identified above in the Asserted Patents are concrete, technological improvements to

image-sensor architecture and CMOS-based imaging systems. The claims are directed to

specific, non-abstract structures and methods that represent significant improvements over

conventional CMOS technology. *See*, e.g., Ex. 1 ('839 Patent) at 3:9-13, 3:40-44 ("The 'camera

on a chip' technology can be furthered improved with respect to reducing its profile area and

incorporating such a reduced area imaging device into very small investigative instruments

which can be used in the medical, dental, or other industrial fields").

25.     36. The '621 Patent is generally directed towards an image sensor and circuitry means lying in separate planes within a wireless/cellular phone used for wireless transmission of video images. The '621 Patent discloses and specifically The '839 Patent claims inventive

concepts that represent

 significant improvements over conventional single-chip imaging devices with the image

sensor and image processing on the same plane. Unlike conventional CMOS camera on a chip

technology, the '839 claims a novel device with CMOS image sensor with separate processing

circuit board for converting a pre-video image to post video image.  Separating the imaging and processing circuitry provides technical improvements by enabling a customized form factor and can reduce a desired profile area.  Ex. 1 ('839 Patent) at 7:43-48 ("If the profile area is not critical in terms of limiting the largest sized imaging element within the imaging device, then the additional circuit boards 50 and 60 which are normally placed in line with image sensor 40 can be aligned in an offset manner or may be larger than the profile area of image sensor 40."); 8:24-34 ("incorporation of the imaging device in a housing which would normally hold a traditional

37. On November 17, 2015, the USPTO issued to Edwin L. Adair, Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 9,186,052 ("the '052 Patent"), titled "Reduced Area Imaging Device Incorporated Within Endoscopic Devices." A true and correct copy of the '052 Patent is attached to this Complaint as **Exhibit 9** and is incorporated by reference herein.

38. All rights, title, and interest in the '052 Patent have been assigned to Cellect, who is the sole owner of the '052 Patent.

39. The '052 Patent is generally directed towards a reduced area imaging device in various configurations, and connections (either wired or wireless) between the imaging device elements and a video display.  The '052 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

40. On December 1, 2015, the USPTO issued to Jeffrey L. Adair, and Randall S. Adair U.S. Patent No. 9,198,565 ("the '565 Patent"), titled "Reduced Area Imaging Device Incorporated Within Endoscopic Devices." A true and correct copy of the '565 Patent is attached to this Complaint as **Exhibit 10** and is incorporated by reference herein.

41. All rights, title, and interest in the '565 Patent have been assigned to Cellect, who is the sole owner of the '565 Patent.

42. The '565 Patent is generally directed towards a reduced area imaging device in various configurations, and connections (either wired or wireless) between the imaging device elements and a video display. The '565 Patent discloses and specifically claims inventive

concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

camera still provides an advantageous arrangement…. the processing circuitry of the imaging device can be positioned in a remote control box").  Separating the board also provides for further manipulation of the design to add additional structural support allowing the image sensor to be bonded to portions of the device in a different location.  *See* Ex. 1 ('839 Patent) at 3:51-53 ("Additionally, image sensor 40 may be bonded to lens system 42 in order to provide further structural support to the imaging device 11 when mounted within the distal end 16.").  Another benefit is a reduction in the need for multiple image processors where more than one image sensor is used in a system.  Further, the claimed invention provided reduced power consumption and radio interference compared to conventional CCD image sensors.  *See, e.g.,* Ex. 1 ('839 Patent) at 1:59-60 ("Furthermore, this particular CMOS imager requires 100 times less power than a CCD-type imager.").

26.    The '369 Patent claims a handheld computer, referred to as a PDA, that transmits data and video through a communications network using a video system using a novel camera module.  *See, e.g.,* Ex. 2 ('369 Patent) at 3:35-45 ("a need still exists for a reduced area imaging device which can be used in even the smallest type of industrial application.  Recently, devices known as palm top computers, PDA(s), or hand-held computers have become very popular items."); 5:24-37 ("the invention disclosed herein can be considered an improvement to a PDA wherein the improvement comprises a video system….").  The novel camera module separates the pixel arrays from timing and control circuitry and processing circuitry onto multiple planes and includes additional circuit boards for enhancing a pre-video image signal.  This provide the

ability to customize the form factor while reducing the desired profile are. *See*, e.g., *id.* at 12:55-

13:17 ("different options available in terms of arrangement of the components of the imaging

43. On May 30, 2017, the USPTO issued to Cellect LLC and John Gregory Adair

U.S. Patent No. 9,667,896 ("the '896 Patent"), titled "Reduced Area Imaging Device

Incorporated Within Endoscopic Devices." A true and correct copy of the '896 Patent is attached

to this Complaint as **Exhibit 11** and is incorporated by reference herein.

device…").  Further, the use of additional companion circuit board to enhance the pre-video

image improved the quality of the processed image (e.g., enhanced brightness and contrast).

27.    The '740 Patent claims separating the image sensor and pre to post image

processor to provide the ability to customize the form factor of CMOS image devices and/or CID

image devices by separating components (e.g., timing and control circuitry, and processor) to

reduce the image profile area.  *See, e.g.,* Ex. 3 ('740 Patent) at 3:19-36, 4:65-5:27 (describing

exemplary embodiments allowing for customization of the architecture), 12:39-61 (describing

exemplary benefits of separating and combining various circuitry).  Additionally, the '740 Patent

describes a time-select switch to vary an integration period to select an image with a desired

brightness.  Ex. 3 at 5:28-34, 5:54-6:43, 18:49-19:36 (describing how the selection of the actual

integration period can be used to overcome low light condition and compares the difference

between CCD); 19:37-57 (describing use of addition and separate circuitry 318 to enable manual

selection of the integration period).  The '740 Patent specifically allows the location of a *remote*

time-select switch that can be used to vary integration periods and produce an image having a

desired brightness.  *See, e.g.,* Ex. 3 ('740 Patent) at Figure 10.  The '740 Patent takes a unique

and novel approach by separating the various components onto separate planes and circuit

boards, and that includes separating the (remote) time-select switch.  The '740 Patent includes

the additional novel feature of incorporating supplemental boards that can further enhance the

pre-video signal, further improving the pre-video and video image compared to conventional

systems.

28.     The '896 Patent claims a CMOS pixel-array imaging device in which the largest

dimension of the image sensor is between 2 and 12 mm and the CMOS image sensor is

44. All rights, title, and interest in the '896 Patent have been assigned to Cellect, who is the sole owner of the '896 Patent.

structurally separated from the pre- to post-video image-processing circuitry.  The separate circuit boards are offset and positioned on substantially parallel planes ("said second circuit board being offset from said first circuit board, said second plane of said second circuit board being substantially parallel to said first plane of said first circuit board"), enabling customized physical form factors and reduced profile area.  *See, e.g.,* Ex. 4 ('896 Patent) at 12:16-39 (describing exemplary benefits to form factor by separating or combining various circuitry).  The '896 Patent also teaches reduced power consumption and reduced radio-frequency interference compared to conventional CCD image sensors.

29.    The Asserted Patents share a common inventive theme: physically separating the image sensor from timing, control, and image-processing circuitry onto distinct circuit boards and planes, and using supplemental circuitry to enhance pre-video image signals.  *See, e.g.,* Ex. 2 ('369 Patent) at 4:41-46 ("the timing and control circuits can be placed either on the same planar structure as the pixel array, in which case the image sensor can also be defined as an integrated circuit, or the timing and control circuitry can be placed remote from the pixel array"); 4:64-67 ("In a second arrangement, the image sensor and the processing circuitry may all be placed in a stacked arrangement of miniature circuit boards or planar circuit structures and positioned at the distal tip of the camera module"); 9:19-23 ("If it is not important to limit the size of the profile area, then any circuitry placed behind image sensor **40** can be aligned in an offset manner, or may simply be larger than the profile area of image sensor **40**.").  This multi-plane architecture departs from conventional single-chip CMOS and CCD imaging systems, which integrate all components on a single plane with limited form-factor flexibility or suffer from higher power consumption, greater interference, and reduced image quality.  *See, e.g.,* Ex. 2 ('369 Patent) at

19

45. The '896 Patent is generally directed towards a reduced area imaging device in various configuration, and connections (either wired or wireless) between the imaging device elements and a video display. The '896 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional single-chip imaging devices with the image sensor and image processing on the same plane.

3:35-38 ("Although the "camera on a chip" concept is one which has great merit for application in many industrial areas, a need still exists for a reduced area imaging device which can be used in even the smallest type of industrial application."); 1:64-66 ("CMOS imager requires 100 times less power than a CCD-type imager.")

30.    The patents describe and claim specific hardware configurations—offset circuit boards, parallel planes, remote time-select switches, supplemental pre-video enhancement boards, and multi-plane pixel array structures—that improve the operation of the imaging device itself. Ex. 2 ('369 Patent) at 11:65-67 ("placing the timing and control circuits on the same planar structure with the pixel array results in the pre-video signal having less noise."). These are not abstract concepts; they are physical, structural innovations that enable new device architectures and improved imaging performance.

## CELLECT'S NOTICE OF INFRINGEMENT TO DEFENDANTS

31.    46. Cellect provided Samsung with notice of its patents, including the Asserted Patents, almost five years long ago. Despite this knowledge, Samsung has continued its infringing activity. OnMore specifically, on or about February 26, 2014, Cellect gave Samsung in-person notice of its infringement of Cellect's patents during a meeting in San Francisco with Junwon Lee, Director of SEC's Licensing Team. During its February 26 meeting, Cellect described to Samsung how the Accused Products infringed Cellect's patents. Specifically, Cellect gave a presentation to Samsung which explicitly disclosed its patent portfolio and explained how the Samsung Galaxy smartphones, among other products, infringed the inventions set forth in Cellect's Asserted

Patents.  Samsung was also provided with an exemplary infringement claim chart

during this meeting relating to ~~the~~ their Galaxy smartphones.

32. 47. During its February 26, 2014 meeting, Cellect offered Samsung a license under the entire Cellect patent portfolio, including the Asserted Patents.

33. 48. Despite Cellect's best efforts to inform Samsung that its products infringe Cellect's patents and to engage Samsung in good-faith licensing discussions, Defendants refused to take a license to Cellect's patents.

34. On February 14, 2019, Cellect filed a Complaint for Infringement of the '839, '369, '740 and '896 patents (among others).

## DEFENDANTS' INFRINGING PRODUCTS AND TECHNOLOGIES

35. 49. Defendants make, use, sell, offer for sale, and/or import into the United States and this District products and services that utilize complementary metal-oxide semiconductor ("CMOS") multi-chip and/or stacked image sensor reduced area imaging devices and related technology, including, but not limited to, Samsung tablets and smartphones, among others (collectively, the "Accused Products").

### Samsung Tablets

36. 50. Since at least February 26, 2014, when Cellect gave Samsung direct notice of the Asserted Patents, Samsung has made, sold, offered for sale, and/or imported into the United States and this District tablet products which incorporate Cellect's inventions set forth in the Asserted Patents, including but not limited to the Samsung Galaxy Tab 4, Samsung Galaxy TabPro, Samsung Galaxy Tab S, Samsung Galaxy Tab A, Samsung Galaxy Tab S2, Samsung GalaxyTabPro Galaxy TabPro S, Samsung Galaxy TabPro S2, Samsung Galaxy Tab A2, and Samsung Galaxy Tab A3, Samsung Galaxy Tab S3, and Samsung Galaxy Tab S4. See Ex. 11 (https://en.wikipedia.org/wiki/List_of_Samsung_tablets).

37.     The Galaxy Tab and "S" series are Samsung's flagship models, while its "Active," and "E" and "A" series models are its mid-level and entry-level models. *See id.* Like the Galaxy A smartphone series, the Tab A tablets incorporate rear and front CMOS image sensors and associated image processing circuitry that perform the same relevant functions as those described above with respect to the Galaxy S9 and other flagship smartphones.

38.     All of the Galaxy tablets include multiple image sensors, including front and rear cameras, including a multi-component camera models that includes a CMOS pixel array, separate timing and control circuitry, companion boards for enhancing pre-video signals, and separate image processor for converting pre-video signal to post video images. This architecture—sensor on one substrate, processing and control circuitry on separate boards/planes—matches the multi-plane, multi-board imaging architecture described in the Asserted Patents as explained above. *See*, e.g., Ex. 12 (https://en.wikipedia.org/wiki/Samsung_Galaxy_Tab_4_10.1); Ex. 13a, Ex. 13b (https://en.wikipedia.org/wiki/Samsung_Galaxy_Tab_S_series); Ex. 14 (https://en.wikipedia.org/wiki/Samsung_Galaxy_Tab#Samsung_Galaxy_Tab_S2_.E2.80.93_201 5); Ex. 15 (https://www.samsung.com/us/mobile/tablets/).

**Samsung Smartphones**

39.     ~~51.~~ Since at least February 26, 2014, when Cellect gave Samsung direct notice of the Asserted Patents, Samsung has made, sold, offered for sale, and/or imported into the United States and this District wireless phone products which incorporate Cellect's inventions set forth in the Asserted Patents, including but not limited to the Samsung Galaxy S5, Samsung Galaxy S6, Samsung Galaxy S7, Samsung Galaxy S8, Samsung Galaxy S9, Samsung Galaxy Note 3,

Samsung Galaxy Note 3 Neo, Samsung Galaxy Note 4, Samsung Galaxy Note 5, Samsung Galaxy Note 7, Samsung Galaxy Note 8, Samsung Galaxy J, and Samsung Galaxy A.

40.     The Samsung Galaxy smartphones are Samsung's flagship models.  The exemplary Galaxy S9, like the Galaxy Note 3, Note 3 Neo, Note 4, Note 5, Note 7, S5, S6, S7, and S8 (including plus and edge models), uses multiple image sensors, including a multi-component camera models that includes a CMOS pixel array, separate timing and control circuitry, companion boards for enhancing pre-video signals, and separate image processor for converting pre-video signal to post video images.  This architecture—sensor on one substrate, processing and control circuitry on separate boards/planes—matches the multi-plane, multi-board imaging architecture described in the Asserted Patents as explained above.

41.     The Samsung Galaxy A series is a line of mid-range smartphones manufactured by Samsung Electronics.  The A Series 2014-15 lineup (1st generation) includes Samsung Galaxy model numbers Alpha, A3, A5, A7, and A8.  The A Series 2016 lineup (2nd generation) includes Samsung Galaxy model numbers A3, A5, A7, A9, A9 Pro, and A8.  The A Series 2017 lineup (3rd generation) includes Samsung Galaxy model numbers A3, A5, and A7.  The A Series 2018 lineup (4th generation) includes Samsung Galaxy model numbers A8, A8+, A6, A6+, A8 Star, A7, A9, A6s, and A8s.

**All the Accused Products Share Features Relevant to Infringement**

42.     On information and belief, "[t]he Galaxy A (2016) series are similar to the Galaxy S6, and the Galaxy Note 5 flagships, which were released in April 2015, and August 2015, respectively."  Ex. 16 (https://en.wikipedia.org/wiki/Samsung_Galaxy_A_series).

43.     On information and belief, "[t]he Galaxy A (2017) series are very similar to the Galaxy S7 and the S7 Edge, released in March 2016."  Ex. 16 (https://en.wikipedia.org/wiki/Samsung_Galaxy_A_series).

44.     On information and belief, the Samsung Galaxy J series was first introduced in 2015.  Models of Galaxy J1 were released in 2015 and 2016 respectively.  Models of Galaxy J2 were released in 2015, 2016, 2017 and 2018 respectively.  Models of Galaxy J3 were released in 2016, 2017, and 2018 respectively.  Models of Galaxy J4 were released in 2018.  Models of Galaxy J5 were released in 2015, 2016, 2017 respectively.  Models of Galaxy J6 were released in 2018.  Models of Galaxy J7 were released in 2015, 2016, 2017, and 2018 respectively.  Since 2019, the Samsung Galaxy J series merged with Samsung Galaxy A series.

45.     All of the Accused Products infringe the Asserted Patents for similar reasons and have the same relevant characteristics, including the functional operation and layout of the reduced area image devices contained in each Accused Product.  Differences in screen resolution, sensor size, pixel size, memory, processor speed etc. are not relevant to Samsung's infringement of the Asserted Patents.

46.     The image sensor in the Accused Products performs the function of capturing analog information about the incident photons (light packets) on the photodetectors corresponding to each pixel, this information is amplified and converted into a signal relating to the brightness of the incident photons.  The image sensor produces a pre-video signal that passes through an digital processing signal chain and ISP which enhances the pre-video signal (e.g., digital gain and compensation for various analog circuit variations).

47.     The pre-video signal is converted to a post-video signal for all Accused Products by an image processor that is on a separate board and/or plane.  Although Accused Devices may use different processors, these processors have the same relevant characteristics.

## COUNT I

**(Direct Infringement of the '839 Patent pursuant to 35 U.S.C. § 271(a))**

52. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

53. Defendants infringe at least Claim 1 of the '839 Patent in violation of 35 U.S.C. § 271(a).

54. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

55. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

56. Defendants' infringement included, the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize complementary metal-oxide semiconductor ("CMOS") multi-chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and smart phones (collectively, the "'839 Accused Products").

57. The '839 Accused Products practice the patented invention of the '839 Patent and infringed the '839 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals.  Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

26

58. To the extent the '839 Accused Products includes components or software owned or manufactured by third parties, the '839 Accused Products still infringed the '839 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold. Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

59. For example, as shown below, the Accused Products such as the Galaxy SS, includes a front and rem facing cameras including CMOS image sensors in a separate plane end remote from the processor.



(Deleted)

Galaxy S5

rem CMOS iinape sensor

front CMOS image sensor

(Del)

processor (outlined in ied)

(Del)https://www.ifixit.coin/Teaidowlr Samsung+Galox y+S5+Teardown/24016. (Ex. 12).

60. Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels. Shown below is an example of the rear facing CMOS image sensor and

array of pixels with timing and control circuitry:



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

61. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry.

 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

62. The image sensors in the Galaxy S5 are connected to the processor's circuit board using a flex cable. On information and belief, the Galaxy S5 flex cable uses a MIPI interface and complies with CSI standards. *See* http://electronicdesign.com/communications/understanding-mipi-alliance-interface-specifications; http://mipi.org/specifications/camera-interface. (Exs. 27-28).

63. The flex cable has lust and second ends and is used to send pre-video signals from the sensOl to the piocessoi. On infoiniation and belief, the flex coble is tiansmitting said pre-video signal (e.p., RAW 10 bit RGB) and coinniuiiicotes with the image sensor. /J.



Flex cable with first end second ends

https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-st-teardowu/. (Ex. 13).

64. As shown above, the processor's circuit boaid lays in o second plane, is longitudinolly aligned with the image sensols which are cOnnected usinp the flex cable.

65. The Galaxy SS processor (e.g.. Snapdrogon 801) converts the pre-video signal so it cv  be viewed on a display.

66. The Galaxy SS includes a power supply (e.e., battery or USB) that is coupled to the image sensoi to power the pixels end time and control circuitry and is alsO Coupled to the processor on the circuit booid.



(Del)https://www.ifixit.coin/Teai'dowii/Samsung+Galax<sub>y</sub>+S5+Teaidowu/24016.  (Ex. 12).

67. On information and belief, the all of the Accused Products have siinilai designs, including CMOS image sensors lying in a sepai'ate plane from the processoi which converts pi'e-videO signals to post-video signals os shown in exemplary tear downs in Exhibits 14-24.

68. Defendants' infringement of the '839 Patent injured Cellect in an amount to be proven at trial, but not less then a reasonable royalty.

69. Defendants have been long-aware of Cellect's patents, including the '839 Patent, and continued their' unauthorized infringing activity despite tliis knowledge. As discussed above. Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asseiled Patents. Even after being shown thot their products infringe Cellect's patents, including the '839 Patent, on information and belief Defendants made no effort to avoid infringement. Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this complaint. All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

70. Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights. As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '839 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

## COUNT II
### (Indirect Infringement of the '839 Patent pursuant to 35 U.S.C. § 271(b))

71. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

72. In addition to directly infringing the '839 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing,

directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.

73. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products, either literally or under the doctrine of equivalents.

## COUNT III

**(Direct Infringement of the '255'839 Patent pursuant to 35 U.S.C. § 271(a))**

48.    74. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

49.    75. Defendants infringe at least Claim 1Claims 3 and 9 of the '255'839 Patent in violation of 35 U.S.C.

§ 271(a).

50.    76. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

51.    77. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

52.    78. Defendants' infringement included,include the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOScomplementary metal-oxide semiconductor ("CMOS") multi-chip and/or stacked image sensor reduced area imaging devices allowing for a slim/reduced profile, including Samsung tablets and smart phonessmartphones (collectively, the "'255839 Accused Products").

53.    79. The '255839 Accused Products practice the patented invention of the '255839

Patent and infringed the ~~'255~~'839 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals. ~~The pre-video signal is capable of being carried for transmission by a single wire conductor.~~ Using the patented technology, the form factors of the

Accused Products can be customized to reduce the surface area and provide more efficient use of

multiple CMOS image sensors.

54. 80. To the extent the '255839 Accused Products includesinclude components or software owned

or manufactured by third parties, the '839 Accused Products still infringed the '255'839 Patent because

Defendants are vicariously liable for making-, selling, offelingoffering for sale, and/or

risingusing the patented technology by controlling the design md opeiation Ofand operation of

the Accused Products that are made, used and sold. Furthei'Further, Defendants dei'ivederive a

benefit from the inonufacttu'emanufacture and use of every element of the entire system.

55. 81. FoiFor example. os, as shown below, the Accused PioductsProducts such as

the Galaxy SS.S9, includes a front and reai'rear facing cameras including CMOS image sensors



in a separate plane endand remote from the processor.

~~front CMOS imape~~image sensor

(Added)



(Add)



(Add)



Galaxy ~~S5~~S9    ~~rem~~rear CMOS ~~image sensor~~  front CMOS



(Modified)

Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5; Ex. 6

(https://www.techinsights.com/blog/samsung-galaxy-s9-teardown) at 6.

56.    The Galaxy S9 includes additional/second circuit boards for enhancing the pre-

video image, including image stabilization, gyroscopic sensor boards and image sensor processor (ISP), which performs the function of enhancing the pre-video image, including denoise, digital binning, zig-zag reduction, phase AF processing, dynamic/PDAF BPC, PD-AF X-talk removal, WDR, digital gain, and dyamic range compression.  This is on-chip or a companion chip in a separate plance that does not extend substantially beyond the pixel array.



(Del)

(D

~~processor (outlined in ied)~~

(Del) ~~https://www.ifixit.coin/Teaidowu/Samsung+Galax+S5+Teardown/24016. (Ex. 12).~~

57.    ~~82.~~ Each of the CMOS image sensors (front and rear) lay in a first plane and

include an array of CMOS pixels.  Shown below is an example of the rear facing CMOS image

sensor and array of pixels with timing and control circuitry for the S9+:



(Del)

Ex. 6 (https://www.techinsights.com/blog/samsung-galaxy-s9-teardown).
~~https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5- teardown/. (Ex. 13).~~

58.    ~~83.~~ Shown below is an expanded view of the front facing CMOS image sensor

and array of pixels with timing and control circuitry.



Ex. 6 (https://www.techinsights.com/blog/samsung-galaxy-s9-teardown).
https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

59. 84. The image sensors in the Galaxy S5S9/S9+ are connected to the processor's

circuit board using a flex cable. *See* Ex. 5

(https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5. On

information and belief, the Galaxy ~~S5~~S9 flex cable uses a MIPI interface and complies with CSI

standards. *See* ~~http://electronicdesign.com/communications/understanding-mipi-alliance-interface-specifications; http://mipi.org/specifications/camera-interface. (Exs. 27~~ Ex. 7

(https://www.electronicdesign.com/technologies/communications/article/

~~28).~~
21799475/understanding-mipi-alliance-interface-specifications); Ex. 8

(https://www.mipi.org/specifications/csi-2).

60. ~~85.~~ The flex cable has ~~lust~~first and second ends and is used to send pre-video

signals from the ~~sensOl~~sensor to the ~~piocessol~~processor. On ~~infolmation~~information and

belief, the flex ~~coble is tiansmitting~~cable is transmitting said pre-video signal (e.g., RAW 10

bit RGB) and communicates with the image sensor. ~~/ J~~*Id*.



Flex cable with first ~~end~~and second ends

~~https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-s5-teardowu/.~~

Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5; Ex. 6 (Ex. 13)https://www.techinsights.com/blog/samsung-galaxy-s9-teardown) at 6.

~~86. On infoonotion and belief. the MIPI interface is capable of producing serial foonatted date using CSI-2 oxei C-PHY. Using CSI-2 over C-PHY, each data lane can include an embedded clock, such that a pre-video signal is capable of being caiTied foi trmsinission by a sinple wMe conductor.~~

~~alljance interface specifications.~~ *See also.* (Del)//mipi.oi̇g/specifications/cainei`a interface. (Exs. 27-28).

61. ~~87.~~ As shown above, the ~~processor's~~processor's circuit ~~boaid~~board lays in a second plane, is longitudinally ~~longitudinolly~~ aligned with the ~~ĩnage sensoi's~~image sensors which are connected using the flex cable.

62. ~~88.~~ The Galaxy ~~SSS~~S9 processor (e.g., ~~Snapdragoii 801~~Snapdragon 845) converts the pre-video ~~sipnal~~signal so ~~they~~it can be viewed on a display.

63. 89. The ~~Galaxy SS~~Galaxy S9 includes a power supply (e.~~e~~g., battery or USB) that is coupled to the image ~~sensoi~~sensor to power the pixels and time and control circuitry and is also coupled to the processor on the circuit ~~boai'd~~board.

(Modified)    (Deleted)



Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322).
~~s://www.ifixit.com/Teai'dowii/Samsung+Galax +S5+Teaidowu/24016.  (Ex. 12).~~

64. 90. On information and belief, all of the Accused ~~Pioducts~~Products have similar designs, including CMOS image sensors lying in a ~~sepai'ate~~separate plane from the ~~piocessoi~~processor which converts ~~pi'e- videO~~pre- video signals to post-video signals~~, and the pie-video signal is capable of being carried foi transmission by a sinple wire conductor, as shown in exemplary tear downs in Exhibits 14-24~~.

65. 91. Defendants' infringement of the ~~'255~~'839 Patent injured Cellect in an amount to be proven at ~~tidal~~trial, but not less than a reasonable royalty.

66.     92. Defendants have been long owoic of Cellect'slong-aware of Cellect's patents, including the '255'839 Patent, and continued theMtheir unauthorized infiUpinginfringing activity despite this knowledge.  As discussed above,

Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being shown that their products infringe Cellect's patents, including the '255839 Patent, on information and belief Defendants made no effort to avoid infringement.  Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this complaintAmended Complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

67.    93. Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights.  As such, Defendants  acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '255'839 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

## COUNT IVII
### (Indirect Infringement of the '255 '839 Patent pursuant to 35 U.S.C. § 271(b))

68.    94. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

69.    As set forth above, Samsung has had knowledge of Cellect's patent portfolio and of its infringement of the '839 Patent since at least 2014 and no later than the date of the February 14, 2019 Complaint.

70.    95. In addition to directly infringing the '255 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringementAsserted Patents pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly infringes Claims 3 and 9 of the '839 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under the

doctrine of equivalents. Samsung induces infringement of the '839 Patent by instructing,

directing and/or imposing requirement to third parties on the manufacture and use of the

Accused Products.

requiring others, including its customers, purchasers, users, and developers, to meet claim

elements, literally and/or under the doctrine of equivalents, of Claims 3 and 9 of the '839 Patent.

71.    96. Additionally, DefendantsSamsung knew or werewas willfully blind to the

fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing

and/or imposing requirement to third partiesit is inducing others, including customers,

manufactures, suppliers and agents, on the manufacture and use of the Accused Products.,

either literally or under the doctrine of equivalentspurchasers, shoppers, users, and developers

to infringe claim 3 and 9 the '839 Patent.

72.    Samsung knowingly and actively aided and abetted the direct infringement of the

'839 Patent by instructing and encouraging its suppliers, developers, manufacturers, customers,

purchasers, shoppers, users, developers, and/or vendors to use the Accused Products and thereby

perform the steps of the disclosed method.  Such instructions and encouragement include, but is

not limited to, advising third parties to use the Accused Products through which third parties may

infringe the '839 Patent, and by advertising and promoting the Accused Products, and

distributing guidelines and instructions to third parties on how to use the Accused Products in an

infringing manner.

73.    For example, Samsung provides instructions, user manuals and training guides

on how to use a touchscreen display as a time select switch for controlling the integration

periods to produce an image of a desired brightness.  Instructions direct users to adjust ISO

settings, exposure, metering modes, and white balance settings selecting options on the

touchscreen display:

(Added)ure shooting mode

Allow the camera to determine the ideal mode for your pictures or choose from several shooting modes.

○ From 📷 Camera, swipe the screen right and left to change shooting modes.

• Photo: Allow the camera to determine the ideal settings for pictures.
• Video: Allow the camera to determine the ideal settings for videos.
• Live focus: Take artistic pictures by adjusting the depth of field.

69

(Add)ore: Choose other available shooting modes. Tap ✏ Edit to drag modes into or out of the Modes tray at the bottom of the Camera screen.

– Pro: Manually adjust the ISO sensitivity, exposure value, white balance, and color tone while taking pictures.
– Panorama: Create a linear image by taking pictures in either a horizontal or vertical direction.

*See* Ex. 9 (Galaxy S9 Manual) at 69-70.

## COUNT ~~V~~III

### (Direct Infringement of the ~~'~~369 Patent pursuant to 35 U.S.C. § 271(a))

74.    ~~97.~~ Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

75.    ~~98.~~ Defendants infringe ~~at least Claim 1~~ Claims 4 and 5 of the ~~'~~369 Patent in violation of 35 U.S.C.

§ 271(a).

76.    ~~99.~~ Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

77.    ~~100.~~ Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without ~~the~~ permission, consent, authorization, or license of Cellect.

45

78.    101. Defendants' infringement included, the include the manufacture, use, sale, importation and offer for sale of Defendant's products that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and smart phones smartphones (collectively, the "'369 Accused Products").

79.    102. The '369 Accused Products practice the patented invention of the '369 Patent and infringed the '369 Patent because they make, sell, offer for sale, and/or use the Accused Products which include personal digital assistant PDA devices that receive and transmit video images and include CMOS image sensors lying in a separate plane from the processor which converts pre- video signals to post-video signals.

80.    103. To the extent the '369 Accused Products includes include components or software owned or manufactured by third parties, the Accused Products still infringed the '369 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented

technology by controlling the design and operation of the Accused Products that are made, used and sold.  Furthei Further, Defendants dei've o derive a benefit from the manufacture and use of every element of the entire system.

81.    104. Foi For example. as shown below, the Accused Pioducts Products such as the Galaxy SS S9, includes a front and rem rear facing cameras including CMOS image sensors in a separate plane end and remote from the processor.  *See supra ¶¶ 55, 57-58.*



(Deleted)

~~Galaxy S5~~

(Del) ~~real CMOS iinape sensor~~     ~~front CMOS iinape sensor~~

(Del)

~~processor (outlined in ied) on a circuit board~~

(Del)~~s://www.ifixit.coin/Teaidowlr Samsimz+Galax·,·+SS+Teardown/24016. (Ex. 12).~~

<u>82.</u>    ~~105.~~ Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels for producing a pre-video signal. ~~Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry:~~<u>*See supra* ¶¶ 57-58.</u>



(Del)     (Del)

~~https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).~~

106. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry for producing a pre-video signal.

(Del)      (Del) 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

83. 107. The image sensors in the Galaxy S5S9 are connected to the processor's circuit board lying in a second plane using a flex cable. On *See* Ex. 5

(https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5.  On

information and belief, the Galaxy ~~S5~~S9 flex cable uses a MIPI interface and complies with CSI

standards.  *See* ~~http://electronicdesign.com/communications/understanding-mipi-alliance-interface~~
Ex. 7 (https://www.electronicdesign.com/technologies/communications/article/
~~specifications; http://mipi.org/specifications/camera-interface.  (Exs. 27-28).~~
21799475/understanding-mipi-alliance-interface-specifications); Ex. 8

(https://www.mipi.org/specifications/csi-2); *see also supra* ¶ 60.

84.  ~~108.~~The flex cable has ~~lust~~first and second ends and is used to send pre-video

signals from the ~~sensOi to the piocessoi.  On infolmation end~~sensor to the processor.  On

information and belief, the flex ~~coble is tiansmitting~~cable is transmitting said pre-video signal

and communicates with the image sensor.  *~~II~~Id.*



~~(Del)~~

~~Flex cable with first end second ends~~
~~(Del)~~

~~https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-s5-teardowu/.~~
~~(Ex. 13).~~

85.  ~~109.~~As shown above, the ~~processor's~~processor's circuit ~~boaid~~board lays in

~~oa~~ second ~~plone and is longitudinolly~~plane and is longitudinally aligned with said image

sensor, is ~~cOupled~~coupled with the image sensors which ~~aie~~are connected ~~rising~~using the

49

flex cable.

86.    ~~110.~~ The ~~Golaxy S5~~Galaxy S9 processor (e.g. ~~Snapdrogon 801~~, Snapdragon 845) converts the pre-video signal to a post-video ~~usinp~~using the circuitry shown so they ~~ccii~~can be viewed on a display attached to the ~~sinaiTplione~~smartphone.

87.    ~~111.~~ The video screen is connected to the first circuit board (and attached to the PDA) to display video images processed on the first circuit board as shown below~~:~~.



https://www.ifixit.com/Teardown/Samsung+Galaxy+S5+Teardown/24016.  (Ex. 12).
Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322, *see* embedded

video at https://youtu.be/A0zAwJlypOk at 0:26).

88.    112. On information and belief, all of the Accused Products have similar designs,

including CMOS image sensors lying in a separate plane from the processor which converts pre-

video signals to post-video signals as shown in exemplary tear downs in Exhibits 14-24.

89.    113. Defendants' infringement of the ''369 Patent injured Cellect in an amount

to be proven at trial, but not less than a reasonable royalty.

90.    114. Defendants have been long-aware of Cellect's patents, including the '369

Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed

above, Cellect actively and diligently attempted to engage in good faith negotiations with

Defendants regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being

shown that their products infringe Cellect's patents, including the '369 Patent, on information

and belief Defendants made no effort to avoid infringement.  Instead, Defendants extended the

use of

 infringing technology into additional products, such as those identified in this

complaintAmended Complaint.  All of these actions demonstrate Defendants' blatant and

egregious disregard for Cellect's patent rights.

91.    115. Despite their knowledge of Cellect's patent portfolio and Asserted Patents,

and their specific knowledge of their own infringement, Defendants continued to sell the

Accused Products in complete and reckless disregard of Cellect's patent rights.  As such,

Defendants  acted recklessly, willfully, wantonly, and deliberately engaged in acts of

infringement of the ''369 Patent, justifying an award to Cellect of increased damages and

attorneys' fees and costs.

## COUNT ~~VII~~IV
### (Indirect Infringement of the ~~'~~'369 Patent pursuant to 35 U.S.C. § 271(b))

92. ~~116.~~ Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

~~117. In addition to directly infringing the '369 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.~~

93. As set forth above, Samsung has had knowledge of Cellect's patent portfolio and of its infringement of the '369 Patent since at least 2014 and no later than the date of the February 14, 2019 Complaint.

94. ~~118. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement~~In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly infringes Claims 4 and 5 of the '369 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under the doctrine of equivalents. Samsung induces infringement of the '369 Patent by instructing, directing and/or ~~imposing requirement to third parties~~requiring others, including ~~its~~ customers, ~~manufactures, suppliers and agents, on the manufacture and use of the Accused Products.,~~ ~~either~~purchasers, users, and developers, to meet claim elements, literally and/or under the doctrine of equivalents, of Claims 4 and 5 of the '369 Patent.

### ~~COUNT VII~~
### ~~(Direct Infringement of the '626 Patent pursuant to 35 U.S.C. § 271(a))~~
~~119. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.~~

120. Defendants infringe at least Claim 1 of the '626 Patent in violation of 35 U.S.C. § 271(a).

121. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

122. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

123. Defendants' infringement included, the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including all Samsung tablets and smart phones (collectively, the "'626 Accused Products").

124. The '626 Accused Products practice the patented invention of the '626 Patent and infringed the '626 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals in wireless communication devices. The pre-video signal is capable of being carried for transmission by a single wire conductor. Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

125. To the extent the '626 Accused Products includes components or software owned or manufactured by third parties, the Accused Products still infringed the '626 Patent because Defendants are vicariously liable for making. selling, offeling for sale, and/oi using the patented technology by controlling the design md opeiation Of the Accused Products that are made, used and sold. Furthei', Defendants dei've a benefit from the inonufacttu'e and use of every element of the entire system.

126. Foi example. os shown below, the Accused Pioducts such as the Galaxy SS.

includes a front and rear facing cameras including CMOS image sensors in a separate plane and remote from the processor.



front CMOS image sensor

(Del)

Galoxy SP

rem CMOS iinape sensor

processor (outlined in ied)

(Del)s://www.ifixit.coin/TeaidowirSauisimz+Galax OSS+Teardown/24016. (Ex. 12).

127. Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels. Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry:



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

128. Shown below is an expanded view of the front facing CMOS image sensor and

array of pixels with timing and control circuitry.

 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

129. The image sensors in the Galaxy S5 are connected to the processor's circuit board lying in a first plane using a flex cable.

130. The flex cable has lust and second ends and is used to send pre-video signals from the sensoi to the piocessoi. On infoiniation md belief, the flex coble is tiansmitting said pre-video sipnal and communicates with the image sensor. /J.



Flex cable with first end second ends

https://www.techinsiglits.coin/about-techinsights/overview/blog/sainsune-galaxy-s5-teordown/. (Ex. 13).

131. As shown below, the piocessoi 's circuit board lays in a second plane, is connected to the image sensois using the flex cable.



https://www.techiiisig1its.coin/about-techinsielits/overview/blog/Samsung-galaxy-s5-teordowu/. (Ex. 13).

132. The Galaxy S5 processor (e.g., Snapdragon 801) converts the pre-video signal so they can be viewed on a display of the smartphone and tablet with wireless connectivity.

133. The video screen is connected to the first circuit board (and attached to the PDA) to display video images processed on the first circuit board as shown below:



https://www.ifixit.com/Teardown/Samsung+Galaxy+S5+Teardown/24016.  (Ex. 12).

134. On information and belief, the all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals as shown in exemplary tear downs in Exhibits 14-24.

135. Defendants' infringement of the '626 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

136. Defendants have been long-aware of Cellect's patents, including the '626 Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed above, Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being shown that

their products infringe Cellect's patents, including the '626 Patent, on information and belief Defendants made no effort to avoid infringement.  Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

137. Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights.  As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '626 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

### COUNT VIII
### (Indirect Infringement of the '626 Patent pursuant to 35 U.S.C. § 271(b))

138. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

139. In addition to directly infringing the '626 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringement of at least Claim 1 of the '626 Patent under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.

140. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement of the '626 Patent under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalents.

### COUNT IX
### (Direct Infringement of the '036 Patent pursuant to 35 U.S.C. § 271(a))

141. Cellect repeats, realleges, and incorporates by reference, as if fully set forth

herein, the allegations of the preceding paragraphs, as set forth above.

142. Defendants infringe at least Claim 1 of the '036 Patent in violation of 35 U.S.C.
§ 271(a).

143. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

144. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

145. Defendants' infringement included, the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including all Samsung tablets and smart phones (collectively, the "'036 Accused Products").

146. The '036 Accused Products practice the patented invention of the '036 Patent and infringed the '036 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals in wireless communication devices. The pre-video signal is capable of being carried for transmission by a single wire conductor. Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

147. To the extent the '036 Accused Products includes components or software owned or manufactured by third parties, the Accused Products still infringed the '036 Patent because Defendants are vicariously liable for making. selling, offeling for sale, and/or rising the patented technology by controlling the design md opeiation Of the Accused Products that are made, used and sold. Furthei', Defendants dei've a benefit from the manufacture end use of every element of the entMe system.

59

148. Fo1 example, as shown below, the Accused Pioducts such as the Golaxy S5, includes a front and real facing cameras including CMOS image sensors in o separate plane end remote hour the processor.



Galoxy SS

front CMOS image sensor

rem CMOS image sensor

processor (outlined in ied)

https://www.ifixit.com/Teardown/Samsung+Galaxy+S5+Teardown/24016. (Ex. 12).

149. Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels.  Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry:



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex.13).

150. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry.




https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

151. The image sensors in the Galaxy S5 are connected to the processor's circuit board using a flex cable.

152. The flex cable has lust and second ends and is used to send pre-video signals from the sensoi to the piocessoi. On infoiniation and belief, the flex coble is tiansmitting said pre-video signal and communicates with the image sensor. /J.



Flex cable with first end second ends

https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-st-teardowu/. (Ex. 13).

153. As shown above, the processor's circuit boaid lays in o second plane, is longitudinolly aligned with the iinoge sensols which are cOnnected usinp the flex cable.

154. The Galaxy SS processor (e.g.. Snapdrogon 801) converts the pre-video signal so

they can be viewed on a display.

155. The video screen is connected to the first circuit board (and attached to the PDA) to display video images processed on the first circuit board as shown below:



https://www.ifixit.com/Teardown/Samsung+Galaxy+S5+Teardown/24016.  (Ex. 12).

156. On information and belief, the all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals as shown in exemplary tear downs in Exhibits 14-24.

157. Defendants' infringement of the '036 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

158. Defendants have been long-aware of Cellect's patents, including the '036 Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed above, Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being shown that their products infringe Cellect's patents, including the '036 Patent, on information and belief Defendants made no effort to avoid infringement.  Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

159. Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights.  As such, Defendants

acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '036 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

**COUNT X**

**(Indirect Infringement of the '036 Patent pursuant to 35 U.S.C. § 271(b))**

160. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

161. In addition to directly infringing the '036 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.

95.      162. Additionally, DefendantsSamsung knew or werewas willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third partiesit is inducing others, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalentspurchasers, shoppers, users, and developers to infringe claim 43 and 5 the '369 Patent.

96.      Samsung knowingly and actively aided and abetted the direct infringement of the '369 Patent by instructing and encouraging its suppliers, developers, manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to use the Accused Products.  Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products through which third parties may infringe the '369 Patent, and by advertising and promoting the Accused Products, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

**COUNT ~~XIV~~**

**(Direct Infringement of the ~~'~~'740 Patent pursuant to 35 U.S.C. § 271(a))**

97.    ~~163.~~ Cellect repeats, realleges, and incorporates by reference, as if fully set

forth herein, the allegations of the preceding paragraphs, as set forth above.

98.    ~~164.~~ Defendants infringe ~~at least Claim 1~~ Claims 3 and 15 of the ~~'~~'740 Patent in
violation of 35 U.S.C.

§ 271(a).

99.    ~~165.~~ Defendants' infringement is based upon literal infringement or, in the

alternative, infringement under the doctrine of equivalents.

100.    ~~166.~~ Defendants' acts of making, using, importing, selling, and offering for sale

infringing products and services were without the permission, consent, authorization, or license

of Cellect.

101.    ~~167.~~ Defendants' infringement ~~included, the~~ include the manufacture, use, sale,

importation and offer for sale of Defendant's products and services that utilize CMOS multi-

chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and

~~smart phones~~ smartphones (collectively, the "'740 Accused Products").

102.    ~~168.~~ The '740 Accused Products practice the patented invention of the '740

Patent and infringed the '740 Patent because they make, sell, offer for sale, and/or use the

Accused Products which include CMOS image sensors lying in a separate plane from the

processor which converts pre-video signals to post-video signals.  The pre-video signal is

capable of being carried for transmission by a single wire conductor.  Using the patented

technology, the form factors of the Accused Products can be customized to reduce the surface

area and provide more efficient use of multiple CMOS image sensors.

103. ~~169.~~ To the extent the '740 Accused Products ~~includes~~include components or software owned or manufactured by third parties, the Accused Products still infringed the '740 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used

and sold. ~~Further~~Further, Defendants ~~derive o~~derive a benefit from the manufacture and use of every element of the entire system.

104. ~~170.~~ ~~For~~For example. ~~as shown below~~, the Accused ~~Products~~Products such as the Galaxy ~~SS~~S9, includes a front and ~~rem~~rear facing cameras including CMOS image sensors in a separate plane ~~end~~and remote from the processor. *See supra ¶¶ 55, 57-58.*



(Deleted)

~~front CMOS image sensor~~

~~Galaxy S5~~

~~rear CMOS image sensor~~

~~processor (outlined in red)~~

~~(Del)~~ ~~https://www.ifixit.com/Teardown/Samsun g+Galaxy +S5+Teardown/24016. (Ex. 12).~~

105.      ~~171.~~ Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels. ~~Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry:~~ for producing a pre-video signal. *See supra* ¶¶ 57-58:

106.      The image sensors in the Galaxy S9 are connected to the processor's circuit board lying in a second plane using a flex cable. *See* Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5. On information and belief, the Galaxy S9 flex cable uses a MIPI interface and complies with CSI standards. *See* Ex. 7 (https://www.electronicdesign.com/technologies/communications/article/21799475/understanding-mipi-alliance-interface-specifications); Ex. 8

(Del)  (Del)

~~https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).~~

~~172. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry.~~

(Del)  (Del) 

~~https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/.~~

(Ex. 13).

173. The image sensors in the Galaxy S5 are connected to the processor's circuit board using a flex cable.

(https://www.mipi.org/specifications/csi-2); *see also supra* ¶ 60.

107.     ~~174.~~ The flex cable has ~~lust~~first and second ends and is used to send pre-video signals from the ~~sensoi~~sensor to the ~~piocessoi~~processor.  On ~~infoiniation~~information and belief, the flex ~~coble is tiansmitting~~cable is transmitting said pre-video signal and communicates with the image sensor.  ~~Jl~~*Id*.



(Del)

~~Flex cable with first end second ends~~

(Del)

https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-st-teardowu/. (Ex. 13).

108. 175. As shown above, the ~~processor's~~ processor's circuit ~~boaid~~ board lays in ~~oa~~ second plane, is ~~longitudinolly~~ longitudinally aligned with the ~~iinoge sensols~~ image sensors which are ~~cOnnected usinp~~ connected using the flex cable.

109. 176. The Galaxy ~~SS~~ S9 processor (e.g. ~~Snapdrogon 801~~, Snapdragon 845) converts the pre-video signal so they can be viewed on a standard video device.

110. 177. The Galaxy ~~SS~~ S9 includes a power supply (e.~~g~~., battery or USB) that is coupled to the image ~~sensoi~~ sensor to power the pixels ~~end~~ and time and control circuitry and is also coupled to the processor on the circuit ~~booid.~~ board.  *See supra* ¶ 63.

(Deleted)    (Deleted)



(Del)~~s://www.ifixit.coin/Teaidowu/Sanisuii~~ g+Galaxy+S5+Teardown/24016.  (Ex.  12).

111. 178. The ~~Galaxy SS~~ Galaxy S9 also includes ~~touch screen~~ a touchscreen display electronically connected to the first circuit board ~~end 1'einote~~ and remote from the first circuit board for controlling digital image processors that enable selective varying and ~~conti'ol~~ control of integrations periods to ~~pioduce~~ produce an ~~iniape~~ image of ~~oa~~ desired brightness.  For example,

(Del)~~//dowuloadcentei.sauisiing.com/content/UM/20l606/20160623035152493/VZV'_SU-~~

ISO settings, exposure, metering modes, and HDR settings may be selected by ~~plessine~~pressing

on the touchscreen display.  *See* Ex. 9 at 69-70

(https://downloadcenter.samsung.com/content/UM/202002/20200222054327892/USC_SM-

~~(Ex. 25~~G960U_SM-G965U_EN_UM_Q_10.0_013120_FINAL_AC.pdf).

~~G200X – Galaxy SP–EN–Uhl–MM–6.0–FINAL–HVAC.pdf~~st circuit board.

      113.  ~~179.~~On information and belief, ~~the~~all of the Accused Products have

~~similoi~~similar designs, including CMOS image sensors lying in a ~~sepoi'ate~~separate plane

~~fioiu~~from the ~~pi'ocessor~~processor which ~~convei4s pi'e~~converts pre- video signals to post-video

signals as shown in exemplary ~~teoi~~tear downs ~~in Exhibits 14-24~~.

      114.  ~~180.~~Defendants' infringement of the ~~·~~'740 Patent injured Cellect in an amount

to be proven at trial, but not less than a reasonable royalty.

      115.  ~~181.~~Defendants have been long-aware of Cellect's patents, including the ~~·~~'740

Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed

above,

Cellect actively and diligently attempted to engage in good faith negotiations with Defendants

regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being shown that

their products infringe Cellect's patents, including the '740 Patent, on information and belief

Defendants made no effort to avoid infringement.  Instead, Defendants extended the use of

infringing technology into additional products, such as those identified in this

complaintAmended Complaint.  All of these actions demonstrate Defendants' blatant and

egregious disregard for Cellect's patent rights.

116.    182. Despite their knowledge of Cellect's patent portfolio and Asserted Patents,

and their specific knowledge of their own infringement, Defendants continued to sell the

Accused Products in complete and reckless disregard of Cellect's patent rights.  As such,

Defendants  acted recklessly, willfully, wantonly, and deliberately engaged in acts of

infringement of the '740 Patent, justifying an award to Cellect of increased damages and

attorneys' fees and costs.

**COUNT XIIVI**
**(Indirect Infringement of the '740 Patent pursuant to 35 U.S.C. § 271(b))**

117.    183. Cellect repeats, realleges, and incorporates by reference, as if fully set

forth herein, the allegations of the preceding paragraphs, as set forth above.

118.    As set forth above, Samsung has had knowledge of Cellect's patent portfolio and

of its infringement of the '740 Patent since at least 2014 and no later than the date of the

February 14, 2019 Complaint.

119.    184. In addition to directly infringing the '740 Patent, Defendants knew or were

willfully blind to the fact that they were inducing infringementAsserted Patents pursuant to 35

U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly infringes

Claims 3 and 15 of the '740 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under the

doctrine of equivalents.  Samsung induces infringement of Claims 3 and 15 of the '740 Patent by

instructing, directing and/or imposing requirement to third parties on the manufacture and use of

the Accused Products.

185. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalents.

directing and/or requiring others, including its customers, purchasers, users, and developers, to meet claim elements, literally and/or under the doctrine of equivalents, Claims 3 and 15 of the '740 Patent. Samsung contributorily infringes the Asserted Patents by making and supplying the Accused Products that are components in an infringing system with components from manufacturers, customers, purchasers, users, and developers that together meet all of the claim elements in the Asserted Patents, literally and/or under the doctrine of equivalents.

120. Samsung knew or was willfully blind to the fact that it is inducing others, including customers, purchasers, shoppers, users, and developers to infringe claim 3 and 15 the '740 Patent.

121. Samsung knowingly and actively aided and abetted the direct infringement of the '740 Patent by instructing and encouraging its suppliers, developers, manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to make and/or use the Accused Products and thereby perform the steps of the disclosed method. Such instructions and encouragement include, but is not limited to, advising third parties to make and/or use the Accused Products through which third parties may infringe the '740 Patent, and by advertising and promoting the Accused Products, and distributing guidelines and instructions to third parties on how to make and/or use the Accused Products in an infringing manner.

## COUNT ~~XIII~~VII

**~~(Direct Infringement of the '742 Patent pursuant to 35 U.S.C. § 271(a))~~**

~~186. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.~~

~~187. Defendants infringe at least Claim 58 of the '742 Patent in violation of 35 U.S.C. § 271(a).~~

~~188. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.~~

~~189. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.~~

~~190. Defendants' infringement included, the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices within a PDA and allowing video signals to be transmitted from the camera module to a PC (personal computer), including Samsung tablets and smart phones (collectively, the "'742 Accused Products").~~

~~191. The '742 Accused Products practice the patented invention of the '742 Patent and infringed the '742 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals. The pre-video signal is capable of being carried for transmission by a single wire conductor. Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.~~

~~192. To the extent the '742 Accused Products includes components or software owned or~~

manufactured by third parties, the Accused Products still infringed the '742 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold. Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

193. For example. os shown below, the Accused Products such as the Galaxy SS, includes a front and rem facing cameras including CMOS image sensors in a lust plane end remote from the processor.



(Deleted)

front CMOS image sensor

Galoxy S5

reai CMOS iinape sensor

(Del)

processor (outlined in ied)

(Del) https://www.ifixit.coin/Teardown/Samsimz+Galax;+S5+Teardown/24016. (Ex. 12).

194. Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels. Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry:

 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/.  (Ex. 13).

195. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry lying in a second plane.

 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

196. The image sensors in the Galaxy S5 are connected to the processor's circuit board using a flex cable.

197. The flex cable has lust and second ends and is used to send pre-video signals from the sensoi to the piocessoi.  On infoiniation and belief, the flex coble is tiansmitting said pre-video signal and communicates with the image sensor.  /J.



Flex cable with first end second ends

(Del)



https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-st-teordown/. (Ex. 13).

198. As shown above, the processor's circuit boaid lays in o different (third) plane. is end connected usinp the flex cable.

199. The Galaxy SS processor (e.g.. Snapdragon 801) converts the pre-video signal to a desired format so they can be viewed on a display.

(I)

200. The Galaxy S5 also includes Qualcomm WTR1625L transceiver and WFR1620 receiver RF chips for wirelessly transmitting the converted pre-video signal as shown below.



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 12).

201. On information and belief, the all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals as shown in exemplary tear downs in Exhibits 14-24.

202. Defendants' infringement of the '742 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

203. Defendants have been long-aware of Cellect's patents, including the '742 Patent, and continued their unauthorized infringing activity despite this knowledge. As discussed above, Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents. Even after being shown that their products infringe Cellect's patents, including the '742 Patent, on information and belief Defendants made no effort to avoid infringement. Instead, Defendants extended the use of

infringing technology into additional products, such as those identified in this complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

204. Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights.  As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '742 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

## COUNT XIV
### (Indirect Infringement of the '742 Patent pursuant to 35 U.S.C. § 271(b))

205. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

206. In addition to directly infringing the '742 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.

207. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalents.

## COUNT XV
### (Direct Infringement of the '621 Patent pursuant to 35 U.S.C. § 271(a))

208. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

209. Defendants infringe at least Claim 45 of the '621 Patent in violation of 35 U.S.C.

§ 271(a).

210. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

211. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

212. Defendants' infringement included, the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including all Samsung tablets and smart phones (collectively, the "'621 Accused Products").

213. The '621 Accused Products practice the patented invention of the '621 Patent and infringed the '621 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals in video communication devices. The pre-video signal is capable of being carried for transmission by a single wire conductor. Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

214. To the extent the '621 Accused Products includes components or software owned or manufactured by third parties, the Accused Products still infringe the '621 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold. Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

215. For example, as shown below, the Accused Products such as the Galaxy S5, includes

a video telephone with front and rear facing cameras including CMOS image sensors and can send and receive video images between two parties of a telephone call (e.g., skype, video messaging).

216. The Galaxy SS includes imape sensors as shown below.



(Deleted)

front CMOS image sensor

Galaxy SS

reai' CMOS iinape sensor

processor (outlined in ied)

(Del)https://ievw.ifixit.coin/Teaidowii/Samsiuiu+Galax y+S5+Teaidowu/24016. (Ex. 12).

217. Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels. Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry:



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

218. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry.

(Del)     (Del) 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

219. The image sensors in the Galaxy S5 are connected to the processor's circuit board using a flex cable. On information and belief, the Galaxy S5 flex cable uses a MIPI interface and complies with CSI standards. *See* http://electronicdesign.com/communications/understanding-mipi-alliance-interface-specifications; http://mipi.org/specifications/camera-interface. (Exs. 27-28).

220. The flex cable has lust and second ends and is used to send pre-video signals from the sensOi to the piocessoi. On infolmation and belief, the flex coble is tiansmitting said pre-video signal and communicates with the image sensor. /J.

(Del) 

Flex cable with first end second ends

58

(Del)



https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-st-teardowu/. (Ex. 13).

221. As shown above, the processor's circuit boaid lays and includes circuitry for processing and convei4inp pre-video signNs from the CMOS sensors into a desired video format. In particular, the Golaxy SS processor (e.g.. Snapdrogon 801) converts the pre-video signol so they can be viewed on a display.

(Del)



s://www.ifixit.coin/Tea1dowu/Samsung+Galax -+S5+Teardown/24016. (Ex. 12).

(Del)  222. Inside the Galaxy S5 there are Qualcomm WTR1625L transceiver and WFR1620 receiver RF chips that are mounted and communicates with the circuit board for wirelessly transmitting said converted pre-video signal. These chips amplify the converted pre-video and audio signals so they can be received by other parties to the telephone call and includes digital to analog converters, voice processor and audio codec chips.

(Deleted)



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

223. The Galaxy S5 contains a digital signal processor that is electrically coupled to said transceiver radio module to further condition said converted pre-video signal which is first conditioned by said first circuit board, and also for conditioning video and audio signals received by said transceiver/ amplifier section from the other party such as the Snapdragon processor, Audience voice processor, and Qualcomm WCD9320 audio codec. The digital signal processor (e.g., Snapdragon 801) can receive a converted pre-video signal, or video and audio signals received from another party, for further conditioning.

224. Samsung Galoxy SS contains a mici'ophoue thot e1ecti'icolly coininimieates with said digital signal piocessoi foi leceiving sound and converting the sound to audio signals and a speakei electrically communicating with said digital signal piocessoi for broadcasting audio signals.

Speakei giille

(Del)



Microphone hole

(Del)s://vnvw.ifixit.coin/Teai'down/Samsung+Galax;+S5+Teaidowu/24016.  (Ex. 12).

225. The Galoxy SS has a touchscreen video display attached to the smartphone for selectively displaying images and video received from the transceivei'/amplifier.

226. The Golaxy SS has a video switch that COminimicates with the circuit boaid and digital signal processor for switching video images to be viewed on the touchscreen video

60

display. Shown below is the back view of the video display and the first circuit board which connects via flex cable:



(Del)s://www.tec1iiusights.coin/about-tec1iiusizlits/overview/blo g/samsung-galaxy-s5-teaidown/. (Ex. 13).

227. The Goloxy SS includes a power supply (e.e., battery or USB) that is coupled to the smartphone.



(Del)s://www.ifixit.coin/Teai down/Samsung+Galax y+S5+Teardown/24016. (Ex. 12).

228. On information end belief, the all of the Accused Products have siiniloi' designs, including CMOS image sensors lying in a sepaiate plane ñom the plocessol which converts pie- video signals to post-video signals os shown in exemplary teai downs in Exhibits 14-24.

229. Defendants' infringement Of the '621 Patent injured Cellect in an aInOunt to be proven at trial. but not less then a reasonable royalty.

230. Defendants have been long-awaie of Cellect's patents, including the '621 Potent, and continued theM unauthorized infiinping activity despite this knowledge. As discussed above, Cellect actively and diligently attempted to engage in good foith negotiations with Defendants regoidinp Defendants' infringement of Cellect's Assei4ed Patents. Even after being shown that their products infiinge Cellect's patents, including the '621 Patent, on information and belief Defendants made no effort to avoid infringement. Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this complaint. All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

231. Despite their knowledge of Cellect's patent portfolio and Asserted Patents, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights. As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '621 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

## COUNT XVI
### (Indirect Infringement of the '621 Patent pursuant to 35 U.S.C. § 271(b))

232. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

233. In addition to directly infringing the '621 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.

234. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing

requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalents.

## COUNT XVII
### (Direct Infringement of the '052 Patent pursuant to 35 U.S.C. § 271(a))

235. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

236. Defendants infringe at least Claim 1 of the '052 Patent in violation of 35 U.S.C. § 271(a).

237. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

238. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

239. Defendants' infringement included, the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and smart phones (collectively, the "'052 Accused Products").

240. The '052 Accused Products practice the patented invention of the '052 Patent and infringed the '052 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals. The pre-video signal is capable of being carried for transmission by a single wire conductor. Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

63

241. To the extent the '052 Accused Products includes components or software owned or manufactured by third parties, the Accused Products still infringed the '052 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold. Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

242. As shown below, the Accused Pioducts such as the Galaxy SS, includes a front and rear facing cameras including CMOS iinoge sensois on circuit boards that each hove a length and width that define a first plane.



(Deleted)

front CMOS image sensor

Galaxy S5

reai CMOS iinape sensor

processor (outlined in ied)

(Del)s://www.ifixit.coin/Teardown/Samsimz+Galax ,•+SS+Teardown/24016. (Ex. 12).

243. Each of the CMOS image sensors (front and rear) lay in a first plane (defined by the length and width) and include an array of CMOS pixels. Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry on the first

64

circuit board:

 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

244. Shown below is an expanded view of the front-facing CMOS image sensor and array of pixels with timing and control circuitry which produce a pre-video signal (e.g., RAW 10-bit RGB).

 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

245. The iinoge sensoi's in the Galaxy S5 are corrected to the processor's circuit board (i.e. a second circuit bond) using a flex cable.  The flex coble  has lust  md second ends and is used to send pre-video signals fioiu the sensor to the processor.  On information and belief. the flex cable is transmitting said pie-video signal and communicates with the image sensoi. /J.



Flex cable with iiist and second ends
(Del)



https://www.techinsights.coin/about-techinsights/overview/blog/somsune-ealoxy-s5-temdowu/.

(Ex. 13).

246. As shown below, the piocessoi iS On a second circuit board that is offset fioiu the

first circuit bond with the ilnage sensors.

(Del)



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/.

(Ex. 13).

247. The image sensor and lenses are mounted in the housing.

(Deleted)



Lens

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/.

(Ex. 13).

248. The Galaxy S5 processor (e.g., Snapdragon 801) converts the pre-video signal so they can be viewed on a display.

249. The touch screen is connected to the second cii'cuit board and displays video images thot have already been piocessed on the second circuit bOard by the processor (e.g., Snapdragon 801)



(Del)

https://www.techinsights.coin/about-techinsights/overview/blog/somsung-galaxy-s5-teardown/. (Ex. 13).

250. The Galaxy SS includes a power supply (e.g., battery or USB) that is coupled to the image sensoi on the lust circuit booid to power away of CMOS pixels and said timing and conti'o1 cii'euitiy and is also coupled to the processor on the second circuit boold.



(Deleted)                     (Deleted)

https://www.ifixit.com/Teardown/Samsung+Galaxy+S5+Teardown/24016. (Ex. 12).

251. The image sensor, as shown above, is generally square shaped and the largest

dimension is between 2 and 12 mm.

252. On information and belief, the all of the Accused Products have similar designs, including CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals as shown in exemplary tear downs in Exhibits 14-24.

253. Defendants' infringement of the '052 Patent injured Cellect in an amount to be proven at trial, but not less than a reasonable royalty.

254. Defendants have been long-aware of Cellect's patents, including the '052 Patent, and continued their unauthorized infringing activity despite this knowledge. As discussed above, Cellect actively and diligently attempted to engage in good faith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents. Even after being shown that their products infringe Cellect's patents, including the '052 Patent, on information and belief Defendants made no effort to avoid infringement. Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this complaint. All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

255. Despite their knowledge of Cellect's patent portfolio and Asserted Patents, including pending applications which issued as the '052 Patent, and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights. As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '052 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.

## COUNT XVIII
### (Indirect Infringement of the '052 Patent pursuant to 35 U.S.C. § 271(b))

256. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

257. In addition to directly infringing the '052 Patent, Defendants knew or were

willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.

258. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalents.

## COUNT XIX
### (Direct Infringement of the '565 Patent pursuant to 35 U.S.C. § 271(a))

259. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

260. Defendants infringe at least Claim 1 of the '565 Patent in violation of 35 U.S.C. § 271(a).

261. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

262. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

263. Defendants' infringement included, the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and smart phones (collectively, the "'565 Accused Products").

264. The '565 Accused Products practice the patented invention of the '565 Patent and

infringed the '565 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals. The pre-video signal is capable of being carried for transmission by a single wire conductor. Using the patented technology, the form factors of the Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

265. To the extent the '565 Accused Products includes components or software owned or manufactured by third parties, the Accused Products still infringed the '565 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold. Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

266. As shown below, the Accused Pioducts such as the Galaxy SS, includes a front and rear facinp CMOS image sensors mounted in a housing and include a lust circuit board with a length end width, defining a fu'st plane.

(Deleted)



front CMOS image sensor

Galaxy S5

reai CMOS iinape sensor

(Del) 

processor (outlined in red)

(Del) ~~s://www.ifixit.coin/Teardown/Samsimz+Galax ,+SS+Teardown/24016. (Ex. 12).~~

~~267. Each of the CMOS image sensors (front and rear) lay in a first plane and include an array of CMOS pixels. Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry and an amplifier:~~

(Del)  (Del) 

~~https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).~~

~~268. The most popular CMOS designs are built around active pixel sensor (APS) technology in which an amplifier is incorporated into each pixel. https://www.olympus-lifescience.com/en/microscope-resource/primer/digitalimaging/cmosimagesensors/ (Ex. 26).~~

~~269. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry.~~

(Del)  (Del) 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

270. The image sensors in the Galaxy S5 are connected to the processor on a second circuit board using a flex cable.

271. The flex cable has lust and second ends and is used to send pre-video signals from the sensoi to the piocessoi. The circuitry on the second circuit board mounted in the housing converts the pre-video signol from the CMOS image sensor to a post-video signol.



(Del)

Flex cable with first end second ends

(Del)

https://www.techinsiglits.coin/about-techinsights/overview/blog/sainsune-galaxy-s5-teordown/. (Ex. 13).

272. As shown below, the piocessoi' is on a second circuit board that is substantially parallel and offset flour the first cuciiit board with the image sensors mounted in the housing.



(Del)

https://www.techiiiisig1its.coin/about-techinsie1its/overview/blog/Samsung-galaxy-s5-teordowu/. (Ex. 13).

273. The image sensor and lenses are mounted in the housing.



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

274. The touch screen is connected to the second circuit board and displays video images that have already been processed on the second circuit board by the processor (e.g., Snapdragon 801)



https://www.techinsights.coin/about-techinsie1its/overview/blog/samsune-Galaxy-st-teardown/. (Ex. 13).

275. The Goloxy SS includes a power supply (e.e., battery or USB) that is coupled to the image sensoi to power the pixels and time and control circuitry and is also coupled to the processor on the circuit boai'd.

73



(Deleted)

(Deleted)

(Del)https://www.ifixit.coin/Teai'dowlr Samsimz+Galax+S5+Teardown/24016. (Ex. 12).

276. On information and belief. the all of the Accused Products have siiniloi designs, including CMOS image sensors lying in a sepaiate plane ñom the plocessol which converts p1e video signals to post-video signals os shown in exemplary teai' downs in Exhibits 14-24.

277. Defendants' infringement of the 565 Patent injured Cellect in an aInOunt to be proven ct trial. brit not less than a reasonable royalty.

278. Defendants have been long-awaie of Cellect's patents, including the 565 Patent, and continued their unauthorized infi inging activity despite tliis knowledge. As discussed above. Cellect actively and diligently attempted to engoge in good foith negotiations with Defendants regarding Defendants' infringement of Cellect's Asserted Patents. Even after being shown that their products infringe Cellect's patents, including the '565 Patent, on information and belief Defendants made no effort to avoid infringement. Instead, Defendants extended the use of infringing technology into additional products, such as those identified in this complaint. All of these actions demonstrate Defendants' blatant and egregious disregard for Cellect's patent rights.

279. Despite their knowledge of Cellect's patent portfolio and Asserted Patents,

~~including pending applications which issued as the '565 Patent and their specific knowledge of their own infringement, Defendants continued to sell the Accused Products in complete and reckless disregard of Cellect's patent rights. As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '565 Patent, justifying an award to Cellect of increased damages and attorneys' fees and costs.~~

### ~~COUNT XX~~
### ~~(Indirect Infringement of the '565 Patent pursuant to 35 U.S.C. § 271(b))~~

~~280. Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.~~

~~281. In addition to directly infringing the '565 Patent, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties on the manufacture and use of the Accused Products.~~

~~282. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalents.~~

### ~~COUNT XXI~~
### (Direct Infringement of the ~~'~~896 Patent pursuant to 35 U.S.C. § 271(a))

<u>122.</u> ~~283.~~ Cellect repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

<u>123.</u> ~~284.~~ Defendants infringe ~~at least~~ Claim <u>3</u>~~1~~ of the ~~'~~896 Patent in violation of 35 U.S.C.
§ 271(a).

124. 285. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

125. 286. Defendants' acts of making, using, importing, selling, and offering for sale infringing products and services were without the permission, consent, authorization, or license of Cellect.

126. 287. Defendants' infringement included, the include the manufacture, use, sale, importation and offer for sale of Defendant's products and services that utilize CMOS multi-chip and/or stacked image sensor reduced area imaging devices, including Samsung tablets and smart phones smartphones (collectively, the "'896 Accused Products").

127. 288. The '896 Accused Products practice the patented invention of the '896 Patent and infringed the '896 Patent because they make, sell, offer for sale, and/or use the Accused Products which include CMOS image sensors lying in a separate plane from the processor which converts pre-video signals to post-video signals. The pre-video signal is capable of being carried for transmission by a single wire conductor. Using the patented technology, the form factors of the

Accused Products can be customized to reduce the surface area and provide more efficient use of multiple CMOS image sensors.

128. 289. To the extent the '896 Accused Products includes include components or software owned or manufactured by third parties, the Accused Products still infringed the '896 Patent because Defendants are vicariously liable for making, selling, offering for sale, and/or using the patented technology by controlling the design and operation of the Accused Products that are made, used and sold. Further, Defendants derive a benefit from the manufacture and use of every element of the entire system.

290. As shown below, the Accused Pioducts such as the Golaxy SS, includes a front and rear facinp cameras including CMOS image sensois mounted in a housing on cMcuit boards that each have a length and width that define a lust plane.

(Deleted)

front CHAOS image sensor

Galaxy S5

rem CMOS ilnape sensor



(Del)

129.    The Accused Products such as the Galaxy S9, includes a front and rear facing cameras including CMOS image sensors mounted in a housing on circuit boards that each have a length and width that define a first plane. *See supra* ¶¶ 55, 57-58.

processor (outlined in ied)

(Del) s://www.ifixit.coin/Teardown/Samsung+Galax,+S5+Teardown/24016. (Ex. 12).

130. 291. Each of the CMOS image sensors (front and rear) lay in a first plane (defined by the length and width) and include an array of CMOS pixels. Shown below is an example of the rear facing CMOS image sensor and array of pixels with timing and control circuitry and amplifier on the first circuit board: for producing a pre-video signal. *See supra* ¶¶ 77

57-58.



https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).

131. 292. The most popular CMOS designs are built around active pixel sensor (APS) technology in which an amplifier is incorporated into each pixel. Ex. 10 (https://www.olympusevidentscientific.com/en/microscope-resource/knowledge-hub/digital-imaging/cmosimagesensors#:~:text=The%20photodiode%2C%20often%20referred%20to,of%21lifescience.com/en/microscope-resource/primer/digitalimaging/cmosimagesensors/ (Ex. 26).

293. Shown below is an expanded view of the front facing CMOS image sensor and array of pixels with timing and control circuitry.

 

https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13over%202000%20square%20pixels).

132. 294. The image sensor's iiisensors in the Galaxy S5S9 are correctedconnected to the processor'sprocessor's circuit board (i.e. a second circuit board) using a flex cable. See Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322) at 5. The flex cable has last mdfirst and second ends and is used to send pre-video signals fioiufrom the sensor

to the processor. *See* Ex. 7

(https://www.electronicdesign.com/technologies/communications/article/

21799475/understanding-mipi-alliance-interface-specifications); Ex. 8



(Del)

~~Flex cable with first end second ends~~
(Del)

~~https://www.techiiisiglits.coin/about-techinsig1its/overview/blog/samsune-galaxy-st-teardown/.~~
(~~Ex. 13~~)https://www.mipi.org/specifications/csi-2); *see also supra* ¶ 60.

133. ~~295.~~ As shown above, the processor is on a second circuit ~~boaid~~board that lays

in a second ~~plone~~plane that is offset and substantially ~~paiallel~~parallel to the ~~lust~~first plane ~~Of~~of

the ~~lust~~first circuit board.

134. ~~296.~~ The Galaxy ~~SS~~S9 processor (e.g.~~.~~, Snapdragon ~~801~~845) converts the pre-

video signal so they can be viewed on a display.

135. ~~297.~~ The image sensor and lenses are mounted in ~~the~~a housing.



(Modified)

Ex. 5 (https://www.ifixit.com/Teardown/Samsung+Galaxy+S9+Teardown/104322). ~~https://www.techinsights.com/about-techinsights/overview/blog/samsung-galaxy-s5-teardown/. (Ex. 13).~~

136. ~~298.~~ The touch screen is connected to the second circuit board and displays video images that have already been processed on the second circuit board by the processor (e.g., Snapdragon ~~801~~845). *See supra* ¶ 87.



(Del)

~~https://www.techinsights.coin/about-techinsie1its/overview/blog/samsune-Galaxy-st-teardown/. (Ex. 13).~~

137. ~~299.~~ The Galaxy ~~SS~~S9 includes a power supply (e.g., battery or USB) that is coupled to the image ~~sensoi~~sensor on the ~~lust~~first circuit ~~booid~~board to power array of CMOS pixels and ~~soid~~said timing and ~~conti'o1 CMcuitiy~~control circuitry and is also coupled to the processor on the second circuit board. *See supra* ¶ 63.

(Deleted)    (Deleted)



(Del)s://www.ifixit.coin/Teai'dowlr Samsimz+Galax ~+S5+Teardown/24016. (Ex. 12).

138.    300. The ~fnoee sensoi'~image sensor, as shown above (¶¶ 57-58), is generally square shaped ~md~and the ~loigest~largest dimension of the second circuit board is greater than a largest dimension of said image ~sensoi alone soid~sensor along said first plane.

139.    301. On information and belief, ~the~ all of the Accused Products have ~siniloi~similar designs, including CMOS image sensors lying in a ~sepoi'ate~separate plane ~fioiu~from the ~pi'ocessor~processor which ~coneerts~converts pre- video ~simals~signals to post-video signals ~as shown in exeiuploiy teoi downs in Exhibits 14-24.

140.    302. Defendants~'~'~ infringement of the '896 Patent injured Cellect in an amount to be proven ~etat~ trial~. brit~, but not less ~thou~than a reasonable royalty.

141.    303. Defendants have been long-aware of Cellect's patents, including the '896 Patent, and continued their unauthorized infringing activity despite this knowledge.  As discussed above,

Cellect actively and diligently attempted to engage in good faith negotiations with Defendants

regarding Defendants' infringement of Cellect's Asserted Patents.  Even after being shown that

their products infringe Cellect's patents, including the '896 Patent, on information and belief

Defendants made no effort to avoid infringement.  Instead, Defendants extended the use of

infringing technology into additional products, such as those identified in this

~~complaint~~Amended Complaint.  All of these actions demonstrate Defendants' blatant and

egregious disregard for Cellect's patent rights.

142.    ~~304.~~Despite their knowledge of Cellect's patent portfolio, including pending

applications which issued as the '896 Patent, and their specific knowledge of their own

infringement, Defendants continued to sell the Accused Products in complete and reckless

disregard of Cellect's patent rights.  As such, Defendants acted recklessly, willfully, wantonly,

and deliberately engaged in acts of infringement of the '896 Patent, justifying an award to

Cellect of increased damages and attorneys' fees and costs.

**COUNT ~~XXII~~VIII**
**(Indirect Infringement of the '896 Patent pursuant to 35 U.S.C. § 271(b))**

143.    ~~305.~~Cellect repeats, realleges, and incorporates by reference, as if fully set

forth herein, the allegations of the preceding paragraphs, as set forth above.

144.    As set forth above, Samsung has had knowledge of Cellect's patent portfolio

since at least 2014 and no later than the date of the February 14, 2019 Complaint.

145.    ~~306.~~In addition to directly infringing the ~~'896 Patent, Defendants knew or~~

~~were willfully blind to the fact that they were inducing infringement~~Asserted Patents pursuant

to 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, Samsung indirectly

infringes Claim 3 of the '896 Patent under 35 U.S.C. § 271(b) and (c), literally and/or under

the doctrine of equivalents.  Samsung induces infringement of the '896 Patent by instructing,

directing and/or ~~imposing requirement to third parties on the manufacture and use of the~~

~~Accused Products.~~

~~307. Additionally, Defendants knew or were willfully blind to the fact that they were inducing infringement under 35 U.S.C. § 271(b) by instructing, directing and/or imposing requirement to third parties, including customers, manufactures, suppliers and agents, on the manufacture and use of the Accused Products., either literally or under the doctrine of equivalents.~~

requiring others, including its customers, purchasers, users, and developers, to meet claim elements, literally and/or under the doctrine of equivalents, of Claim 3 of the '896 Patent.

146.    Samsung knew or was willfully blind to the fact that it is inducing others, including customers, purchasers, shoppers, users, and developers to infringe claim 3 the '896 Patent.

147.    Samsung knowingly and actively aided and abetted the direct infringement of the '896 Patent by instructing and encouraging its suppliers, developers, manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to use the Accused Products and thereby perform the steps of the disclosed method.  Such instructions and encouragement include, but is not limited to, advising third parties to use the Accused Products through which third parties may infringe the '896 Patent, and by advertising and promoting the Accused Products, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

**PRAYER FOR RELIEF**

WHEREFORE, Cellect prays for judgment and relief as follows:

A.    An entry of judgment holding that Defendants infringed the '839, '~~255, '~~369~~,~~ ~~'626, '036,~~ '740, ~~742, '621, '052, '565,~~and '896 ~~and '742 Patents~~; induced infringement of the '839, '369, '740, and '896 Patents;

‘839, ‘255, ‘369, ‘626, ‘036, ‘740, 742, ‘621, ‘052, ‘565, ‘896 and ‘742 Patents.

B. An award to Cellect of such past damages, not less than a reasonable royalty, as it shall prove at trial against Defendants that is adequate to fully compensate Cellect for Defendants' infringement of the ‘839, ‘255, ‘369, ‘626, ‘036, ‘740, 742, ‘621, ‘052, ‘565, and ‘896 Patents;

C. A finding that this case is "exceptional" and an award to Cellect of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

D.    An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the '839, ~~'255, '~~369~~,~~ ~~'626, '036,~~ '740, ~~'742, '621, '052, '565,~~ and '896 Patents; and

E.    Such further and other relief as the Court may deem proper and just.

### <u>DEMAND FOR JURY TRIAL</u>

Cellect demands a jury trial on all issues so triable.

~~DATED this 14th day of February, 2019~~
Respectfully submitted,
~~By~~<u>Dated</u>: <u>March 9, 2026</u>        <u>/s/ Paul J. Andre</u>

Paul J. Andre <u>Lisa Kobialka Jennifer Gilbert</u>

<u>HERBERT SMITH FREEHILLS</u>
KRAMER ~~LEVIN NAFTALIS & FRANKEL,~~<u>(US)</u> LLP
~~990 Marsh Road Menlo Park, CA 94025 T~~<u>333 Twin Dolphin Drive, Suite 700 Redwood Shores, CA 94065</u>
<u>Telephone</u>: (650) 752-1700
~~pandre@kramerlevin.com~~
<u>Facsimile: (650) 752-1800</u>
<u>Paul.Andre@hsfkramer.com</u>
<u>Lisa.Kobialka@hsfkramer.com</u>
<u>Jennifer.Gilbert@hsfkramer.com</u>

~~s/~~Jonathan S. Caplan

~~Jonathan S. Caplan~~
~~s/~~    Marcus A. Colucci ~~Marcus A. Colucci~~<u>Brittany Penn</u>
<u>HERBERT SMITH FREEHILLS</u>
KRAMER ~~LEVIN NAFTALIS & FRANKEL,~~<u>(US)</u> LLP
1177 Avenue of the Americas
New York, NY 10036
<u>Telephone:</u> (212) 715-9100
<u>Facsimile: (212) 715-8000</u>
<u>Jonathan.Caplan@hsfkramer.com</u>
<u>Marcus.Colucci@hsfkramer.com</u>

Brittany.Penn@hsfkramer.com

jcaplan@kramerlevin.com  mcolucci@kramerlevin.com

s/ Kenneth F. Eichner

Kenneth F. Eichner
THE EICHNER LAW FIRM
3773 Cherry Creek Drive North

West Tower, Suite 900
Denver, ~~CO~~Colorado 80209~~
ken@eichnerlaw.com~~
Telephone: (303) 837-9800
ken@eichnerlaw.com

Lynn C. Hartfield
Law Off. Of Lynn C. Hartfield, LLC
387 Corona Street, Suite 617
Denver, Colorado 80218
Telephone: (720) 588-0571
lynn@lhartfieldlaw.com
SPECIAL COUNSEL TO
THE EICHNER LAW FIRM
3773 Cherry Creek Drive North, Suite 900
Denver, Colorado 80209
Telephone: (303) 837-9800
lynn@eichnerlaw.com

Attorneys for Plaintiff
Cellect, LLC